**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF VIRGINIA**

| | |
|---|---|
| **KYLER LYONS,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 6:26-cv-00007** |
| **LIBERTY UNIVERSITY, INC.,** | |
| **Defendant.** | |

**DEFENDANT LIBERTY UNIVERSITY, INC.'S**
**<u>BRIEF IN SUPPORT OF MOTION TO DISMISS</u>**

**TABLE OF CONTENTS**

Page

INTRODUCTION ..................................................................................................................1

STATEMENT OF FACTS .....................................................................................................2

I.      The Parties ................................................................................................................2

II.     The Family Educational Rights and Privacy Act.....................................................3

III.    The "myLU" Portal...................................................................................................4

IV.     Plaintiff consented to Liberty's Privacy Policy .......................................................5

V.      The Tracking Tool Providers' disclosures................................................................6

VI.     The allegations in the Complaint .............................................................................8

LEGAL ARGUMENT............................................................................................................10

I.      The Complaint must be dismissed in its entirety under Fed. R. Civ. P.
        12(b)(1) because Plaintiff lacks Article III standing................................................10

        A.      The alleged disclosure of directory information is insufficient to constitute
                a concrete injury..........................................................................................10

        B.      A bare statutory violation of "privacy" rights cannot confer standing. .................14

        C.      Plaintiff's remaining theories of a concrete injury are insufficient to confer
                standing. ......................................................................................................14

II.     The Complaint must be dismissed under Fed. R. Civ. Pro. 12(b)(6) because it
        fails to state claims upon which relief can be granted. ............................................16

        A.      Virginia law applies to Plaintiff's common law claims........................................17

        B.      All of Plaintiff's claims fail because the sharing of directory information
                can occur without consent..................................................................................18

        C.      The invasion of privacy claim fails.........................................................................19

        D.      Plaintiff's negligence claim is barred by the economic loss doctrine....................20

        E.      The breach of implied contract claim fails. ..........................................................21

        F.      The unjust enrichment claim fails..........................................................................23

        G.      The ECPA claim fails. ............................................................................................25

                1.      Liberty consented to the disclosure. .................................................25

CONCLUSION.......................................................................................................................29

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................................................16

*Atl. Recording Corp. v. Project Playlist, Inc.*,
603 F. Supp. 2d 690 (S.D.N.Y. 2009).....................................................................5

*Attias v. CareFirst, Inc.*,
365 F. Supp. 3d 1 (D.D.C. 2019)...........................................................................16

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..........................................................................................16, 17

*In re Burlington Coat Factory Sec. Litig.*,
114 F.3d 1410 (3d Cir. 1997)..................................................................................5

*Byars v. Sterling Jewelers, Inc.*,
No. 5:22-cv-01456, 2023 U.S. Dist. LEXIS 61276 (C.D. Cal. Apr. 5, 2023).........11

*In re Cap. One Consumer Data Sec. Breach Litig.*,
488 F. Supp. 3d 374 (E.D. Va. 2020) ........................................................15, 16, 22

*In re Capital One Bank Credit Card Interest Rate Litig.*,
51 F. Supp. 3d 1316 (N.D. Ga. 2014) ...................................................................23

*Chambliss v. CareFirst, Inc.*,
189 F. Supp. 3d 564 (D. Md. 2016).......................................................................16

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013)..........................................................................................10, 15

*Cook v. GameStop, Inc.*,
148 F.4th 153 (3d Cir. 2025) ................................................................................12

*Deteresa v. Am. Broad. Companies, Inc.*,
121 F.3d 460 (9th Cir. 1997) ................................................................................25

*Doe v. Kaiser Found. Health Plan, Inc.*,
No. 23-cv-02865-EMC, 2024 U.S. Dist. LEXIS 66733 (N.D. Cal. Apr. 11,
2024) ......................................................................................................................27

*Elegant Massage, LLC v. State Farm Mut. Auto. Ins. Co.*,
506 F. Supp. 3d 360 (E.D. Va. 2020) ..............................................................22, 23

*In re Facebook Internet Tracking Litig.*,
263 F. Supp. 3d 836 (N.D. Cal. 2017) ...............................................................................25

*In re Facebook Internet Tracking Litigation*,
140 F. Supp. 3d 922 (N.D. Cal. 2015) ...............................................................................28

*In re Facebook Priv. Litig.*,
791 F. Supp. 2d 705 (N.D. Cal. 2011) ...............................................................................25

*Falwell v. Penthouse Int'l*,
521 F. Supp. 1204 (W.D. Va. 1981) ...................................................................................19

*Filak v. George*,
267 Va. 612 (2004) .............................................................................................................20

*Gabrielle v. Insider, Inc.*,
No. 24-cv-01566 (ER), 2025 LEXIS 127154 (S.D.N.Y. Feb. 18, 2025) ................................13

*Gadomski v. Patelco Credit Union*,
No. 2:18-cv-00695-TLN-AC, 2020 U.S. Dist. LEXIS 51070 (E.D. Cal. March
23, 2020) ............................................................................................................................15

*Goines v. Valley Cmty. Servs. Bd.*,
822 F.3d 159 (4th Cir. 2016)..............................................................................................13

*In re Google Cookie Inc. Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015)................................................................................................26

*In re Google, Inc. Privacy Pol'y Litig.*,
58 F. Supp. 3d 968 (N.D. Cal. 2014) ..................................................................................19

*Harwood v. Johns Hopkins University*,
130 Md. App. 476 (Md. App. 2000)....................................................................................21

*Hayes v. KIK Custom Prods.*,
No. 7:11-cv-00200, 2011 U.S. Dist. LEXIS 118943 (W.D. Va. Oct. 14, 2011) ....................19

*Heaven v. Prime Hydration LLC*,
761 F. Supp. 3d 812 (E.D. Pa. 2025) ..................................................................................13

*Holmes v. Elephant Ins. Co.*,
156 F.4th 413 (4th Cir. 2025) ..............................................................................10, 11, 15

*Hunter Innovations Co. v. Travelers Indem. Co. of Connecticut*,
753 F. Supp. 2d 597 (E.D. Va. 2010) ..................................................................................17

*Johnston v. Speedway, LLC*,
No. 7:21cv00100, 2021 U.S. Dist. LEXIS 80891 (W.D. Va. Apr. 28, 2021) ........................19

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
313 U.S. 487 (1941)............................................................................................................17

*Kuhns v. Scottrade, Inc.*,
868 F.3d 711 (8th Cir. 2017) .............................................................................................16

*Lightoller v. JetBlue Airways Corp.*,
No. 23-cv-00361, 2023 U.S. Dist. LEXIS 102158 (S.D. Cal. June 12, 2023) .........................11

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ...............................................................................20

*Lugo v. INOVA Health Care Servs.*,
No. 1:24-cv-700, 2025 U.S. Dist. LEXIS 55590 (E.D. Va. Mar. 25, 2025)
....................................................................................................................24, 25, 27, 28

*Massie v. Gen. Motors, LLC*,
No. 21-787-RGA, 2022 U.S. Dist. LEXIS 28969 (D. Del. Feb. 17, 2022) ..............................11

*Metter v. Capella Univ., LLC*,
No. 20-6405, 2021 U.S. Dist. LEXIS 43586 (E.D. Pa. Mar. 9, 2021)....................................21

*Mikulsky v. Noom, Inc.*,
682 F. Supp. 3d 855 (S.D. Cal. 2023)..................................................................................10

*Milton v. IIT Research Inst.*,
138 F.3d 519 (4th Cir. 1998) ..............................................................................................17

*Mongold v. Woods*,
278 Va. 196 (2009) ...........................................................................................................22

*Nationwide Prop. & Cas. Ins. Co. v. Premier Roofing & Siding Contractors, Inc.*,
No. 2:19cv154, 2020 U.S. Dist. LEXIS 263167 (E.D. Va. Jan. 6, 2020)................................20

*Nedrich v. Jones*,
245 Va. 465 (1993) ...........................................................................................................22

*Nedrich v. Jones*,
429 S.E.2d 201 (Va. 1993)..................................................................................................24

*Nichols Construction Corp. v. Virginia Machine Tool Co., LLC*,
661 S.E.2d 467 (Va. 2008)..................................................................................................22

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016)................................................................................................26

*Nicole der Boghossian v. Capella Univ., LLC*,
No. 24-CV-3007, 2025 U.S. Dist. LEXIS 57294 (S.D.N.Y. Mar. 27, 2025) .........................21

*O'Leary v. TrustedID, Inc.*,
   60 F.4th 240 (4th Cir. 2023) ................................................................................................14

*Popa v. Microsoft Corp.*,
   153 F.4th 784 (9th Cir. 2025) ..............................................................................................13

*Quillen v. Int'l Playtex, Inc.*,
   789 F.2d 1041 (4th Cir. 1986) ..............................................................................................17

*Richmond Metropolitan Authority v. McDevitt Street Bovis, Inc.*,
   507 S.E.2d 344 (Va. 1998).....................................................................................................20

*Rockingham Precast, Inc. v. Am. Infrastructure-Maryland, Inc.*,
   No. 5:11cv00024, 2011 U.S. Dist. LEXIS 130885 (W.D. Va. Nov. 14, 2011).......................17

*Rodriguez v. FastMed Urgent Care, P.C.*,
   741 F. Supp. 3d 352 (E.D.N.C. 2024)...................................................................................27

*Rosetta Stone Ltd. v. Google, Inc.*,
   676 F.3d 144 (4th Cir. 2012) ................................................................................................22

*Sandviks v. PhD Fitness LLC*,
   No. 1:17-cv-00744-JMC, 2018 U.S. Dist. LEXIS 45071 (D.S.C. March 20,
   2018) ......................................................................................................................................5

*Sensenbrenner v. Rust, Orling & Neale, Architects, Inc.*,
   236 Va. 419 (1988) ................................................................................................................20

*Showell v. Capella Univ. Inc.*,
   No. GLR-16-3761, 2017 U.S. Dist. LEXIS 225113 (D.Md. Sept. 29, 2017).........................21

*Smith v. McClure*,
   No. 6:10-cv-00022, 2010 U.S. Dist. LEXIS 56753 (W.D. Va. June 8, 2010)..........................5

*Solum v. CertainTeed Corp.*,
   147 F. Supp. 3d 404 (E.D.N.C. 2015)......................................................................................5

*Spectra-4, LLP v. Uniwest Com. Realty, Inc.*,
   772 S.E.2d 290 (Va. 2015).....................................................................................................21

*Spokeo v. Robins*,
   578 U.S. 330 (2016)..........................................................................................................10, 14

*Squire v. Virginia Hous. Dev. Auth.*,
   287 Va. 507 (2014) ................................................................................................................22

*Sunrise Continuing Care, LLC v. Wright*,
   277 Va. 148 (2009) ................................................................................................................23

*T. Musgrove Construction Co. v. Young*,
  840 S.E.2d 337 (Va. 2020)......................................................................................24

*Tingler v. Graystone Homes, Inc.*,
  298 Va. 63 (2019) ..............................................................................................20, 21

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021)................................................................................................10

*Washington v. Flixbus, Inc.*,
  No. 3:25-cv-00212, 2025 U.S. Dist. LEXIS 107195 (S.D. Cal. June 5, 2025) ......19

*Willard v. Tropicana Mfg. Co.*,
  577 F. Supp. 3d 814 (N.D. Ill. 2021) .......................................................................5

*Wilson v. SunTrust Mortg., Inc.*,
  No. 3:13cv622, 2014 U.S. Dist. LEXIS 33016 (E.D. Va. Mar. 12, 2014) ..............17

*Yoon v. Lululemon USA, Inc.*,
  549 F. Supp. 3d 1073 (C.D. Cal. 2021) ..................................................................28

*Zawod v. Sia "Baltmark Invest,"*
  No. 1:12cv515, 2013 U.S. Dist. LEXIS 159079 (E.D. Va. Nov. 6, 2013) ..............17

*In re Zynga Priv. Litig.*,
  750 F.3d 1098 (9th Cir. 2014) ................................................................................28

**Statutes and Rules**

18 U.S.C. § 2511(1)(a).............................................................................................28

18 U.S.C. § 2511(2)(d) ......................................................................................25, 26

20 U.S.C. § 1232g....................................................................................................3

20 U.S.C. §  1232g (a)(4)(a) ....................................................................................3

20 U.S.C. § 1232g (a)(5)(B) ............................................................................3, 4, 11

20 U.S.C. § 1232g (b)(1) ...................................................................................3, 14

Electronic Communications Privacy Act.......................................................... *passim*

Family Educational Rights and Privacy Act...................................................... *passim*

Federal Rules of Civil Procedure 12(b)(1)...........................................................1, 10, 29

Federal Rules of Civil Procedure 12(b)(6)..................................................1, 2, 16, 29

Health Insurance Portability and Accountability Act ............................................................27, 28

Pennsylvania Wiretapping and Electronic Surveillance Control Act ...........................................12

Va. Code §23.1-405(C).................................................................................................................4

Defendant, Liberty University, Inc., by counsel, and under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), states as follows in support of its Motion to Dismiss the Complaint of Plaintiff, Kyler Lyons.

## **INTRODUCTION**

Kyler Lyons ("Plaintiff") alleges she was a former student of Liberty University ("Liberty") and had her name, course names, course numbers and prayer requests disclosed to third party advertisers by tracking technologies allegedly deployed on the "myLU" student web portal that Liberty operated. Plaintiff does not allege when she visited the portal or what information was specifically shared. Instead, the Complaint includes screenshots of the myLU student web portal purporting to show disclosures of information, but these screenshots conclusively demonstrate that Liberty did not disclose any of Plaintiff's "Sensitive Information." Plaintiff's entire theory of unlawful sharing of her Sensitive Information is devoid of merit, and the Complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), as provided below.

Plaintiff's Complaint must be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction because it does not allege a concrete and particularized injury-in-fact to establish Article III standing. The Complaint identifies no misuse of data, no financial harm, and no injuries flowing from the alleged transmission of her personal information to the Tracking Tool Providers. The Complaint also has no plausible factual allegations showing Plaintiff's "Sensitive Information" was transmitted to anyone. That is made clear by the screenshots embedded in the Complaint, which show that neither grades nor the content of "Prayer Requests" were being disclosed, and that the information that was allegedly being disclosed consists of non-confidential "directory information" that Liberty is permitted to share under federal law. Those critical facts dispose of any claim that the Complaint alleges a concrete and particularized injury in fact to establish Article III standing.

Plaintiff's claim under the Electronic Communications Privacy Act ("ECPA"), which is a federal wiretap law, is subject to dismissal under Rule 12(b)(6) because the ECPA is a one-party consent statute that allows the sharing of an electronic communication if one-party to that communication – in this case Liberty – consents to the sharing. Plaintiff recognizes that Liberty consented to the sharing and therefore attempts to turn the ECPA into a two-party consent statute under the statute's "crime-tort" exception. The Complaint, however, contains no plausible allegations that Liberty intended to engage in a crime or tort for the exception to apply. Nor could the exception apply, as the information allegedly shared was shared with consent and Virginia does not recognize a common law tort of invasion of privacy and Plaintiff identifies no criminal law Liberty allegedly violated.

Third, the remaining common law causes of action for invasion of privacy, negligence, breach of implied contract and unjust enrichment are also subject to dismissal under Rule 12(b)(6) because: (1) the conduct in question is governed by Liberty's Privacy Policy, FERPA Policy or FERPA framework; (2) the cause of action is barred by Virginia law (which governs the claims here); or (3) the essential elements of the cause of action are not plausibly alleged in the Complaint.

For all the reasons below, dismissal of the Complaint is required.

## STATEMENT OF FACTS

### I.      The Parties

Plaintiff alleges she is an Arizona resident and "was enrolled at Liberty from 2017 until May 2021, and re-enrolled for [her] master's program in March 2025." Cmpl. ¶ 16. Liberty is an accredited university in Lynchburg, Virginia that offers, among other things, undergraduate and master's degree programs for students. Liberty also "offers over 600 online degrees to students nationwide." Cmpl. ¶ 3.

2

## II.      The Family Educational Rights and Privacy Act

As a university that receives federal funding and provides educational services and instruction, Liberty is subject to the Family Educational Rights and Privacy Act ("FERPA").  *See* 20 U.S.C. § 1232g.  FERPA is a federal statute that governs the privacy of a student's educational records and provides parents and eligible students with specific rights to access and amend educational records.  *See id.*  While FERPA establishes general prohibitions against the disclosure of education records[1] without consent, it contains several exceptions, and it recognizes that "directory information"[2] contained in education records "*would not* generally be considered harmful or an invasion of privacy if disclosed" and can be disclosed without consent.  *See* https://studentprivacy.ed.gov/content/directory-information (last visited Apr. 6, 2026) (emphasis added); 20 U.S.C. § 1232g (b)(1) (recognizing "directory information" is exempt from FERPA's confidentiality requirements and can be disclosed without consent).  However, "[a]ny school which elects to make directory information public without a student's consent 'shall give public notice of the categories of information which it has designated as [directory] information.'"  20 U.S.C. § 1232g (a)(5)(B).

Consistent with FERPA, Liberty publishes a FERPA/Privacy of Information Policy (the "FERPA Policy"), which identifies the categories of information it considers "directory

---

[1] "Education records" means "those records, files, documents, and other materials which: (1) contain information directly related to a student; and (2) are maintained by an educational agency or institution or by a person acting for such agency or institution."  20 U.S.C. § 1232g (a)(4)(a).

[2] FERPA defines "directory information" as including "the student's name; address; telephone listing; electronic mail address; photograph; date and place of birth; major field of study; grade level; enrollment status (*e.g.*, undergraduate or graduate, full-time or part-time); dates of attendance; participation in officially recognized activities and sports; weight and height of members of athletic teams; degrees, honors, and awards received; and the most recent educational agency or institution attended."  34 C.F.R. § 99.3.

information," and which can be disclosed without a student's consent.[3]  Under that FERPA Policy, Liberty identifies the following categories of information as "directory information": names, addresses*, telephone listings*, email addresses*, images, date and place of birth, enrollment status (*e.g.*, undergraduate/graduate, full-time/part-time, residential/online program), academic programs, major fields of study, dates of attendance, anticipated graduation date, dates of admission, class level, participation in officially recognized activities and sports, weight and height of members of athletic teams, degrees, honors, and award received, the most recent institution attended.[4]  *Id.*

The FERPA Policy goes on to note that "[s]tudents who do not want Liberty [] to disclose any or all" of the directory information "must notify Liberty [] of this request using their Liberty email account to register@liberty.edu."  *Id.*  Nowhere in the Complaint does Plaintiff allege she advised Liberty not to disclose her directory information.

## III.    The "myLU" Portal

All Plaintiff's allegations focus on Liberty's myLU, which is an "online student portal which is located at www.mylu.liberty.edu and a learning management system located at www.liberty.instructure.com." (collectively, the "Portal").  Cmpl. ¶ 4.  The Complaint alleges the Portal "allows students to review their grades, enroll in courses, submit assignments, view information regarding their financial aid, and find jobs or internships, among other things."  *Id.* ¶ 4.  The Complaint alleges that "through the Portal [Liberty] collected and transmitted sensitive,

---

[3]https://libertyedu.public.na2.doctract.com/doctract/documentportal/08DC692B98F6D153255D5 F4D576D2E24.  Plaintiff repeatedly references Liberty's website and FERPA (Cmpl. ¶¶ 2, 12, 82-88, 92-172) throughout the Complaint and therefore this information is properly considered on a motion to dismiss.

[4] The FERPA Policy explains that categories identified with an asterisk shall only be disclosed in accordance with Va. Code §23.1-405(C).

4

personally identifiable information from Plaintiff's and Class Member's education records to

unauthorized third parties . . . through the use of surreptitious online tracking tools." *Id.* ¶ 5. The

Complaint goes on to allege that the sensitive personally identifiable information transmitted

includes "full names, registration status, course names and numbers, as well as the content of their

prayer requests." *Id.* ¶ 6.

## IV.    <u>Plaintiff consented to Liberty's Privacy Policy</u>

The Complaint's conclusory allegations about surreptitious online tracking are belied by

Liberty's Privacy Policy, which is located at <u>https://www.liberty.edu/offices/privacy-policy/</u>. This

Privacy Policy discloses the use of tracking technologies, and identifies the types of information

collected, how it is shared.[5] *Id.* By way of example, the Privacy Policy states:

> Liberty University collects various types of information through our
> sites and other websites where you express interest in our services, as
> well as through our mobile applications, via email, Live Chat over the
> phone, via printed forms and in person. Some information is collected
> automatically through various web and Internet technologies

---

[5] The Privacy Policy contained on the www.liberty.edu website is properly considered with this Motion to Dismiss, as the website and Privacy Policy are cited throughout the Complaint (Cmpl. ¶¶ 42, 43, 48) and are integral to its allegations. *See, e.g., Smith v. McClure,* No. 6:10-cv-00022, 2010 U.S. Dist. LEXIS 56753, *10 (W.D. Va. June 8, 2010) *(*finding website properly considered on motion to dismiss where plaintiff "has referenced and explicitly relied upon the website PatentStorm in support of his claim for relief, and attached screenshots from this website as exhibits to his complaint" and the "Court has independently visited this website."); *Solum v. CertainTeed Corp.,* 147 F. Supp. 3d 404, 409-410 (E.D.N.C. 2015) (considering website materials referenced in a complaint on a motion to dismiss); *Sandviks v. PhD Fitness LLC*, No. 1:17-cv-00744-JMC, 2018 U.S. Dist. LEXIS 45071, *16, n.5 (D.S.C. March 20, 2018) (finding repeated citations to a website sufficient for a court to properly consider disclaimer as part of a motion to dismiss); *In re Burlington Coat Factory Sec. Litig.*,114 F.3d 1410, 1426 (3d Cir. 1997) (considering, on a motion to dismiss, a website cited and relied upon in the amended complaint, on the grounds that it was a document "integral to or explicitly relied upon" therein); *Willard v. Tropicana Mfg. Co.*, 577 F. Supp. 3d 814, 827 n.4 (N.D. Ill. 2021) (considering website on motion to dismiss because it was "referenced in the complaint and central to plaintiff's claims"); *Atl. Recording Corp. v. Project Playlist, Inc.*, 603 F. Supp. 2d 690, 694, n.3 (S.D.N.Y. 2009) (holding that court may consider website on a motion to dismiss when the complaint incorporates it by reference (citations omitted)).

5

> including social networking tools used by the University.  Other information is collected when provided to us voluntarily.

*Id*.  That same disclosure and additional disclosures about Liberty's use of tracking technologies and the collection and sharing of information are publicly available and were in place on Liberty's Website as far back as January 10, 2021.  Links to the Liberty cover page and Privacy Policy, which were in place as of January 10, 2021 are available here: Privacy Policy | University Offices | Liberty University and Website Privacy Policy - Institutional Effectiveness - Confluence.

Notably, Liberty Students are required to accept Liberty's Privacy Policy as part of the Institutional Agreement a student must agree to as part of applying for admission to Liberty. Institutional Agreement - Liberty University Online.

## V.       The Tracking Tool Providers' Disclosures

The "Tracking Tool Providers" referenced in the Complaint (*i.e.*, Facebook, Google, Microsoft) also have their own privacy policies, and those policies disclose to users how their information is tracked on the internet.  Plaintiff readily admits in the Complaint that she was a user and "possessed accounts with Facebook, Google and Microsoft."  Cmpl. ¶ 19.

The Google policy cited in the Complaint (*Id.*, ¶ 30 n.13), explains to account holders that Google "set[s] cookies on your browser" and your "web browser automatically sends certain information to Google," including the URL address of the page being visited and the user's IP address.  *See*  https://policies.google.com/technologies/partner-sites ("Google Policy").  The Google Policy also notes: "Our Privacy Policy explains the legal grounds Google relies upon to process your information – for example, *we may process your information with your consent* or to pursue legitimate interests such as providing, maintaining and improving our services to meet the needs of our users.  *Id.*  (emphasis added).

6

The Microsoft policy cited in the Complaint (Cmpl. ¶¶ 33-34, n.17-18) likewise discloses to its users that Microsoft uses "cookies and similar technologies for storing and honoring your preferences and settings, enabling you to sign in, providing interest-based advertising, combating fraud, analyzing how our products perform, and fulfilling other legitimate purposes." https://www.microsoft.com/en-us/privacy/privacystatement#mainadvertisingidmodule.com ("Microsoft Policy"). The Microsoft Policy notes that Microsoft uses cookies from third parties including "[s]ocial Media cookies designed to show you ads and content based on your social media profiles and activities on our websites; Analytics cookies to better understand how you and others use our websites so that we can make them better, and so the third parties can improve their own products and services; Advertising cookies to show you ads that are relevant to you; and Required cookies used to perform essential website functions." *Id.* The Microsoft Policy also notes that "[w]here required, we obtain your consent prior to placing or using optional cookies that are not (i) strictly necessary to provide the website; or (ii) for the purpose of facilitating a communication. *Id.*

The Facebook policy cited in the Complaint (Cmpl. ¶¶ 26-27, n.6, 8) also discloses to users the use of the Meta Pixel and how this tool "allows businesses to send information about people's interactions on their website or app to Meta." www.facebook.com/help/2230503797265156/?helpref+related_articles.com (the "Facebook Policy"). The Facebook Policy goes on to explain "[w]e don't sell your information to anyone" and "[w]e prohibit businesses or organizations from sharing sensitive information with us, such as health and financial information, your date of birth and passwords." *Id.*

Further, each Tracking Tool Provider alerts its account holders that the collection of information depends on "the choices [the account holder] make[s], including your privacy settings

7

and the products and features you use." Microsoft Policy; *see also* Google Policy ("Here are some of the ways you can control the information that is shared by your device when you visit or interact with sites and apps that use Google services"); *see also* Ad Preferences at www.facebook.com/help/109378269482053/?helpref=hc_fnav.com ("if you don't want Facebook to use information based on your activity on websites or apps off Facebook to show you ads, you can opt out from your settings").

## VI.    The allegations in the Complaint

The Complaint asserts five causes of action, all of which are based on the legal conclusion that Liberty disclosed Plaintiff's "Sensitive Information" through use of tracking technologies deployed on the Portal. *See* Cmpl. ¶ 6. The Complaint identifies the information being disclosed as "full names, registration status, course names and numbers, as well as the content of their prayer requests," but it does not identify when the disclosures occurred or the specific information that was shared. *Id.* Instead, the Complaint contends Plaintiff used the Portal in a manner depicted in screenshots that are inserted in the Complaint. *See* Cmpl. Figures 1-8. When those screenshots are examined, however, they confirm no sensitive information is being transmitted.

For example, the Complaint alleges in "Figures" 1, 2, 7, and 8 that Liberty disclosed to Facebook and Microsoft "the student's full name, course titles and numbers, and past or future assignment names." Cmpl. ¶¶ 62, 64. All of that information, however, is directory information that Plaintiff understood was not confidential and could be shared under FERPA.

Moreover, Figures 1 and 7 include the URL for "Grades for Kyler Lyons," but there is no evidence in either figure that a grade for Plaintiff was shared with Facebook or Microsoft. In fact, Figure 7 demonstrates the URL reference for "Grades for Kyler Lyons," includes only a course number and course title but **it does not** include a grade:

8



Cmpl. ¶ 64, fig. 7.  Similarly Figures 3-6, show "the student's course numbers, the term the student is taking or took a course, and whether the student is a current student or alumni."  Cmpl. ¶ 63. This too is non-confidential directory information.

The Complaint also contains a screenshot (Figure 9) which Plaintiff contends shows "the content of the Prayer Request [being] shared to Google."  Cmpl. ¶ 65.  Figure 9, however, shows no such thing.  Figure 9 shows someone navigating to the "Prayer Request" page, but there is no sharing of the content of any Prayer Request whatsoever.  Cmpl. ¶ 65, fig. 9 (*see* "en pageview").  Moreover, the Complaint never alleges that Plaintiff even submitted a Prayer Request; instead, it states generally and inconclusively that Plaintiff "used the Portal for *some or all of these purposes*." Cmpl. ¶ 4 (emphasis added).

Finally, the Complaint contains no plausible factual allegations of any misuse of Plaintiff's information, any financial harm, or any loss or concrete or particularized injury flowing from the alleged transmission of her non-confidential directory information to the Tracking Tool Providers, with whom she willingly maintained an account.

9

**LEGAL ARGUMENT**

I.   **The Complaint must be dismissed in its entirety under Fed. R. Civ. P. 12(b)(1) because Plaintiff lacks Article III standing.**

As a threshold matter, all of Plaintiff's claims must be dismissed for lack of standing because the Complaint does not plausibly allege a concrete particularized injury that is actual or imminent and attributable to Liberty's conduct.

"To establish Article III standing, an injury must be 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (citation omitted).  A "concrete" injury must be "'real, and not abstract,'" not merely "procedural." *TransUnion LLC v. Ramirez,* 594 U.S. 413, 424, 440 (2021) (quoting *Spokeo v. Robins,* 578 U.S. 330, 340-41 (2016)).

In other words, a technical violation alone is insufficient to establish standing.  *Id.* at 426. And, in the context of a privacy violation, a plaintiff must "identify the 'specific personal information [defendant] disclosed that implicates a protectable privacy interest.'"  *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 864 (S.D. Cal. 2023).  Moreover, "standing is not dispensed in gross," and "a plaintiff must demonstrate standing separately for each form of relief sought." *Holmes v. Elephant Ins. Co.*, 156 F.4th 413, 420 (4th Cir. 2025).  The Complaint does not come close to establishing Article III standing.

A.   **The alleged disclosure of directory information is insufficient to constitute a concrete injury.**

The Complaint fails to allege facts showing a concrete injury-in-fact.  The Fourth Circuit has recently recognized the unauthorized disclosure of non-sensitive information, like the information here, does not confer standing.  In *Holmes*, the Fourth Circuit held that two plaintiffs whose driver's license numbers were actually posted on the dark web had standing to pursue claims because the public disclosure of "sensitive" personal information "that the plaintiff would

10

justifiably prefer to tightly control" was analogous to the common law tort of "public disclosure of private facts." 156 F.4th at 424-425. In issuing that decision, the Fourth Circuit confirmed that "only sensitive personal information falls within the scope of the tort. Other pieces of nonsensitive personal information can be shared without inflicting actionable harm." *Id*. at 424.

Other courts take the same approach. *See e.g., Byars v. Sterling Jewelers, Inc.,* No. 5:22-cv-01456, 2023 U.S. Dist. LEXIS 61276, *3 (C.D. Cal. Apr. 5, 2023) ("Plaintiff does not allege that she disclosed any sensitive information to Defendant, much less identify any specific personal information she disclosed that implicates a protectable privacy interest. She therefore has not identified any harm to her privacy."); *Massie v. Gen. Motors, LLC,* No. 21-787, 2022 U.S. Dist. LEXIS 28969, *4 (D. Del. Feb. 17, 2022) (finding "Plaintiffs have not alleged any disclosure of any of their private information. Insofar as Plaintiffs have alleged GM disclosed their non-private information to Decibel, they have not alleged that Decibel used that information in any way, let alone in a way that harmed or would likely harm Plaintiffs."); *Lightoller v. JetBlue Airways Corp.*, No. 23-cv-00361, 2023 U.S. Dist. LEXIS 102158 at *4 (S.D. Cal. June 12, 2023) (finding allegations that the defendant intercepted the plaintiff's communications with the defendant's website, without alleging disclosure of any specific personal information, fail to assert a concrete privacy harm).

The information allegedly disclosed here is neither sensitive nor confidential and it does not implicate any privacy interests. As outlined above, the information allegedly shared consists of a "student's full name, course titles and numbers, and past or future assignment names," along with "the term the student is taking or took a course, and whether the student is [a] current student or alumni." Cmpl. ¶¶ 62-63. Indeed, this information is classic "directory information" that a university is permitted to make public without consent under its FERPA Policy. *See* 20 U.S.C.

11

§ 1232g (a)(5)(B). [6] That information also is recognized by the U.S. Department of Education, as "generally not considered harmful or an invasion of privacy if disclosed." *See* https://studentprivacy.ed.gov/content/directory-information.com (last visited Apr. 6, 2026).

The Complaint also contains conclusory references to the transmission of "grades" and "Prayer Requests," as shown in Figures 1, 7 and 9. Cmpl. ¶¶ 62, 64-65. Those Figures, however, do not evidence that grades and Prayer Requests are being disclosed, let alone Prayer Requests made by the Plaintiff or her grades. As explained above, Figures 1 and 7 do not disclose Plaintiff's grades. At most, they reveal Plaintiff took a course in Ethical and Legal Issues in Counselling, but no grade is disclosed. *See* Brf., *supra* at Part F, p. 9. Likewise Figure 9 does not disclose any Prayer Request. It reflects that someone navigated to a Prayer Request webpage, but there is no content shared. *See id*.

Courts across multiple circuits have confirmed that non-sensitive information cannot confer standing. For example, in *Cook v. GameStop, Inc.*, 148 F.4th 153 (3d Cir. 2025), the Third Circuit affirmed the dismissal of a putative class action alleging violations of the Pennsylvania Wiretapping and Electronic Surveillance Control Act and common law privacy tort, based on a lack of standing where the tracking technology at issue allegedly monitored interactions with a website, but did not share sensitive information. The Third Circuit found "merely tracking internet users' browsing time and website interactions—without recording or disclosing sensitive or personal information—fails to constitute the type of concrete injury required to confer Article III standing." *Id.* at 160–62.

---

[6] Attached as **<u>Exhibit A</u>** is a chart of the type of information identified in the Complaint and category of directory information it fits within under FERPA.

Similarly, in *Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025), the Ninth Circuit affirmed the dismissal of a complaint alleging violations of state wiretap laws and common law privacy torts based on a lack of standing where the complaint alleged tracking of her interactions with a website occurred, but failed to identify any "embarrassing, invasive, or otherwise private information" collected by the tracking tool. *Id.* at 791. The court compared the monitoring of website interactions to "a store clerk's observing shoppers in order to identify aisles that are particularly popular." *Id.* The same observations would apply where a university publishes a Dean's List, student's major or a student's year of graduation or grade point average.

Other courts concur. *See, e.g.*, *Heaven v. Prime Hydration LLC,* 761 F. Supp. 3d 812, 820 (E.D. Pa. 2025) (dismissing pixel-tracking claim for lack of standing where plaintiff's "searches for drink flavors" were "not the type of private information that, when disclosed, creates a harm sufficient to establish standing"); *Gabrielle v. Insider, Inc.,* No. 24-cv-01566 (ER), 2025 LEXIS 127154, *20 (S.D.N.Y. Feb. 18, 2025) (collection and disclosure of an IP address through tracking technology "does not implicate a legally protected privacy interest").

The Complaint's unsupported references to grades and Prayer Requests cannot overcome the Figures they are based upon, which state otherwise. *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 167 (4th Cir. 2016) ("When the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper."). Navigating to a webpage about Prayer Requests or grades, without disclosing any contents, is not sensitive information and does not come close to establishing a concrete injury in fact to give rise to Article III standing.

**B.      A bare statutory violation of "privacy" rights cannot confer standing.**

To the extent Plaintiff relies on conclusory allegations that there are violations of FERPA or the ECPA to establish a privacy-related "injury" to try to invent standing, that argument fails too.  There is no violation of FERPA because the information allegedly disclosed is directory information, which can be disclosed without consent, *see* 20 U.S.C. § 1232g (b)(1), and there is no violation of the ECPA because Liberty consented to the disclosure.  *See* Brf., *supra* at Part II(G)(1), p. 25.

Moreover, simply alleging a procedural violation of a statute, without plausible allegations of injury, is insufficient to confer standing.  *See, e.g.*, *Spokeo*, 578 U.S. at 342 (a plaintiff "cannot satisfy the demands of Article III by alleging a bare procedural violation."); *see also O'Leary v. TrustedID, Inc.*, 60 F.4th 240, 243 (4th Cir. 2023) (citing *Spokeo,* 578 U.S. at 342) (collecting cases) ("The intangible harm of enduring a statutory violation, standing alone, typically won't suffice under Article III—unless there's separate harm (or a materially increased risk of another harm) associated with the violation.").  Because there are no plausible allegations that any sensitive information was disclosed, and there certainly is no harm or injury alleged, Plaintiff's blind reliance on a statutory violation of FERPA cannot support Article III standing.

**C.      Plaintiff's remaining theories of a concrete injury are insufficient to confer standing.**

Finally, the Complaint's conclusory allegations of other forms of "injury" or "future harm" (*see* Cmpl. ¶ 13) do not establish standing.  Those generalized assertions of emotional distress, ongoing risk of harm, loss of benefit of the bargain, and diminution in the value of her personal information are precisely the kinds of conclusory harms that the Fourth Circuit and courts across the country reject as insufficient for standing.

14

*Emotional distress.* The Fourth Circuit has held that emotional distress cannot alone "furnish standing for damages" because "a plaintiff can freely allege emotional distress in every case with little fear of disproof" and "tort law has long aimed a skeptical eye at freestanding emotional distress claims." *Holmes*, 156 F.4th at 434. Plaintiff has not alleged a separate injury on which to base her emotional distress, thus it is not a concrete injury for purposes of Article III. *See Gadomski v. Patelco Credit Union*, No. 2:18-cv-00695-TLN-AC, 2020 U.S. Dist. LEXIS 51070, *10-11 (E.D. Cal. March 23, 2020) (conclusory allegations of emotional distress are insufficient to confer standing).

*Risk of future harm.* Plaintiff alleges she is entitled to "injunctive relief to redress the imminent and currently ongoing harm." Cmpl., ¶¶ 108(i), 136. But Plaintiff does not identify what future harm is imminent. The Supreme Court has made clear that "[t]hreatened injury must be certainly impending to constitute injury in fact" and that vague "allegations of *possible* future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (emphasis in original). The Fourth Circuit applied this standard in *Holmes* and held that the risk of future misuse of compromised driver's license numbers was "far too speculative" to support standing because the chain of required inferences was too attenuated. 156 F.4th at 430. If the risk of future identity theft from stolen driver's license numbers is too speculative, then the risk of future harm from the transmission of course titles and enrollment status to analytics providers likewise fails.

*Diminution of value.* Plaintiff's conclusory allegation that the unauthorized disclosure "diminished the value of [her] information" (Cmpl. ¶ 81) is insufficient. Courts routinely hold that such allegations cannot establish standing unless a plaintiff pleads that she could have profited from an attempted sale of the information or that the sale actually diminished its market value. *See In re Cap. One Consumer Data Sec. Breach Litig.*, 488 F. Supp. 3d 374, 403 (E.D. Va. 2020)

15

("Even assuming that Plaintiffs' PII has monetary value, Plaintiffs do not allege any facts explaining *how* their PII became less valuable as a result of the breach.") (emphasis in original). The Complaint contains no allegation that Plaintiff sought to sell her information and was refused, that she attempted to purchase goods or services that require PII in exchange, or that she was offered "less-than-desirable terms because of [her] PII's prior exposure[.]" *Id*. She therefore fails to plausibly allege damages based on a diminution of value.

*Loss of benefit of the bargain.* Plaintiff also alleges that she "would not have used Defendant's services, or would have paid substantially less for those services, had [she] known [her] Sensitive Information would be disclosed." Cmpl. ¶ 143. This benefit-of-the-bargain theory fails because courts require a plaintiff to identify a specific amount paid for the data-security component of the bargain. *See, e.g.*, *Kuhns v. Scottrade, Inc.*, 868 F.3d 711, 718 (8th Cir. 2017) (dismissing where plaintiff failed to identify "what specific portion of [his] fees went to data protection"); *Attias v. CareFirst, Inc.*, 365 F. Supp. 3d 1, 13 (D.D.C. 2019) (rejecting benefit-of-the-bargain standing where plaintiffs could not "put a number . . . on the value of the contracted-for data security"). There is simply no benefit of any "bargain" that was lost. *See Chambliss v. CareFirst, Inc.,* 189 F. Supp. 3d 564, 572 (D. Md. 2016) (rejecting benefit-of-the-bargain theory where the plaintiffs "ma[de] no allegations that the data breach diminished the value of the health insurance they purchased").

## II.    <u>The Complaint must be dismissed under Fed. R. Civ. Pro. 12(b)(6) because it fails to state claims upon which relief can be granted.</u>

Rule 12(b)(6) requires dismissal when a complaint lacks plausible allegations of fact that would enable the court to infer a defendant is liable. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). That standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," or "naked assertion[s]" devoid of "further factual enhancement." *Id*. (citing *Bell Atl.*

16

*Corp. v. Twombly,* 550 U.S. 544, 555-57 (2007)). "To meet this standard, a plaintiff must provide 'more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.'" *Zawod v. Sia "Baltmark Invest,"* No. 1:12cv515 (JCC/IDD), 2013 U.S. Dist. LEXIS 159079, \*9 (E.D. Va. Nov. 6, 2013) (quoting *Twombly,* 550 U.S. at 555)). If the complaint lacks non-conclusory facts entitling the plaintiff to relief, "this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 558.

### A.      <u>Virginia law applies to Plaintiff's common law claims.</u>

As a preliminary matter, the Court must determine which state's law applies to Plaintiffs' common law claims against Liberty. Federal courts apply the choice of law rules of the forum state, which here is Virginia. *Wilson v. SunTrust Mortg., Inc.,* No. 3:13cv622, 2014 U.S. Dist. LEXIS 33016, \*10 (E.D. Va. Mar. 12, 2014) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co*., 313 U.S. 487, 496 (1941)).

Under Virginia law, tort claims are governed by the law of the place where the tortious conduct allegedly occurred, or *lex loci delicti*. *Milton v. IIT Research Inst*., 138 F.3d 519, 522 (4th Cir. 1998). And, "the place where the last event necessary to make an act liable for an alleged tort takes place" determines the substantive law that applies in a tort action. *Quillen v. Int'l Playtex, Inc*., 789 F.2d 1041, 1044 (4th Cir. 1986) (internal citation omitted).

With respect to the implied contract claim, Virginia recognizes, "[q]uestions of validity, interpretation or construction of a contract are resolved according to *lex loci contractus*, the law of the state where the contract was made." *Rockingham Precast, Inc. v. Am. Infrastructure-Maryland, Inc*., Civil Action No. 5:11cv00024, 2011 U.S. Dist. LEXIS 130885, \*23 (W.D. Va. Nov. 14, 2011) (citations omitted). Virginia law also recognized that "where, as is the case here, a contract is made in one jurisdiction but performed in another, *the law of the place of performance*

17

*governs the contract.*"  *Hunter Innovations Co. v. Travelers Indem. Co. of Connecticut,* 753 F.
Supp. 2d 597, 602 (E.D. Va. 2010) (emphasis added).  There is no question that Liberty's
performance of any contract occurred in Lynchburg, Virginia.  *See* Cmpl. ¶¶ 20, 23.

Applying those principles, Virginia law governs Plaintiff's common law tort and contract
claims.  The Complaint seeks relief for alleged injuries suffered by "[a]ll present or former students
of Liberty University[.]"  Cmpl. ¶ 103.  The injuries allegedly suffered by Plaintiff arise from the
decision made in Virginia by Liberty.  And, Liberty's "principal place of business" is in
Lynchburg, Virginia, where "a substantial part of the events giving rise to the claims occurred in
this judicial district," and that Plaintiff used the Portal to "enroll as a student."  *Id*. ¶¶ 4, 21-24.
Thus, the alleged conduct giving rise to the common law torts took place in Virginia, and therefore
Virginia law governs the common tort claims.

Virginia law also governs the implied contract claim because the Complaint admits that
the place of performance of any implied contract unquestionably occurred in the Western District
of Virginia.  *See* Cmpl. ¶ 23.

### B.  All of Plaintiff's claims fail because the sharing of directory information can occur without consent

All of Plaintiff's causes of action allege information was shared at some unidentified time
with Tracking Tool Providers without consent.  *See, e.g.,* Cmpl. ¶¶ 117, 120, 131, 134, 138, 140,
151.  All these causes of action fail, however, because under the FERPA Policy Liberty is
permitted to disclose this information without consent.  *See* Brf., *supra* at Part B, pp. 3-4.  In
addition, Plaintiff consented to the use of the tracking technologies by agreeing to the University's
Privacy[7] Policy under the institutional agreement that must be signed as part of the submission of

---

[7]The 2025 Privacy Policy is available at
https://libertyedu.public.na2.doctract.com/doctract/documentportal/08DCD97A3AE277B72E2C
85694886C14C (last visited on April 8, 2026).  The 2021 Privacy Policy is available at

18

an application.  *See* Brf., *supra* at Part D, p. 6.  Plaintiff's acceptance of the Privacy Policy and

FERPA Policy are fatal to all of Plaintiff's claims.  *See Washington v. Flixbus, Inc.*, No. 3:25-cv-

00212, 2025 U.S. Dist. LEXIS 107195, at \*17 (S.D. Cal. June 5, 2025) (dismissing California

wiretap act (CIPA) claim and invasion of privacy claim where plaintiff consented to Defendant's

Privacy Policy and Terms and Conditions).

> **C.      The invasion of privacy claim fails.**

In Count I of the Complaint, Plaintiff asserts a common law invasion of privacy claim

based on Liberty's alleged "disclosure and publicization of Plaintiff's and Class Members'

Sensitive Information coupled with individually identifying information [that] is highly offensive

to the reasonable person."  Cmpl. ¶ 122.  That claim fails because Virginia does not recognize a

common law cause of action for invasion of privacy or intrusion upon seclusion.  *See Falwell v.*

*Penthouse Int'l*, 521 F. Supp. 1204, 1206 (W.D. Va. 1981) (dismissing false light and invasion of

privacy claims because Virginia "simply do[es] not recognize such a common law cause of

action."); *Hayes v. KIK Custom Prods.*, No. 7:11-cv-00200, 2011 U.S. Dist. LEXIS 118943, \*1

(W.D. Va. Oct. 14, 2011) ("Because Virginia does not recognize common law claims for invasion

of privacy or false light, the court dismisses those claims); *Johnston v. Speedway, LLC*, No.

7:21cv00100, 2021 U.S. Dist. LEXIS 80891, \*14 (W.D. Va. Apr. 28, 2021) (same).

Beyond that, even if an invasion of privacy tort claim existed under Virginia law, the

Complaint does not come close to adequately alleging an invasion of privacy claim, because no

sensitive information is being shared and there is nothing "highly offensive" about the sharing of

website interactions and directory information to support such a claim.  *See In re Google, Inc.*

---

https://web.archive.org/web/20201128143527/https://wiki.os.liberty.edu/display/IE/Website+Privacy+Policy.

*Privacy Pol'y Litig.,* 58 F. Supp. 3d 968, 973, 988 (N.D. Cal. 2014) (disclosure of "personal identifying information, browsing habits, search queries, responsiveness to ads, demographic information, declared preferences and other information" not highly offensive); *Low v. LinkedIn Corp.,* 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (alleged disclosure of web browsing history not highly offensive).

### D.     Plaintiff's negligence claim is barred by the economic loss doctrine.

While Plaintiff's "damages" are only described in general and conclusory terms, it is evident from the allegations in support of the negligence claim that Plaintiff is seeking to recover economic damages.  *See* Cmpl. ¶135 (alleging Plaintiff is entitled to "compensatory, nominal and/or punitive damages").  Because the Complaint seeks economic damages, Plaintiff's negligence claim fails as a matter of law.

Virginia law recognizes a robust economic loss doctrine, which the Supreme Court of Virginia has described as a "remedy-specific application of the source-of-duty rule." *Nationwide Prop. & Cas. Ins. Co. v. Premier Roofing & Siding Contractors, Inc.*, No. 2:19cv154, 2020 U.S. Dist. LEXIS 263167, *6 (E.D. Va. Jan. 6, 2020).  The economic loss doctrine bars recovery in tort for economic losses attributable to the alleged breach of contract or for any property damage specifically involving the home itself, which was the object of contract.  *Tingler v. Graystone Homes, Inc.*, 298 Va. 63, 83 (2019).  Its core principle is that "when a plaintiff alleges and proves nothing more than disappointed economic expectations, the law of contracts, not the law of torts, provides the remedy for such economic losses." *Filak v. George*, 267 Va. 612, 618 (2004); *see also Richmond Metropolitan Authority v. McDevitt Street Bovis, Inc.*, 507 S.E.2d 344, 347 (Va. 1998); *Sensenbrenner v. Rust, Orling & Neale, Architects, Inc.*, 236 Va. 419 (1988).

The Complaint alleges that Liberty had a "duty of care to use reasonable means to secure and safeguard" Plaintiff's information "from unauthorized disclosure to third parties."  Cmpl.

20

¶ 130.  But the only relationship between Plaintiff and Liberty is a contractual one, and any duty Liberty owed to Plaintiff regarding her non-confidential information is governed by Liberty's Privacy Policy, Liberty's FERPA Policy and FERPA's regulatory framework – not from any independent common law duty.  *Showell v. Capella Univ. Inc.*, 2 No. GLR-16-3761, 017 U.S. Dist. LEXIS 225113, *7 (D. Md. Sept. 29, 2017) (quoting *Harwood v. Johns Hopkins University*, 130 Md. App. 476, 483 (Md. App. 2000)) ("The terms of the contract between the student and the university 'are contained in the brochures, course offering bulletins, and other official statements, policies and publications' of a university, and the university is required to . . . enforce its policies consistent with the terms.").

Because the Complaint contains no allegations of a personal injury or damage to property, her negligence claim is barred by the economic loss rule.  *See, e.g.*, *Tingler v. Graystone Homes, Inc.*, 298 Va. 63, 83 (2019); *Metter v. Capella Univ., LLC*, No. 20-6405, 2021 U.S. Dist. LEXIS 43586, at *14 (E.D. Pa. Mar. 9, 2021) (economic loss doctrine barred a student's "misrepresentation" claims against university: "The injury in this case is contractual, and Metter's claims must be presented as contract law claims."); *Nicole der Boghossian v. Capella Univ., LLC*, No. 24-CV-3007, 2025 U.S. Dist. LEXIS 57294, at *29 (S.D.N.Y. Mar. 27, 2025) (same).

### E.    The breach of implied contract claim fails.

In support of her breach of implied contract claim, Plaintiff alleges she and Class Members "provided their Sensitive Information to [Liberty] in exchange for enrollment of courses and use of the Portal," and Liberty "agreed to safeguard and not disclose the Sensitive Information without consent."  Cmpl. ¶ 138.  That breach of implied contract claim fails for three reasons.

First, under Virginia law, the existence of an express contract precludes an implied contract claim covering the same subject matter of the parties' dispute.  *Spectra-4, LLP v. Uniwest Com. Realty, Inc.*, 772 S.E.2d 290, 293 (Va. 2015). The rationale for that rule is that when an express

21

contract exists covering the same subject matter, "there is no need to imply one because the parties have already negotiated an agreement." *Mongold v. Woods*, 278 Va. 196, 204 (2009) (citing *Nedrich v. Jones,* 245 Va. 465, 477 (1993)).  As outlined above, Liberty's Privacy Policy and FERPA Policy govern the subject matter of the dispute at issue here.  Therefore, any claim for an implied contract governing the same subject fails as a matter of law.  *See, e.g.*, *In re Cap. One Consumer Data Sec. Breach Litig.*, 488 F.Supp. 3d 374, 413 (E.D. Va. 2020) ("As with their unjust enrichment claim, an express contract precludes claims for actions covered by that contract based on implied contract.") (citation omitted).

Second, Plaintiff's implied contract claim fails because there are no plausible allegations of the essential elements of an implied contract claim.  Under Virginia law, the elements of an implied contract claim are the same elements of an express contract claim.  *Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 166 (4th Cir. 2012).  Those elements are: "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation."  *Squire v. Virginia Hous. Dev. Auth.*, 287 Va. 507, 517 (2014).  As outlined above, there are no plausible allegations of Liberty's breach of an obligation not to disclose Sensitive Information without consent because Liberty did not disclose Plaintiff's "Sensitive Information."  *See* Brf. *supra* at Part B, pp. 3-4.  And, even if it did, that disclosure was made with Plaintiff's consent, as outlined in the Privacy Policy and FERPA Notice.  *See* Brf. *supra* at Part D, pp. 5-6.

Third, there are no allegations that Plaintiff suffered any damages arising from Liberty's conduct, let alone damages that are plausibly alleged with reasonable certainty.  Virginia law is clear that the element of damage to support a breach of contract claim must be alleged with reasonable certainty.  *Elegant Massage, LLC v. State Farm Mut. Auto. Ins. Co.,* 506 F. Supp. 3d

22

360, 369 (E.D. Va. 2020); *Nichols Construction Corp. v. Virginia Machine Tool Co., LLC*, 661 S.E.2d 467, 472 (Va. 2008). Moreover, if damages are only "contingent, speculative and uncertain," then they cannot be established with reasonable certainty. *Elegant Massage, LLC,* 506 F. Supp. 3d at 369. And, in the absence of plausible allegations of damages, a breach of contract claim must be dismissed. *Sunrise Continuing Care, LLC v. Wright,* 277 Va. 148, 154 (2009).

As outlined above, Plaintiff has failed to allege any damages, let alone reasonably certain damages arising from the alleged disclosure of her information. Indeed, there are no allegations about any damages Plaintiff sustained from the disclosure of information that is not sensitive and has not been misused. Accordingly, without plausible allegations of damages, the contract claim fails as a matter of law.

## F.      The unjust enrichment claim fails.

In the alternative to her breach of implied contract claim, Plaintiff also asserts a claim for unjust enrichment, alleging she and Class Members conferred a monetary benefit on Liberty in exchange for educational services by providing enrollment payments, as well as their "Sensitive Information to [Liberty] which [Liberty] then utilized for marketing and advertising purposes." Cmpl. ¶¶ 147, 149. Plaintiff claims Liberty should not be permitted to retain such benefits obtained from the collection and sharing of her Sensitive Information. Cmpl. ¶ 151.

The unjust enrichment claim fails for the same reason the breach of an implied contract claim fails. Under Virginia law, an unjust enrichment claim cannot be sustained where an express contract exists that would govern the dispute. *See In re Capital One Bank Credit Card Interest Rate Litig.*, 51 F. Supp. 3d 1316, 1351 (N.D. Ga. 2014) (applying Virginia law) ("To the extent that the Plaintiffs premise their implied contract or unjust enrichment theory on any actions covered by the 2005 Customer Agreement, the Court agrees that this claim would be barred under

23

Virginia law by the existence of the written contract governing the parties' relationship"). As noted above, the Privacy Policy and FERPA Policy govern this conduct.

In addition, the unjust enrichment claim should be dismissed because the Complaint fails to allege the essential elements of that claim. To state an unjust enrichment claim, Plaintiff must allege: (1) she conferred a benefit on Liberty; (2) Liberty knew of the benefit and should reasonably have expected to repay Plaintiff; and (3) Liberty accepted or retained the benefit without paying for its value. *T. Musgrove Construction Co. v. Young,* 840 S.E.2d 337, 341 (Va. 2020). Critically, there can be no recovery on an unjust enrichment theory "simply by showing a benefit to the defendant, without adducing other facts to raise an implication that the defendant promised to pay the plaintiff for such benefit." *Nedrich v. Jones*, 429 S.E.2d 201, 207 (Va. 1993).

The recent decision in *Lugo v. INOVA Health Care Servs.*, No. 1:24-cv-700, 2025 U.S. Dist. LEXIS 55590 (E.D. Va. Mar. 25, 2025), is directly on point. There, like here, a plaintiff alleged he conferred a benefit on a defendant business by providing it with "valuable Private Information" that defendant "distributed without authorization and proper compensation. *Id.* at *13. Although the plaintiff in *Lugo* alleged the defendant received a benefit from the retention of his Private Information, there were no plausible allegations that defendant should have reasonably expected to pay plaintiff for his information that was allegedly disclosed by tracking technologies. *Id.* at *15. The court found the failure to allege any facts that the defendant should have reasonably expected to pay plaintiff was fatal to the unjust enrichment claim. *Id.* at *16.

Here, like *Lugo*, there are no allegations that Liberty should have reasonably expected to pay Plaintiff for her information, and there are no allegations that other universities pay website users for the same types of non-sensitive directory information at issue here. Moreover, like *Lugo*, Plaintiff does not allege she reasonably expected to be paid for her non-confidential information,

24

particularly in light of the disclosures in Liberty's Privacy Policy and FERPA Policy. Those fatal flaws with Plaintiff's unjust enrichment claim warrant dismissal for the same reasons the unjust enrichment claim in *Lugo* was dismissed. *Id.*

### G. The ECPA claim fails.

In Count V of the Complaint, Plaintiff alleges a violation of the ECPA based on conclusory allegations that Liberty transmitted her "Sensitive Information" without consent. Cmpl. ¶ 159. That claim fails as a matter of law because Liberty consented to the disclosure and, as to the Prayer Requests, there was no sharing of the contents of a communication to give rise to a cognizable ECPA claim.

### 1. Liberty consented to the disclosure.

The ECPA is a federal wiretap statute which prohibits an individual from: (1) intentionally; (2) intercepting or endeavoring to intercept or procuring another person to intercept or endeavor to intercept; (3) the contents of; (4) an electronic communication; (5) using a device. *In re Facebook Internet Tracking Litig.*, 263 F. Supp. 3d 836, 844 (N.D. Cal. 2017) (citation omitted). The ECPA claim here fails in its entirety because Plaintiff has not plausibly alleged an interception of an electronic communication without consent.

It is well recognized that the ECPA is a one-party consent statute, which means it is not unlawful "for a person not acting under color of law to intercept . . . an electronic communication if the person is [1] a party to the communication or [2] where one of the parties to the communication has given prior consent to such interception." 18 U.S.C. § 2511(2)(d); *see also Deteresa v. Am. Broad. Companies, Inc.*, 121 F.3d 460, 467 (9th Cir. 1997). Stated differently, a party to a communication cannot unlawfully "intercept" a communication directed to it and cannot be held liable for "eavesdropping" upon itself. *See* 18 U.S.C. § 2511(2)(d)); *see also In re Facebook Priv. Litig.*, 791 F. Supp. 2d 705, 713–14 (N.D. Cal. 2011) (dismissing ECPA claim because tracking cookies placed by advertising providers made the

25

advertiser the intended recipient of the electronic transmission).  Because the Complaint makes clear that the Portal (*i.e.*, Liberty) was the recipient of the alleged electronic communications at issue (Cmpl. ¶¶ 160, 164), Liberty is a party to the communications, and Liberty cannot be liable for an ECPA violation because it consented to any alleged interceptions, if such interceptions occurred.  *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 275 (3d Cir. 2016) (dismissing ECPA claim because defendant "was either a party to all communications with the Plaintiff's computers or was permitted to communicate with the Plaintiff's computers by Viacom, who was itself a party to all such communications."); *In re Google Cookie Inc. Placement Consumer Priv. Litig.*, 806 F.3d 125, 142-43 (3d Cir. 2015) ("Because the defendants were the intended recipients of the transmissions at issue – i.e., GET requests that the Plaintiff's browsers sent directly to the defendants' servers – we agree that § 2511(2)(d) means the defendants have done nothing unlawful under the Wiretap Act.").[8]

Recognizing the flaw in her ECPA claim, the Complaint attempts to plead around the one-party consent law by alleging, in conclusory fashion, that Liberty "intentionally intercepted the contents of Plaintiff's and Class Members' electronic communication for the purpose of committing a tortious act in violation of the Constitution or laws of the United States or of any State – namely, invasion of privacy, among others."  Cmpl. ¶ 169.  Plaintiff also concludes that Liberty committed criminal acts by violating FERPA.  *Id.* ¶ 169.  Both claims must be rejected.

First, Plaintiff's contention that the invasion of privacy tort serves as a predicate act to invoke the crime-tort exception fails because Virginia Law does not recognize an invasion of privacy tort.  *See* Brf. *supra* at Part II(C), p. 19.  Beyond that, even if an invasion of privacy tort was recognized, Plaintiff does

---

[8] If the Court finds Plaintiff, as a party to the communication, consented to the sharing of information through the Privacy Policy and FERPA Policy, then the ECPA claim also fails on that basis as well.

not allege any plausible facts to demonstrate the alleged information disclosed was "sensitive and highly personal" or that the alleged disclosure of such information was "highly offensive to a reasonable person", which are essential elements for an invasion of privacy tort to exist. *Id.* Neither element is present because directory information is not confidential, is not sensitive or highly personal, and FERPA allows a university to disclose it without consent. Accordingly, because no invasion of privacy tort exists, the crime-tort exception does not apply.

Likewise, Plaintiff's conclusory contention that Liberty engaged in criminal activity by violating FERPA fails as a matter of law. FERPA is not a criminal statute and imposes no criminal penalties, so it cannot satisfy the crime component of the crime-tort exception. Moreover, even if it could be interpreted as a criminal statute, Liberty did not violate FERPA because the alleged information was non-confidential directory information, which can be disclosed without consent. *See Brf. supra* at Part B, pp. 3-4. Further, Plaintiff cannot rely on FERPA for the crime component of the crime-tort exception because there are no plausible allegations that Liberty intended to violate FERPA. Courts have dismissed ECPA claims tracking cases where a violation of HIPAA was not the intended purpose of the alleged interception. *See, e.g.*, *Doe v. Kaiser Found. Health Plan, Inc.*, No. 23-cv-02865-EMC, 2024 U.S. Dist. LEXIS 66733, *27 (N.D. Cal. Apr. 11, 2024) (dismissing ECPA claim because "[v]iolation of HIPAA was not the purpose of the alleged interception"); *Rodriguez v. FastMed Urgent Care, P.C.*, 741 F. Supp. 3d 352, 364 (E.D.N.C. 2024) (even where court found plausible allegations that plaintiff's information included medical information protected under HIPAA, the "mere possibility" that the interception and disclosure of data to Facebook "for the purpose of committing any criminal or tortious act" did not suffice).[9] The result should be the same here.

---

[9] Liberty recognizes that *Lugo* found the crime-tort exception was adequately alleged in a Complaint to allow an ECPA claim to proceed past a motion to dismiss. *Lugo*, however, is readily distinguishable. *Lugo* unquestionably involved the disclosure of highly sensitive health care

27

Finally, Plaintiff cannot save the ECPA claim from dismissal based on references in the Complaint to Prayer Requests.  For an ECPA claim to proceed it requires an "interception" of the "contents" of an electronic communication.  *See* 18 U.S.C. § 2511(1)(a).  Under the ECPA, "the term 'contents' refers to the intended message conveyed by the communication and does not include record information about a communication occurring or the characteristics of the message that is generated in the course of the communication," such as name or the identity of a customer, or the page a customer visits.  *In re Zynga Priv. Litig*., 750 F.3d 1098, 1106-07 (9th Cir. 2014); *see also*. *In re Facebook Internet Tracking Litigation*, 140 F. Supp. 3d 922, 935-36 (N.D. Cal. 2015) (recognizing the collecting certain URL information is insufficient to allege the "contents" of a communication); *Yoon v. Lululemon USA, Inc.,* 549 F. Supp. 3d 1073, 1082-83 (C.D. Cal. 2021) ("keystrokes, mouse clicks, pages viewed . . . shipping and billing information," and "the date and time of the visit, the duration of the visit, Plaintiff's IP address, her location at the time of the visit, her browser type, and the operating system on her device" are not "message content in the same way that [are] the words of a text message or an email).

As noted above, Figure 9 of the Complaint conclusively shows Liberty does not share the content of any Prayer Request.  *See* Brf. *supra* at Part F, p. 9  Indeed, the only thing plausibly alleged with respect to Prayer Requests is the alleged URL for the Prayer Request web page that was visited.  That is record information and not the content of a communication to support an ECPA claim.

---

information, and HIPAA has criminal provisions that a number have courts have found can serve as the criminal predicate for the crime tort exception. 2025 U.S. Dist. LEXIS 55590, at *21.  Here, there are no allegations of any sensitive information being shared and FERPA is not a criminal statute.

28

## CONCLUSION

For the foregoing reasons, Defendant Liberty University, Inc. respectfully requests that this

Court dismiss Plaintiff's Complaint in its entirety under Rules 12(b)(1) and 12(b)(6) of the Federal

Rules of Civil Procedure.

*/s/ Timothy St. George*
Timothy St. George
Virginia State Bar No. 77349
**TROUTMAN PEPPER LOCKE LLP**
Noah J. DiPasquale
Virginia State Bar No. 96519
1001 Haxall Point, 15th Floor
Richmond, VA  23219
Telephone: (804) 697-1254
Facsimile: (804) 698-6013
Email: timothy.st.george@troutman.com
Email: noah.dipasquale@troutman.com

Angelo A. Stio III [*Pro Hac Vice forthcoming*]
**TROUTMAN PEPPER LOCKE LLP**
104 Carnegie Center, Suite 203
Princeton, New Jersey 08543
Telephone: (609) 951-4125
Facsimile: (609) 452-1147
Email: angelo.stio@troutman.com

*Attorneys for Defendant Liberty University*

29

## CERTIFICATE OF SERVICE

I hereby certify that on April 10, 2026, I caused the foregoing document to be filed with the Clerk of Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

*/s/ Timothy St. George*
*Counsel for Liberty University, Inc.*

30

327684126