**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF VIRGINIA**

| | |
|---|---|
| **KYLER LYONS**, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>**LIBERTY UNIVERSITY, INC.**,<br><br>Defendant. | Case No. 6:26-cv-00007 |

**PLAINTIFF KYLER LYON'S RESPONSE IN OPPOSITION TO DEFENDANT LIBERTY INC.'S MOTION TO DISMISS**

# TABLE OF CONTENTS

I. INTRODUCTION ........ 1

II. STATEMENT OF FACTS ........ 2

III. LEGAL STANDARD ........ 2

IV. ARGUMENT ........ 3

A. LIBERTY DISCLOSED PLAINTIFF'S SENSITIVE INFORMATION TO UNAUTHORIZED THIRD PARTIES IN VIOLATION OF FERPA. ........ 3

i. Liberty disclosed Plaintiff's FERPA-protected education records without written authorization. ........ 3

ii. Even assuming *arguendo* that Liberty is correct that it only disclosed directory information, Liberty's use of the Tracking Tools would still violate FERPA. ........ 6

B. PLAINTIFF DID NOT CONSENT TO LIBERTY'S PRIVACY POLICY ........ 6

C. PLAINTIFF HAS ARTICLE III STANDING. ........ 7

i. Defendant's Use of the Tracking Tools Inflicted a Cognizable Privacy Injury on Plaintiff ........ 8

D. PLAINTIFF'S INVASION OF PRIVACY CLAIM IS WELL PLED ........ 10

i. Plaintiff's Invasion of Privacy Claim is Governed by Arizona Law ........ 10

ii. Plaintiff's Invasion of Privacy Claim is Well Pled Under Arizona Law Under an Intrusion Upon Seclusion Theory ........ 12

iii. Plaintiff's Invasion of Privacy Claim is Also Well Pled Under Arizona Law Under a Publication of Private Facts Theory ........ 12

E. PLAINTIFF'S ECPA CLAIM IS WELL PLED ........ 13

i. Plaintiff's Allegations Satisfy the Crime-Tort Exception ........ 13

ii. Liberty cannot escape liability under the ECPA by claiming it did not intend to violate FERPA. ........ 15

iii. Plaintiff properly alleges disclosure of the "contents" of her communications with Liberty. ........ 18

F. The Economic Loss Doctrine Does Not Bar Plaintiff's Negligence Claim. ........ 21

G. Plaintiff's Breach of Implied Contract Claim is Well-Pled. ........ 24

H. Plaintiff's Unjust Enrichment Claim is Well-Pled. ........ 26

V. CONCLUSION ........................................................................................................ 28

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.D. v. Aspen Dental Mgmt., Inc.*,
No. 24 C 1404, 2024 U.S. Dist. LEXIS 161090 (N.D. Ill. 2024)....14

*Abi-Najm v. Concord Condo., LLC*,
280 Va. 350, 699 S.E.2d 483 (2010)....21

*Adams v. Bain*,
697 F.2d 1213 (4th Cir. 1982)....3

*Adelman v. Christy*,
90 F. Supp. 2d 1034 (D. Ariz. 2000)....27

*Archambault v. Riverside Resort & Casino, Inc.*,
2025 U.S. Dist. LEXIS 176564 (D. Nev. 2025)....26

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....2

*B.K. v. Desert Care Network*,
2024 U.S. Dist. LEXIS 18970 (C.D. Cal. 2024)....15

*B.K. v. Eisenhower Med. Ctr.*,
2024 U.S. Dist. LEXIS 67497 (C.D. Cal. 2024)....14

*Berrow v. Navient Sols. LLC*,
685 F. Supp. 3d 859 (D. Ariz. 2023)....12

*Buonauro v. Scott*,
2026 Va. App. LEXIS 149 (Ct. App. 2026)....27

*Butts v. Weltman, Weinberg & Reis Co., LPA*,
2013 U.S. Dist. LEXIS 162483 (E.D. Va. 2013)....24

*Capiau v. Ascendum Mach., Inc.*,
2024 U.S. Dist. LEXIS 142393 (W.D.N.C. 2024)....23

*In re Capital One Consumer Data Sec. Breach Litig.*,
488 F. Supp. 3d 374 (E.D. Va. 2020)....21, 22

*Caro v. Weintraub*,
618 F.3d 94 (2d Cir. 2010)....16

*Cars Unlimited II, Inc. v. Nat'l Motor Co., Inc.*,
472 F. Supp. 2d 740 (E.D. Va. 2007) ....................10

*Castillo v. Seagate Technology, LLC*,
2016 U.S. Dist. LEXIS 187428 (N.D. Cal. 2016) ....................25

*Cook v. GameStop, Inc.*,
148 F.4th 153 (3d Cir. 2025) ....................10

*Cooper v. Mount Sinai Health Sys., Inc.*,
742 F. Supp. 3d 369 (S.D.N.Y. 2024)....................14

*Davis v. George Mason Univ.*,
395 F. Supp. 2d 331 (E.D. Va. 2005) ....................7

*Dawson v. Univ. of Phx., Inc.*,
2026 U.S. Dist. LEXIS 6299 (N.D. Ill. 2026) ....................15

*Delbridge v. Maricopa Cty. Cmty. Coll. Dist.*,
182 Ariz. 55, 893 P.2d 55 (Ct. App. 1994)....................22

*Doe v. Kaiser Found. Health Plan, Inc.*,
2024 U.S. Dist. LEXIS 66733 (N.D. Cal. 2024) ....................16

*Doe v. Marymount Univ.*,
297 F. Supp. 3d 573 (E.D. Va. 2018) ....................7

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023)....................18

*Doe v. Shady Grove Reprod. Sci. Ctr., P.C.*,
2025 U.S. Dist. LEXIS 192453 (D. Md. 2025) ....................8, 9, 14, 20

*Doe v. Washington & Lee Univ.*,
2015 U.S. Dist. LEXIS 102426 (W.D. Va. 2015) ....................7

*Flagstaff Affordable Hous. Ltd. P'ship v. Design All., Inc.*,
223 Ariz. 320 (2010)....................21

*Gabrielli v. Insider, Inc.*,
2025 U.S. Dist. LEXIS 28788 (S.D.N.Y. 2025)....................10

*Gaige v. Exer Holding Co., LLC*,
2025 U.S. Dist. LEXIS 17146 (C.D. Cal. 2025)....................15

*Garey v. James S. Farrin, P.C.*,
35 F.4th 917 (4th Cir. 2022) ....................8, 9

*Gay v. Garnet Health*,
2024 U.S. Dist. LEXIS 168515 (S.D.N.Y. 2024) ....................14

*Gerner v. Cnty. of Chesterfield*,
674 F.3d 264 (4th Cir. 2012) ....................3

*Gilmore v. Jones*,
370 F. Supp. 3d 630 (W.D. Va. 2019) ....................10

*In re Google RTB Consumer Priv. Litig.*,
606 F. Supp. 3d 935 (N.D. Cal. 2022) ....................19

*Gordon v. Zeroed-In Tech., LLC*,
2025 U.S. Dist. LEXIS 58031 (D. Md. 2025) ....................23

*Griffey v. Magellan Health Inc.*,
562 F. Supp. 3d 34 (D. Ariz. 2021) ....................21

*In re Grp. Health Plan Litig.*,
709 F. Supp. 3d 707 (D. Minn. 2023) ....................17

*Hart v. Seven Resorts*,
190 Ariz. 272 (Az. Ct. App. 1997) ....................13

*Heaven v. Prime Hydration*,
761 F.Supp.3d 812 (E.D. Pa. 2025) ....................10

*Hertz Corp. v. Zurich Am. Ins. Co.*,
496 F. Supp. 2d 668 (E.D. Va. 2007) ....................7

*Holmes v. Elephant Ins. Co.*,
156 F.4th 413 (4th Cir. 2025) ....................9

*Horvath v. Delta Dental of Ariz.*,
2021 Ariz. Super. LEXIS 9 ....................22

*Howard v. Lab'y Corp. of Am.*,
2024 U.S. Dist. LEXIS 174067 (M.D.N.C. 2024) ....................17

*I.T. v. ChoicePoint LLC*,
2025 U.S. Dist. LEXIS 169202 (W.D. Wash. 2025) ....................17, 20

*Jackson v. Liberty Univ.*,
2017 U.S. Dist. LEXIS 122104 (W.D. Va. 2017) ....................7

*Kane v. Univ. of Rochester*,
2024 U.S. Dist. LEXIS 48515 (W.D.N.Y. 2024) ....................14

*Kenneth Eisen & Assocs. v. CoxCom, Inc.*,
2019 U.S. Dist. LEXIS 26055 (D. Ariz. 2019)....................21

*Keown v. Int'l Ass'n of Sheet Metal Air Rail Transp. Workers*,
2024 U.S. Dist. LEXIS 168789 (D.D.C. 2024)....................26

*Krakauer v. Dish Network, L.L.C.*,
925 F.3d 643 (4th Cir. 2019)....................8

*L.C. v. Fertility Centers of Illinois, PLLC*,
2025 U.S. Dist. LEXIS 252774 (N.D. Ill. 2025)....................12

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014)....................7

*Liberty Life Ins. Co. v. Myers*,
2011 U.S. Dist. LEXIS 84416 (D. Ariz. 2011)....................12

*Lowy v. Daniel Def., LLC*,
167 F.4th 175 (4th Cir. 2026)....................2

*Lugo v. Inova Health Care Servs.*,
2025 U.S. Dist. LEXIS 55590 (E.D. Va. 2025)....................14, 17, 28

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)....................7

*McLaughlin v. Taylor Univ.*,
2024 U.S. Dist. LEXIS 172249 (N.D. Ind. 2024)....................25

*Mehta v. Robinhood Fin. LLC*,
2021 U.S. Dist. LEXIS 253782 (N.D. Cal. 2021)....................23

*Mekhail v. N. Mem'l Health Care*,
726 F. Supp. 3d 916 (D. Minn. 2024)....................14

*Mendoza v. Cederquist*,
2009 U.S. Dist. LEXIS 38264 (E.D. Va. 2009)....................24

*Mgaresh v. Va. Union Univ.*,
2025 U.S. Dist. LEXIS 35926 (E.D. Va. 2025)....................25

*Moog Inc. v. Turbochef Techs., Inc.*,
2026 U.S. Dist. LEXIS 80788 (E.D. Va. 2026)....................27

*United States ex rel. Munoz v. Comput. Sys. Inst.*,
2015 U.S. Dist. LEXIS 70757 (N.D. Ill. 2015)....................5

*Murphy v. Thomas Jefferson Univ. Hosps., Inc.*,
2024 U.S. Dist. LEXIS 177625 (E.D. Pa. 2024) ....................14

*Nedrich v. Jones*,
245 Va. 465, 429 S.E.2d 201, 9 Va. Law Rep. 1239 (1993) ....................24

*Owen v. Liberty Univ.*,
2020 U.S. Dist. LEXIS 64579 (W.D. Va. 2020) ....................7

*Plaintiffs v. MGM Resorts Int'l*,
638 F. Supp. 3d 1175 (D. Nev. 2022)....................26

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) ....................10, 13

*Q.J. v. Powerschool Holdings, LLC*,
2025 U.S. Dist. LEXIS 161612 (N.D. Ill. 2025) ....................15

*Quinalty v. FocusIT LLC*,
2024 U.S. Dist. LEXIS 15826 (D. Ariz. 2024)....................22

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024) ....................15

*R.S. v. Prime Healthcare Servs*.,
2025 U.S. Dist. LEXIS 6338 (C.D. Cal. 2025)....................14

*Roberts v. Charlotte Mecklenburg Hosp. Auth.*,
2025 U.S. Dist. LEXIS 53995 (W.D.N.C. 2025)....................16

*Robertson v. Sea Pines Real Estate Cos.*,
679 F.3d 278 (4th Cir. 2012) ....................3

*Rodriguez v. FastMed Urgent Care, P.C.*,
741 F. Supp. 3d 352 (E.D.N.C. 2024)....................17

*Rosetta Stone Ltd. v. Google, Inc.*,
676 F.3d 144 (4th Cir. 2012) ....................27

*Sanders v. Robert Bosch Corp.*,
38 F.3d 736 (4th Cir. 1994) ....................18

*Schieszler v. Ferrum Coll.*,
236 F. Supp. 2d 602 (W.D. Va. 2002) ....................22

*Selby v. Sovrn Holdings, Inc.*,
2025 U.S. Dist. LEXIS 205538 (N.D. Cal. 2025) ....................20

*Shah & Assocs., Inc. v. Hazen & Sawyer, P.C.*,
2012 U.S. Dist. LEXIS 207918 (E.D. Va. 2012)....................25

*Smith v. Loyola Univ. Med. Ctr.*,
2024 U.S. Dist. LEXIS 119995 (N.D. Ill. 2024)....................12, 14

*Stein v. Edward-Elmhurst Health*,
2025 U.S. Dist. LEXIS 31273 (N.D. Ill. 2025)....................16

*SZY Holdings, LLC v. IPF Sourcing LLC*,
2022 U.S. Dist. LEXIS 244154 (E.D. Va. 2022)....................26

*T. Musgrove Construction Co. v. Young*,
840 S.E.2d 337 (Va. 2020)....................27

*Theys v. Dental Intel., Inc.*,
2026 U.S. Dist. LEXIS 46654 (N.D. Ill. 2026)....................12, 13, 14

*Thieme v. Coughlin*,
2018 Ariz. App. Unpub. LEXIS 1003 (Ct. App. 2018)....................12

*Timpone v. Ill. Student Assistance Comm'n*,
2019 IL App (1st) 181115....................5

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)....................8

*U.S. Dep't of Just. v. Reps. Comm. For Freedom of Press*,
489 U.S. 749 (1989)....................8

*UMG Recordings, Inc. v. Doe*,
2008 U.S. Dist. LEXIS 92788 (N.D. Cal. 2008)....................5

*USLife Title Co. v. Gutkin*,
152 Ariz. 349 (Ct. App. 1986)....................27

*VA C 12266 Jefferson, LLC v. Mattress Warehouse Inc.*,
2014 U.S. Dist. LEXIS 147626 (E.D. Va. 2014)....................24

*Viscuso v. Quicken Loans, Inc.*,
2022 U.S. Dist. LEXIS 50874 (D.S.C. 2022)....................23

*White v. United Network for Organ Sharing*,
2025 U.S. Dist. LEXIS 182074 (E.D. Va. 2025)....................22, 25

*Williams v. Pac. Sunwear of Cal. LLC*,
2024 U.S. Dist. LEXIS 196954 (D. Ariz. 2024)....................11

*Yurko v. United States*,
2026 U.S. Dist. LEXIS 2890 (D. Md.2026) ....................3

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) ....................18, 20

**Statutes**

18 U.S.C. § 2511(1)(c)-(d)....................13

20 U.S.C. § 1232g(a)(4)(A) ....................3

20 U.S.C. § 1232g(a)(5)(A) ....................4

34 C.F.R. § 99.3 ....................3

34 C.F.R. § 99.30-31....................4

**Other Autorites**

DoD Issuances Instructions 1322.25....................5

Restat. 2d of Torts, § 402A....................11

Restatement (Second) of Torts § 652) ....................12

## I. INTRODUCTION

More than fifty years ago, Congress enshrined in federal law a students' right to privacy concerning their educational records. Thus, Defendant Liberty University, Inc. ("Defendant" or "Liberty") does not dispute that it has a legal duty to safeguard its students' confidential educational records and academic information. Unfortunately, Liberty failed to satisfy that duty and instead secretly funneled its students' private and sensitive personal information to commercial third-party advertisers through the use of surreptitious online surveillance software (the "Tracking Tools"). This information was then commoditized by Liberty and digital advertising giants like Meta Platforms Inc. ("Facebook"), Alphabet, Inc. ("Google"), and Microsoft Corporation ("Microsoft," and together with Facebook and Google, the "Tracking Tool Providers") to serve hyper-targeted advertising to Plaintiff Kyler Lyons ("Plaintiff") and putative Class Members through their Internet devices. Plaintiff brings this action seeking recompense for these significant privacy violations.

In its Motion to Dismiss, ECF No. 17 (the "Motion" or "Mot." "Mot."), Liberty does not dispute the fact that it disclosed Plaintiff's educational records to the Tracking Tool Providers. Instead, Liberty misconstrues nearly every allegation in the Complaint, including by misrepresenting the categories of information that Plaintiff alleges to have been disclosed by the Tracking Tools and misstating its legal obligations under federal and state privacy laws. All of these arguments are wholly without merit.

In short, Plaintiff alleges that Liberty violated a well-recognized, federally-protected privacy right by disclosing her education records, including specific information pertaining to her and the Class Members' registration statuses, course names and numbers, and the content of prayer requests, to unauthorized third parties. Liberty tries in vain to characterize this information as non-confidential "directory information." However, both the Federal Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g, *et seq.*, along with Liberty's own policies, contradict this assertion. Accordingly, this Court should deny Liberty's Motion to Dismiss in its entirety.

## II. STATEMENT OF FACTS

Liberty is an accredited university with a residential campus in Virginia, offering over 600 online degrees to students nationwide. Complaint, ECF No. 1 ("Compl."), ¶ 3. Students enrolled at Liberty are required to use its online student portal located at www.mylu.liberty.edu and its learning management system located at www.liberty.instructure.com (collectively, the "Portal"). *Id*. ¶ 4. Plaintiff Kyler Lyons was enrolled as a Liberty student from 2017 until May 2021, and re-enrolled for her master's program in March 2025. *Id.* ¶ 16. During her time as a student, Plaintiff routinely had to use the Portal, for example to submit assignments, check her grades, and check the status of her financial aid. *Id*. When she did so, Plaintiff reasonably expected that her personal information and education records would remain confidential and not be shared with third parties for a commercial purpose. *Id.* ¶ 89. Unfortunately, those expectations were not shared by Liberty.

Unbeknownst to Plaintiff, Liberty installed the Tracking Tools on its Portal and configured these tools to collect and transmit sensitive, personally identifiable information ("PII") to unauthorized third parties, including the Tracking Tool Providers, in exchange for enhanced marketing and analytics services. *Id*. ¶¶ 5, 61, 67. These disclosures included highly confidential information, including students' full names, registration status, course names and numbers, and more. Because Plaintiff was logged into her Facebook, Google, and Microsoft accounts on the same device that she used to access Liberty's Portal, the Tracking Tools also sent specific lines of code linking the education records to Plaintiff's identity (collectively, the "Sensitive Information"). *Id*. ¶¶ 6, 62-66, Figs. 1-9.

## III. LEGAL STANDARD

On a Rule 12(b)(6) motion to dismiss, "federal courts are obliged to accept as true all well-pleaded allegations and . . . view the complaint in the light most favorable to the plaintiff." *Lowy v. Daniel Def., LLC*, 167 F.4th 175, 193 (4th Cir. 2026) (citation omitted). A claim may not be dismissed "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The district court should assume "that all the allegations in the complaint are true,"

and analyze whether they "raise a right to relief above the speculative level." *Robertson v. Sea Pines Real Estate Cos.*, 679 F.3d 278, 288 (4th Cir. 2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Generally, courts should "permit any amendment that might remedy … defects in the complaint." *Gerner v. Cnty. of Chesterfield*, 674 F.3d 264, 269 n.3 (4th Cir. 2012).

In evaluating a facial challenge to subject-matter jurisdiction, "all the facts alleged in the complaint are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). "When a defendant asserts that facts outside of the complaint deprive the court of jurisdiction, the Court 'may consider evidence outside the pleadings without converting the proceeding to one for summary judgment.'" *Yurko v. United States*, No. 25-0296-TDC, 2026 U.S. Dist. LEXIS 2890, at *3 (D. Md. Jan. 7, 2026) (quoting *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004)). The Court should grant such motions "'only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law.'" *Id.* (quoting *Evans v. B.F. Perkins Co., Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999)).

## IV. <u>ARGUMENT</u>

### A. LIBERTY DISCLOSED PLAINTIFF'S SENSITIVE INFORMATION TO UNAUTHORIZED THIRD PARTIES IN VIOLATION OF FERPA.

Most of Liberty's arguments in the Motion rely on its erroneous claim that Plaintiff's allegations do not state a violation of FERPA. Liberty is incorrect. As explained further below, Liberty's disclosure of Plaintiff's education records without written authorization indeed violated FERPA, and each and every one of its contrary arguments must fail as a result.

#### i. Liberty disclosed Plaintiff's FERPA-protected education records without written authorization.

Under FERPA, protected "education records" are broadly defined as "those records, files, documents, and other materials which (i) contain information directly related to a student; and (ii) are maintained by an educational agency or institution." 20 U.S.C. § 1232g(a)(4)(A); 34 C.F.R. § 99.3. Education records specifically "include but are not limited to grades, transcripts, <u>**class lists**</u>,

**student course schedules**, health records (at the K-12 level), **student financial information** (at the postsecondary level), and student discipline files." Compl. ¶ 83 (emphasis added).[1] FERPA prohibits an educational institution from disclosing personally identifiable information from a student's education records without specific signed and dated written consent. *See* 34 C.F.R. 99.30-31. That consent must "[s]pecify the records that may be disclosed; [s]tate the purpose of the disclosure; and [i]dentify the party or class of parties to whom the disclosure may be made." 34 C.F.R. 99.30(b). Plaintiff's Sensitive Information—including her specific course enrollments, specific assignments, and financial aid status—fall squarely within this definition of protected education records. *See* Compl. ¶¶ 60-67. Moreover, Plaintiff's Sensitive Information was inarguably personally identifiable because it was transmitted alongside Plaintiff's full name, as well as specific cookie identifiers linked to her online accounts with the Tracking Tool Providers. 34 C.F.R. 99.30.

Liberty's attempt to recharacterize Plaintiff's Sensitive Information as "directory information" thus ignores the plain language of the Complaint. Mot. at 11. Directory information is limited to basic information that one would expect to see in a school directory, such as "name, address, telephone listing, date and place of birth, major field of study, participation in officially recognized activities and sports, weight and height of members of athletic teams, dates of attendance, degrees and awards received, and the most recent previous educational agency or institution attended." *See* 20 U.S.C. § 1232g(a)(5)(A); 34 C.F.R. § 99.3. Liberty does not dispute this definition.[2] Instead it untenably attempts to shoehorn the full gamut of Plaintiff's course enrollments and specific assignments into the term "major field of study." *See* Mot., Ex. A. This argument conflicts with the U.S. Department of Education's designation of Plaintiff's Sensitive Information as protected education records, and Liberty provides absolutely no authority in support

---

[1] *Citing What is an education record?*, U.S. DEP'T OF ED., www.studentprivacy.ed.gov/faq/what-education-record ("class lists, student course schedules [and] student financial information" are all education records).

[2] *See* Mot. at 3-4 (providing the same definition for directory information as given by FERPA, and additionally noting that Liberty's FERPA policy gives this definition as well).

of its contrary argument. *See* Compl. ¶ 83 (quoting Department guidance advising that "class lists, student course schedules [and] student financial information" are all education records under FERPA); *see also* Mot. at 10-11. Nor could it. Legal authorities universally find that course enrollments, course work, and financial aid status constitute protected education records. *See, e.g., UMG Recordings, Inc. v. Doe*, No. C 08-1038 SBA, 2008 U.S. Dist. LEXIS 92788, at *21 (N.D. Cal. June 29, 2008) ("course work [and] class schedules" are "protected under FERPA"); *Timpone v. Ill. Student Assistance Comm'n*, 2019 IL App (1st) 181115, ¶ 40 (the simple fact that someone has or does not have financial aid is FERPA protected non-directory information); *United States ex rel. Munoz v. Comput. Sys. Inst.*, No. 11 C 7899, 2015 U.S. Dist. LEXIS 70757, at *19 (N.D. Ill. June 2, 2015) (allowing production of "course of study" information from educational institute only after requestors "clarified that they 'do not seek data on the individual courses that former students took' but instead want to know the students' 'course of study,' meaning the type of program each student pursued at [the institute]"); DoD Issuances Instructions 1322.25[3] (Department of Defense education program issuance stating that "the DoD recognizes that educational institutions are required to obtain consent before sharing personally identifiable **non-directory information** with a third party. Service members must authorize the institutions to release and forward **course enrollment information**" (emphasis added)).

Indeed, outside of the context of this litigation, Liberty is part of this consensus, using the term "major field of study" throughout its website to describe majors and concentrations, but never individual courses or assignments.[4] Liberty cannot credibly promote an alternative definition now, let alone one without ***any*** legal authority supporting it.

---

[3] *Available at*: https://www.esd.whs.mil/Portals/54/Documents/DD/issuances/dodi/132225p.pdf.

[4] *See, e.g., Scholarship Opportunities*, LIBERTY, www.liberty.edu/online/scholarships/ (representing that a student's "major" is a synonym for their "field of study"); *Honors Program Student Handbook*, LIBERTY, www.liberty.edu/honors-program/wp-content/uploads/sites/78/2019/08/Student_Handbook_3.9.19.pdf (to graduate with honors, Liberty students coordinate with their department chair and produce a piece of "scholarly writing in the student's major field of study"); Tammy S. Hogan, *Professor-Student Relationships*, LIBERTY, www.digitalcommons.liberty.edu/cgi/viewcontent.cgi?article=3817&context=doctoral

### ii. Even assuming *arguendo* that Liberty is correct that it only disclosed directory information, Liberty's use of the Tracking Tools would still violate FERPA.

FERPA requires that, if an institution intends to "make[] public directory information," it must "give public notice of the categories of information which it has designated as such information with respect to each student attending the institution or agency[.]" 20 U.S.C.S. § 1232g. Liberty claims it abided by this requirement and published the list of the categories of information it uses in its directory, but, the list it presents does not include the course enrollments, assignments, and financial aid information Plaintiff alleges Liberty disclosed via the Tracking Tools. *See* Mot. at 3-4. Consequently, even if Liberty's current argument is correct and it only disclosed its "directory information" (it is not), Liberty would still have violated FERPA by publishing directory information without designating it in its public FERPA disclosure.

## B. PLAINTIFF DID NOT CONSENT TO LIBERTY'S PRIVACY POLICY

In its Motion, Liberty attempts to claim that "Liberty Students are required to accept Liberty's Privacy Policy as part of the Institutional Agreement a student must agree to as part of applying for admission to Liberty." Mot. at 6. This representation is false. The Institutional Agreement referenced by Liberty states that the applicant will "comply" with "policies and procedures related to financial aid, tuition and fees, payment plans, refunds, adjustments, withdrawals, and other policies contained in the applicable Academic Catalog."[5] The Privacy Policy is not mentioned. Moreover, despite the fact that the Institutional Agreement is an online form, it still fails to provide a link to the "Academic Catalog" it references or even instructions on how to locate it. Even if one were to look for the Academic Catalog, no document with that title is hosted on Liberty's website at all. Liberty may have meant to reference its "Academic Course Catalog," but even if it had done so, its argument would still be unavailing. The Privacy Policy is not referenced by the Academic Course Catalog either.[6]

---

(explaining that "throughout their collegiate journey" student may develop even "deeper relationships" with "mentors in a student's major field of study").

[5] *See Institutional Agreement*, LIBERTY, https://www.liberty.edu/online/institutional-agreement.

[6] *See Academic Course Catalogs*, LIBERTY, https://www.liberty.edu/academics/course-catalogs.

Furthermore, the Institutional Agreement's vague reference to nonspecific "applicable policies" cannot be read to incorporate the Privacy Policy. "[I]n order to incorporate a secondary document into a primary document, [and] the identity of the secondary document must be readily ascertainable." *Hertz Corp. v. Zurich Am. Ins. Co.*, 496 F. Supp. 2d 668, 675 (E.D. Va. 2007). The Institutional Agreement's general reference to "applicable policies" does not identify the Privacy Policy. Thus, Liberty has failed to satisfy its burden to prove the existence of an agreement with Plaintiff, and its argument must fail.[7]

### C. PLAINTIFF HAS ARTICLE III STANDING.

Article III standing "requires only that the plaintiff's injury be fairly traceable to the defendant's conduct." *Lexmark Int'l, Inc. v. Static Control Components, Inc*., 572 U.S. 118, 134 n.6 (2014). At the pleading stage, "general factual allegations of injury resulting from the defendant's conduct may suffice." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). This is because when evaluating a motion to dismiss, courts "presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Id*. at 561.

"To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not

[7] Additionally, courts in this District have held that generally applicable university conduct policies do not establish a contract under Virginia law. *See, e.g., Jackson v. Liberty Univ.*, No. 6:17-cv-00041, 2017 U.S. Dist. LEXIS 122104, at *19-21 (W.D. Va. Aug. 3, 2017). This is because Virginia law requires an "absolute mutuality of engagement between the parties" such that each party is bound and may hold the other party to the agreement. *Id.* at *16. "This mutuality is absent in university student-conduct policies, as these policies allow for unilateral revision by the university and do not bind the school." *Owen v. Liberty Univ.*, No. 6:19-cv-00007, 2020 U.S. Dist. LEXIS 64579, at *23 (W.D. Va. Apr. 13, 2020); *see also Doe v. Marymount Univ.*, 297 F. Supp. 3d 573, 588 (E.D. Va. 2018) ("Under Virginia law, a University's student conduct policies are not binding, enforceable contracts; rather, they are behavior guidelines that may be unilaterally revised by Marymount at any time. Thus, Doe cannot rely on Marymount's Student Handbook or Sexual Assault policy as enforceable contracts, or as terms of an implied contract."); *Doe v. Washington & Lee Univ*., No. 6:14-cv-00052, 2015 U.S. Dist. LEXIS 102426, at *31 (W.D. Va. Aug. 5, 2015) (explaining that "[c]ourts applying Virginia law routinely reject the notion that a 'Student Handbook' creates a mutuality of engagement where the terms of the handbook are subject to change"); *Davis v. George Mason Univ.*, 395 F. Supp. 2d 331, 337 (E.D. Va. 2005) (finding university course catalog to be an unenforceable illusory contract because of the catalog's disclaimer that it may change its terms or requirements at any time).

conjectural or hypothetical." *Doe v. Shady Grove Reprod. Sci. Ctr., P.C.*, No. 24-cv-2368-ABA, 2025 U.S. Dist. LEXIS 192453, at *7 (D. Md. Sept. 30, 2025) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016)). Intangible harms constitute concrete injury where they have "a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts. Those include, for example, reputational harms, ***disclosure of private information, and intrusion upon seclusion***." *TransUnion LLC v. Ramirez,* 594 U.S. 413, 425 (2021) (emphasis added). This determination does not require the Court to "import the elements of common law torts, piece by piece, into any scheme Congress may devise," nor does it necessitate finding that Plaintiff's harm has "risen to a level that would support a common law cause of action." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 653-54 (4th Cir. 2019). "'Article III does not an exact duplicate in American history and tradition'" and "some differences between the common law privacy torts" and Plaintiff's injury will not preclude standing. *Garey v. James S. Farrin, P.C.*, 35 F.4th 917, 922 (4th Cir. 2022). Rather, the Court's "inquiry is focused on types of harms protected at common law, not the precise point at which those harms become actionable." *Krakauer*, 925 F.3d at 654.

**i. Defendant's Use of the Tracking Tools Inflicted a Cognizable Privacy Injury on Plaintiff**

"[B]oth the common law and the literal understandings of privacy encompass the individual's control of information concerning her or her person." *U.S. Dep't of Just. v. Reps. Comm. For Freedom of Press*, 489 U.S. 749, 763 (1989). As the Fourth Circuit has recognized on multiple occasions, "[o]ur legal traditions…have long protected privacy interests[,]" including by rendering privacy injuries "redressable through private litigation." *Krakauer*, 925 F.3d at 653. Accordingly, while a bare statutory violation is not sufficient to confer standing, when "Congress respond[s] to the harms of actual people" by creating statutory protections for "their particular and concrete privacy interests," a violation of that statute inflicts a privacy injury that "plainly satisfies the demands of Article III." *Id*. (holding that violations of TCPA satisfy Article III); *see also Garey*, 35 F.4th at 920-22 ("Plaintiffs have alleged a legally cognizable privacy injury" in

the use of accident reports in violation of the Driver's Privacy Protection Act, 18 U.S.C. § 2724(a) to send unsolicited advertisements).

FERPA is undoubtedly one such statute. As was discussed at length on the Senate floor prior to the bill's passage, Congress enacted FERPA to "take a stand in favor of, and act to protect the rights and privacy of students and parents" in response to "[v]iolations of the privacy of students and their parents occurr[ing] daily in schools across the Nation[.]"[8] Liberty flaunted these protections when it disclosed Plaintiff's Sensitive Information without her knowledge or consent to unauthorized third parties, including every course she was taking; each time she logged into attend an online course and each assignment she completed for each course (i.e., her course attendance); each time she checked her grades; and every time she checked her financial aid status. Compl. at § IV(A)(iv).[9] These unauthorized disclosures of sensitive, federally protected educational records are more than sufficient to establish injury in fact – a privacy injury. *See Garey*, 35 F.4th at 920, 922; *Shady Grove*, 2025 U.S. Dist. LEXIS 192453, at *9.

Liberty's arguments to the contrary rest on two fundamental misrepresentations. *First*, Liberty claims without any supporting authority that Plaintiff alleges disclosure of only "directory information." Mot. at 12. As explained in § IV(A), *supra*, Liberty is wrong: Plaintiff alleges disclosure of non-directory education records in violation of FERPA. *Second*, Liberty assembles a host of out-of-circuit, inapposite authority involving disclosures of mundane retail data. But "private information need not be … sordid" and need not have "been kept completely confidential." *Holmes v. Elephant Ins. Co.*, 156 F.4th 413, 423 (4th Cir. 2025) (finding standing

---

[8] 120 Cong. Rec. 14579-82 (1974).

[9] Even worse, Liberty is a religious institution which allows students to submit online prayers. Compl. at § IV(A)(iv). Each time a student used Liberty's online prayer form, Liberty shared their interactions with the form, identified as a "24/7 Prayer Request" including timestamps showing how long they took interacting with the form and events identifying whether they submitted their prayer request or abandoned it. Plaintiff did not identify every disclosure Defendant makes in her Complaint, but during Plaintiff's counsel's investigation of the scope of Liberty's disclosures, they created a single submission of its 24/7 Prayer Request form. Liberty made 11 disclosures to Google associated with that submission. The full scope of Defendant's disclosures will be borne out in discovery.

based on disclosure of driver license information to dark web). Indeed, the cases Liberty cites support Plaintiff's argument by drawing a distinction between disclosure of sensitive information like that alleged by Plaintiff which confers standing, and disclosure of the non-sensitive information at-issue therein which may not. *See Cook v. GameStop, Inc.*, 148 F.4th 153 (3d Cir. 2025) (disclosure that plaintiff browsed online video game store insufficient to satisfy Article III, but disclosure of children's data would suffice); *Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025) (disclosure that plaintiff browsed for pet supplies online insufficient but the "tracking software *could* be offensive in particular circumstances (e.g. involving sensitive medical or financial information)"); *Heaven v. Prime Hydration*, 761 F.Supp.3d 812, 819-20 (E.D. Pa. 2025) ("online retail behavior" did not satisfy Article III but disclosure of "sensitive personal information" does); *Gabrielli v. Insider, Inc.*, No. 24-cv-01566 (ER), 2025 U.S. Dist. LEXIS 28788, at *18 (S.D.N.Y. Feb. 18, 2025) (disclosure of plaintiff's IP address is insufficient to confer standing, in contrast to other information like the titles of magazine subscriptions, ethnicity, income, or parental status). Moreover, these cases additionally support Plaintiff's argument by recognizing that violations of federal laws meant to protect concrete privacy interests, like those alleged by Plaintiff, inflict cognizable injuries under Article III. *See GameStop*, 148 F.4th at 153 (as to the TCPA and COPPA); *Popa*, 153 F.4th at 794 (as to the VPPA); *Prime*, 761 F.Supp.3d at 821 (as to HIPAA and COPPA).

## D. PLAINTIFF'S INVASION OF PRIVACY CLAIM IS WELL PLED

### i. Plaintiff's Invasion of Privacy Claim is Governed by Arizona Law

Under Virginia law, tort claims are governed by "the place of the wrong…the place where the last event necessary to make an [individual] liable for an alleged tort takes place[.]" *Cars Unlimited II, Inc. v. Nat'l Motor Co., Inc.*, 472 F. Supp. 2d 740, 749 (E.D. Va. 2007). Pursuant to this principle, courts within this District have concluded that in an Internet case, the Supreme Court of Virginia "would define 'the place of the wrong' as the state where the plaintiff is injured as a result of the allegedly tortious content, as opposed to the state where publication occurs." *Gilmore v. Jones*, 370 F. Supp. 3d 630, 664-65 (W.D. Va. 2019). Here, Liberty configured the Tracking

Tools on its Portal to automatically capture and transmit the Sensitive Information of anyone who accessed its online educational services. *See* Compl. ¶¶ 60-67. But Plaintiff's claims against Liberty did not arise until later, when she accessed Defendant's Portal and her Sensitive Information was intercepted and disclosed to the Tracking Tool Providers as a result. *See Williams v. Pac. Sunwear of Cal. LLC*, No. CV-24-02015-PHX-JJT, 2024 U.S. Dist. LEXIS 196954, at *18 (D. Ariz. Oct. 30, 2024) (email with pixel-based spyware caused injury "in Arizona when [plaintiff] opened the email"). Arizona law thus applies because Arizona is both the state where the last event necessary to establish Liberty's liability to Plaintiff occurred (i.e., Plaintiff accessing the Portal), as well as the state where Plaintiff was injured.

Liberty disagrees, asserting that Virginia law should apply because Liberty is headquartered in Virginia. Mot. at 18. While well-suited for a jurisdictional dispute, this argument does not comport with Virginia's choice of law rules and may safely be discarded. Moreover, the sole case cited by Liberty for its choice of law analysis supports Plaintiff's position, not Defendant's. In *Quillen v. Int'l Playtex, Inc.*, the plaintiff purchased a box of tampons while in the state of Tennessee and developed toxic shock syndrome after using the tampons in Virginia. 789 F.2d 1041, 1044 (4th Cir. 1986). As a result, she filed suit against the tampon manufacturer, including a cause of action for strict liability, and argued that the court should apply the law of Tennessee because it was the site of the purchase. *Id*. The court disagreed. *Id*. The black-letter elements of the plaintiff's strict liability claim included not just that the defendant sold a defective product, but also that the product caused plaintiff to suffer an actual injury. *See* Restat. 2d of Torts, § 402A. While the first element—the sale of the defective product—indeed occurred in Tennessee, the plaintiff's claim did not vest until her injury manifested while she was in Virginia. *Quillen*, 789 F.2d at 1044. As a result, Virginia law controlled her strict liability claim. *Id*.

This case is no different. While Liberty may have installed and configured the Tracking Tools in Virginia, it was not liable to Plaintiff until her Sensitive Information was actually disclosed to the Tracking Tool Providers. Those disclosures were triggered by Plaintiff's subsequent act of using the Portal while present in Arizona. Arizona law thus applies.

### ii. Plaintiff's Invasion of Privacy Claim is Well Pled Under Arizona Law Under an Intrusion Upon Seclusion Theory

"Under Arizona law, '[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or her private affairs or concerns, is subject to liability to the other for invasion of her privacy, if the intrusion would be highly offensive to a reasonable person.'" *Berrow v. Navient Sols. LLC*, 685 F. Supp. 3d 859, 864 (D. Ariz. 2023) (quoting *Coates v. Scheid*, No. 2 CA-CV 2010-0114, 2010 Ariz. App. Unpub. LEXIS 1426, at *7-8 (Ariz. Ct. App. Dec. 14, 2010)). Arizona law, following the Restatement (Second) of Torts, allows intrusion upon seclusion claims when the intrusion was accomplished "by the use of the defendant's senses, with or without mechanical aids, to oversee or overhear the plaintiff's private affairs" or "by some other form of investigation or examination into her private concerns." *Compare Liberty Life Ins. Co. v. Myers*, No. CV 10-2024-PHX-JAT, 2011 U.S. Dist. LEXIS 84416, at *12 (D. Ariz. Aug. 1, 2011) (finding no intrusion because the plaintiff had no reasonable expectation of privacy), *with Theys v. Dental Intel., Inc.*, No. 25 CV 2464, 2026 U.S. Dist. LEXIS 46654, at *22 (N.D. Ill. Mar. 6, 2026) (finding disclosure of private information "via embedded tracking pixels, for targeted marketing purposes is sufficiently analogous to the common-law tort of public disclosure of private facts" under Illinois law, and citing Restatement (Second) of Torts § 652); *Smith v. Loyola Univ. Med. Ctr.*, No. 23 CV 15828, 2024 U.S. Dist. LEXIS 119995, at *9 (N.D. Ill. July 9, 2024) (healthcare provider's disclosure of information to Meta and Google via tracking pixels on its website constituted a concrete harm); *L.C. v. Fertility Centers of Illinois, PLLC*, No. 25 C 2049, 2025 U.S. Dist. LEXIS 252774, at *13 (N.D. Ill. Dec. 8, 2025) (same). But, as Plaintiff alleges, she and Class Members reasonably expected their communications with Liberty to be private, shared only for educational purposes. Compl. ¶¶ 89-93. Plaintiff alleges a claim for Liberty's intrusion upon this reasonable expectation of privacy.

### iii. Plaintiff's Invasion of Privacy Claim is Also Well Pled Under Arizona Law Under a Publication of Private Facts Theory

Arizona also relies upon the Restatement (Second) of Torts (the "Restatement") to define a publication of private facts. *Thieme v. Coughlin*, No. 1 CA-CV 17-0191, 2018 Ariz. App. Unpub. LEXIS 1003, at *4 (Ct. App. July 10, 2018) (finding no publication in responses to interrogatories).

The Restatement authorizes recovery for publicizing "the private life of another" when the publication "would be highly offensive to a reasonable person, and … is not of legitimate concern to the public." Restat. 2d of Torts, § 652D. A publication requires a disclosure of information to enough people to become public knowledge. *Hart v. Seven Resorts*, 190 Ariz. 272, 280 (Az. Ct. App. 1997) (analyzing the tort of false light).

Courts following the Restatement find that the use of pixel tracking software to track private facts constitutes a publication of private facts. For example, in *Salazar v. NBA*, the Second Circuit found that using Meta Pixel to track the videos the plaintiff watched was analogous to a publication of private facts. 118 F.4th 533, 538, 541-42 (2d Cir. 2024) (citing Restatement, § 652D and finding standing). Similarly, the court in *Theys v. Dental Intel., Inc.*, refused to dismiss a publication of private facts claim based on the disclosure of private health information via tracking pixels. 2026 U.S. Dist. LEXIS 46654, at *22 (citing Restatement, § 652D and cases deciding the same); *see also Popa*, 153 F.4th at 791 (use of tracking software could be an invasion of privacy when used to track "sensitive medical or financial information"). Arizona courts would likewise find Plaintiff's publication of private facts theory adequately pled.

**E. PLAINTIFF'S ECPA CLAIM IS WELL PLED**

A claim exists under the ECPA where a defendant intentionally uses or discloses the contents of an intercepted electronic communication. 18 U.S.C. § 2511(1)(c)-(d). Where, like here, the defendant is a party to the communication, liability may still be established through the "crime-tort exception" if the defendant's interception is made "for the purpose of committing [a] criminal or tortious act in violation of the Constitution or laws of the United States or of any State." 18 U.S.C. § 2511(2)(d).

**i. Plaintiff's Allegations Satisfy the Crime-Tort Exception**

Plaintiff's allegations satisfy the crime-tort exception because she plausibly alleges that Liberty installed and configured the Tracking Tools to disclose her Sensitive Information to the Tracking Tool Providers without her knowledge or consent. *See* § IV(B), *supra*. In other words, Plaintiff alleges that Liberty's purpose in installing the Tracking Tools was to commit an unlawful

act: disclosure of her education records without authorization in violation of FERPA and the other causes of actions included in the Complaint.

1. <u>Liberty's FERPA violations satisfy the crime-tort exception.</u>

Liberty does not dispute that it intentionally employed the Tracking Tools and that those Tracking Tools intercepted Plaintiff's Sensitive Information. Rather, the crux of Liberty's argument is that (1) FERPA does not confer a private right of action; and (2) the information disclosed by the Tracking Tools is not protected by FERPA in any instance. *See* Mot. 3-4, 8-9, 27. The Court should reject these arguments outright.

***First,*** Plaintiff does not bring an independent cause of action under FERPA. Rather, Plaintiff correctly alleges that the crime-tort exception is satisfied by a FERPA violation because the crime-tort exception is not limited to only statutes enforceable through private right of action. For example, "[c]ourts around the country…have permitted the invocation of the ECPA's crime-tort exception when plaintiffs allege violations of HIPAA"—a federal statute that, like FERPA, protects the confidentiality of a certain class of sensitive information and also does not include a private right of action. *Lugo v. Inova Health Care Servs.*, No. 1:24-cv-700 (PTG/WEF), 2025 U.S. Dist. LEXIS 55590, at *18-19 (E.D. Va. Mar. 25, 2025) (collecting cases).[10] The Court should find the same here, like other courts have done under analogous circumstances involving disclosures

---

[10] *See also Shady Grove*, 2025 U.S. Dist. LEXIS 192453, at *25 (denying motion to dismiss claim of tracking in violation of HIPAA under the Maryland Wiretapping & Electronic Surveillance Act and citing cases discussing the "ECPA, which has similar elements"); *Murphy v. Thomas Jefferson Univ. Hosps., Inc.*, No. 22-4674, 2024 U.S. Dist. LEXIS 177625, at *11-12 (E.D. Pa. Sept. 30, 2024) ("[T]he intention to violate HIPAA [is] sufficient to invoke the crime-tort exception to the ECPA."); *Theys*, 2026 U.S. Dist. LEXIS 46654, at *22 (finding crime-tort exception satisfied through use of tracking technologies to disclose HIPAA-protected information); *A.D. v. Aspen Dental Mgmt., Inc.*, No. 24 C 1404, 2024 U.S. Dist. LEXIS 161090, at *3 (N.D. Ill. Sep. 9, 2024) (same); *Loyola Univ. Med. Ctr.*, 2024 U.S. Dist. LEXIS 119995, at *7 (same); *R.S. v. Prime Healthcare Servs.*, No. 5:24-cv-00330-ODW (SPx), 2025 U.S. Dist. LEXIS 6338, at *20 (C.D. Cal. Jan. 13, 2025) (same); *B.K. v. Eisenhower Med. Ctr.*, No. EDCV 23-2092 JGB (DTBx), 2024 U.S. Dist. LEXIS 67497, at *4 (C.D. Cal. Apr. 11, 2024) (same); *Kane v. Univ. of Rochester*, No. 23-CV-6027-FPG, 2024 U.S. Dist. LEXIS 48515, at *23 (W.D.N.Y. Mar. 19, 2024) (same); *Mekhail v. N. Mem'l Health Care*, 726 F. Supp. 3d 916, 928 (D. Minn. 2024) (same); *Cooper v. Mount Sinai Health Sys., Inc.*, 742 F. Supp. 3d 369, 380 (S.D.N.Y. 2024) (same); *Gay v. Garnet Health*, No. 23-cv-06950 (NSR), 2024 U.S. Dist. LEXIS 168515, at *13 (S.D.N.Y. Sept. 16, 2024) (same).

of FERPA-protected information through online Tracking Tools. *See Q.J. v. Powerschool Holdings, LLC*, 2025 U.S. Dist. LEXIS 161612, at *17 (N.D. Ill. Aug. 20, 2025) ("[r]elevant distinctions between HIPAA and the statutes that Plaintiff invokes in this case [including FERPA], might appear at later stages of the case. But at this early stage, the Court sees none[.]"; *Dawson v. Univ. of Phx., Inc.*, 2026 U.S. Dist. LEXIS 6299, at *44 (N.D. Ill. Jan. 13, 2026) ("At this stage, the Court finds it at least plausible that the crime-tort exception to the one-party consent exception applies" where plaintiff alleged defendant "procured third-party entities for the purpose of intercepting communications and obtaining data from students and other users of the university's website despite being protected from disclosure by law").

***Second***, as discussed in § IV(A), *supra*, Plaintiff's allegations clearly support a violation of FERPA. But, even if the Court were to find otherwise, the crime-tort exception would still apply. Every cause of action included in the Complaint arises out of the exact same conduct that Plaintiff alleges violated FERPA: Liberty's use of the Tracking Tools to disclose its student's Sensitive Information without their knowledge or consent. Thus, any well-pled cause of action asserted in the Complaint is also sufficient to satisfy the crime-tort exception.[11]

**ii. Liberty cannot escape liability under the ECPA by claiming it did not intend to violate FERPA.**

Liberty argues that the crime-tort exception does not apply because it did not "intend to violate FERPA." Mot. at 27. This argument misunderstands the relevant standard. A plaintiff invoking the crime-tort exception need not allege a ***criminal or tortious purpose***. A plaintiff need only plead "sufficient factual allegations that 'support an inference that [the defendant] intercepted

[11] *See, e.g., R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 902 (C.D. Cal. 2024) (denying motion to dismiss ECPA claim where plaintiffs' invasion of privacy claim was sufficiently pled); *Gaige v. Exer Holding Co., LLC*, No. 2:24-cv-06099-AH-(AJRx), 2025 U.S. Dist. LEXIS 17146, at *15 (C.D. Cal. Jan. 30, 2025) (finding the complaint sufficiently alleged an "illegitimate purpose that was at least a determining factor for defendant's actions" where plaintiff alleged violations of invasion of privacy); *B.K. v. Desert Care Network*, No. 2:23-cv-05021 SPG (PDx), 2024 U.S. Dist. LEXIS 18970, at *16 (C.D. Cal. Feb. 1, 2024) (finding the ECPA's one-party exemption did not apply because "[d]efendants disclosed these communications to Meta in violation of various state tort claims and state and federal laws" including common law invasion of privacy).

the communication for the purpose of a ***criminal or tortious act***[.]'" *Roberts v. Charlotte Mecklenburg Hosp. Auth.*, No. 3:24-CV-00382-KDB-SCR, 2025 U.S. Dist. LEXIS 53995, at *8-9 (W.D.N.C. Mar. 20, 2025) (quoting *Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010)). As one court explains:

> A person can have a purpose of committing an act that is criminal or tortious, without having a criminal or tortious purpose. Imagine changing lanes on the highway without looking, and nailing the car in the other lane. The bad driver may have acted with the purpose of committing an act — changing lanes — that was tortious (because of the lack of ordinary care). But that's different than saying that the driver acted with a tortious purpose.
>
> The other reading would, in effect, import a *mens rea* element into the statute. Congress could have required a showing that the person acted with a criminal or tortious purpose. The text could have covered intercepting a communication 'for a criminal or tortious purpose.' Or, the statute could have applied to intercepting a communication 'for a criminal or tortious purpose to commit a criminal or tortious act.'
>
> But that's not what the text says. The 'act' must be criminal or tortious, but the 'purpose' does not need to be criminal or tortious.

*Stein v. Edward-Elmhurst Health*, No. 23-cv-14515, 2025 U.S. Dist. LEXIS 31273, at *14-16 (N.D. Ill. Feb. 21, 2025). Liberty misreads the cases it cites. In *Doe v. Kaiser Found. Health Plan, Inc.*, No. 23-cv-02865-EMC, 2024 U.S. Dist. LEXIS 66733 (N.D. Cal. Apr. 11, 2024), the court did not analyze the plaintiffs' ECPA claim under the reading of the crime-tort exception Liberty asks the Court to take here. In fact, like *Roberts*, the *Kaiser* court relied on *Caro* to set forth the relevant standard:

> If, at the moment [the offender] hits "record," the offender does not intend to use the recording for criminal or tortious purposes, there is no violation. But if, at the time of the recording, the offender plans to use the recording to harm the other party to the conversation, a civil cause of action exists under the [ECPA].

2024 U.S. Dist. LEXIS 66733, at *26 (quoting *Caro*, 618 F.3d at 99-100). The *Kaiser* court ultimately dismissed the plaintiffs' ECPA claim because the plaintiffs failed to allege that the criminal or tortious act was independent and separate from the defendant's interception, a separate requirement of the ECPA. *Id.* at *27 ("the act of interception itself cannot be the crime or tort"). Here, Plaintiff alleges that Liberty's ***disclosure*** of the intercepted Sensitive Information to unauthorized third parties for the third parties' unrestricted use constitutes a violation of law. "[A]n

intent to disclose or use private information in violation of [statutory law] is distinct from the interception of the private information." *I.T. v. ChoicePoint LLC*, No. C25-00193, 2025 U.S. Dist. LEXIS 169202, at *22-23 (W.D. Wash. Aug. 29, 2025) (collecting cases).[12]

Plaintiff alleges that Liberty made the affirmative choice to install and configure the Tracking Tools on the Portal to disclose students' Sensitive Information to the Tracking Tool Providers, knowing it would receive enhanced advertising services in return. *See* Compl. ¶¶ 8-10, 36, 44, 61, 67, 70, 75-76. Plaintiff further alleges that the disclosure of her Sensitive Information to the Tracking Tool Providers violated FERPA and the claims asserted in the Complaint. *See id.* ¶¶ 12, 14, 82-88. These allegations plausibly support a finding that Liberty's interceptions were made for the purpose of committing an unlawful act: disclosure of Plaintiff's Sensitive Information to unauthorized third parties in violation of FERPA and the causes of action alleged in the Complaint. *See, e.g., Lugo*, 2025 U.S. Dist. LEXIS 55590, at *23-24 (denying motion to dismiss ECPA claim where plaintiff alleged the defendant "engaged in a statutory violation, even if for a financial or commercial purpose"); *Howard v. Lab'y Corp. of Am.*, No. 1:23-cv-00758, 2024 U.S. Dist. LEXIS 174067, at *27-28 (M.D.N.C. Aug. 8, 2024) (denying motion to dismiss California and Pennsylvania wiretapping statutes, state analogues to the ECPA, where plaintiffs alleged defendants "intentionally placed the code on its website and modified it to target even more information than the default parameters programmed by Meta and Google" to disclose the contents of plaintiffs' communications to Meta and Google). At minimum, Liberty's true intent is a factual issue that cannot be resolved at this stage. *Lugo*, 2025 U.S. Dist. LEXIS 55590, at *24; *see also In re Grp. Health Plan Litig.*, 709 F. Supp. 3d 707, 719 (D. Minn. 2023) ("determination of

[12] Defendant also relies on *Rodriguez v. FastMed Urgent Care, P.C.*, 741 F. Supp. 3d 352 (E.D.N.C. 2024), but admits that *Lugo* declined to follow *Rodriguez* in sustaining the plaintiff's ECPA claim. *See* MTD at 27-28, fn. 9. The *Lugo* court found that the logic employed by the *Rodriguez* court was "based on three factually dissimilar cases…." 2025 U.S. Dist. LEXIS 55590, at *22-23. The *Lugo* court was "persuaded that a plaintiff who has alleged the defendant engaged in a statutory violation…has stated a claim for relief under the ECPA and its crime tort exception." *Id.* at *23. Plaintiff alleges precisely that. And contrary to Defendant's attempt to distinguish *Lugo*, Plaintiff alleges the disclosure of highly sensitive information. *See* §§ IV(A), (C), *supra*.

[defendant]'s actual purpose for…using the Pixel code requires a factual undertaking"); *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1076 (N.D. Cal. 2023) (The defendant's "true intent…[turn]s on disputed questions of fact that need development on a full evidentiary record.").

**iii. Plaintiff properly alleges disclosure of the "contents" of her communications with Liberty.**

Under the ECPA, "the term 'contents' refers to the 'intended message conveyed by the communication, and does not include record information regarding the characteristics of the message that is generated in the course of the communication." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014). In other words, with respect to the electronic communications at issue here, "any information concerning the substance, purport, or meaning of that communication" constitutes "contents" within the meaning of the ECPA. *Sanders v. Robert Bosch Corp.*, 38 F.3d 736, 742 (4th Cir. 1994). Here, Plaintiff alleges the disclosures of the contents of her communications with Liberty through the Portal by detailing the specific tracked events implemented by Liberty which disclosed her full name, the course titles and numbers she was registered for, the names of any past or future assignments, the fact that she was checking her financial aid status, and the fact that she was submitting a prayer request. Liberty's argument to the contrary must fail.

In contrast to the cases cited by Liberty, the Figures in the Complaint do not just show mere URLs and clicks, but rather that Plaintiff was enrolled in specific courses (Compl. ¶ 62, fig. 1; ¶ 63, fig. 4; ¶ 64, figs. 7-8), that Plaintiff was completing a specific paper assignment for her ethics course (*Id.* ¶ 62, fig. 2), that Plaintiff was a student that receives financial aid and was checking the status of that aid (*Id.* ¶ 63, fig. 3), and that Plaintiff was a current student during specific terms (*Id.* ¶ 63, figs. 5-6; ¶ 65, fig. 9). In other words, when Plaintiff used the Portal, the Tracking Tool Providers contemporaneously learned that Plaintiff was a student at Liberty University; every course she was taking; the fact that she was receiving financial aid; and even the specific assignments she had been assigned. These are undoubtedly the contents of a student's

communications with a student portal.[13] This argument reads the ECPA's definition of "contents" too narrowly and is not supported by the voluminous case law that finds allegations similar to Plaintiff's to suffice to allege "contents." *See, e.g., In re Google RTB Consumer Priv. Litig.*, 606 F. Supp. 3d 935, 949 (N.D. Cal. 2022) (noting the ECPA "broadly defines 'content'" and finding allegations of the disclosure of an "array of [] content categories of the site or app; array of [content] categories that describe the current section of the site or app; URL of the page where the impression will be shown; referral URL that caused navigation to the current page; details about the publisher object of the site or app; details about the content within the site or app; list of keywords about [the] site or app; and content about the titles and series" to adequately allege "contents") (internal quotation marks omitted).

As the Complaint explains, the transmissions alleged by Plaintiff would not have been made in the Tracking Tools' "default state" in which only "automatic events," primarily consisting of webpage URLs, are transmitted. Rather, these transmissions resulted from Liberty's decision to configure the Tracking Tools to send significant amounts of additional information, including specific courses, terms, and financial aid status. *See, e.g., id.* ¶¶ 62-65, figs. 1-2 (showing Liberty's custom "pmd[title]" Google tracking parameters), fig. 6 & 9 (showing Liberty's custom "ep.content_group" parameter). These allegations show far more than just the disclosure of the URLs (i.e., "record information") that Plaintiffs accessed. Rather, Plaintiff alleges that through its configuration of custom tracking events, Liberty disclosed the specific actions she took on the Portal (i.e., "contents" of their communications with the Platform), including the specific courses

[13] Liberty solely Figure 9 of the complaint, which shows the disclosures made to Google when a Liberty University student submits a prayer request. *See* Compl. ¶ 65, fig. 9. Liberty argues Figure 9 "conclusively shows Liberty does not share the content of any Prayer Request." MTD at 28. To generate a figure showing the disclosure of contents of the Prayer Requests, Plaintiff's counsel would have had to use Plaintiff's Liberty account to submit a false Prayer Request. Plaintiff's counsel did not do so out of respect for Plaintiff's religious convictions but, as noted in the Complaint, performed a technical analysis showing such information is transmitted by the Tracking Tools.

she was taking, the specific assignments she was submitting, and her financial aid status. These disclosures represent the totality of Plaintiff's interaction with Liberty from beginning-to-end.

Many courts have found the same. For example, in *Doe v. Shady Grove Reprod. Sci. Ctr., P.C.*, the court found that the information transmitted to third parties when the plaintiffs used the defendant's website to seek fertility treatment was "contents" under Maryland's wiretapping statute because the information was "similar to some of the information that one would communicate to a physician directly during a face-to-face appointment." 2025 U.S. Dist. LEXIS 192453, at *27. Here, the information Liberty disclosed to Google was information that Plaintiff would have communicated if she were, for example, attending a professor's office hours, visiting the financial aid office, or speaking to a priest on campus. *See also Selby v. Sovrn Holdings, Inc.*, No. 25-cv-03139-RFL, 2025 U.S. Dist. LEXIS 205538, at *9 (N.D. Cal. Oct. 16, 2025) ("'full-string URLs' that reflect not only the website visited, but also, for example, search queries and specific items Plaintiffs viewed" constitute contents); *ChoicePoint*, 2025 U.S. Dist. LEXIS 169202, at *21 ("as many other courts have found, the information Plaintiffs allege was intercepted by [the defendant] here—that [p]laintiffs sought an appointment…and the outcome of their online assessment—does constitute the 'contents' of the communication under ECPA, as defined by *Zynga*, because that information constitutes the substance, purpose, and meaning of the message").[14]

For the foregoing reasons, Liberty's Motion to dismiss Plaintiff's ECPA claim must be denied.

[14] The cases cited by Defendant are not analogous. *Yoon v. Lululemon United States* did not discuss any types of disclosure like those alleged by Plaintiff and further found that even "automatically generated" information constitutes contents where it reveals the substance of the user's communications with the website. 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021). And unlike here, in *In re Facebook Internet Tracking Litig.*, the plaintiffs did not allege any details about the substance of the disclosures whatsoever. *See* 140 F. Supp. 3d 922, 935 (N.D. Cal. 2015) (discussing that the plaintiffs' allegations were limited to "a Facebook user's unique identification and a record of browsing history"). Here, as discussed herein, Plaintiff alleges much more.

### F. The Economic Loss Doctrine Does Not Bar Plaintiff's Negligence Claim.

In Virginia, determining "whether the economic loss doctrine applies requires a court first to determine 'whether a cause of action sounds in contract or tort,' ultimately by ascertaining 'the source of the duty violated.'" *Abi-Najm v. Concord Condo., LLC*, 280 Va. 350, 361, 699 S.E.2d 483, 489 (2010) (quoting *Richmond Metro. Auth. v. McDevitt Street Bovis, Inc.*, 256 Va. 553, 558, 507 S.E.2d 344, 347 (1998)). "Notwithstanding the limitations on certain tort actions created by the economic loss doctrine, it is well-established that 'a single act or occurrence can, in certain circumstances, support causes of action both for breach of contract and for breach of a duty arising in tort, thus permitting a plaintiff to recover both for the loss suffered as a result of the breach and traditional tort damages, including, where appropriate, punitive damages.'" *Id*. (quoting *Foreign Mission Bd. v. Wade*, 242 Va. 234, 241, 409 S.E.2d 144, 148, 8 Va. Law Rep. 1000 (1991)). Accordingly, "when a tort duty exists alongside, or in addition to, a contractual right or obligation, Virginia courts have allowed an action to proceed with respect to both claims." *In re Capital One Consumer Data Sec. Breach Litig.*, 488 F. Supp. 3d 374, 398 (E.D. Va. 2020).

In Arizona, the "application of the economic loss doctrine depends less on whether tort claims would be duplicative and more on whether allowing tort claims would subvert the parties' allocation of risk and choice of remedies as evidenced by a detailed contract. Arizona courts have not expressed an intent to apply the economic loss doctrine where no detailed contractual provisions exist." *Kenneth Eisen & Assocs. v. CoxCom, Inc.*, No. CV-18-02120-PHX-JJT, 2019 U.S. Dist. LEXIS 26055, at *6 (D. Ariz. Feb. 19, 2019). Indeed, following the Arizona Supreme Court's guidance that the doctrine should not be applied "with a broad brush," *Flagstaff Affordable Hous. Ltd. P'ship v. Design All., Inc.*, 223 Ariz. 320, 329 (2010), district courts in Arizona have declined to extend the economic loss doctrine beyond products liability or construction defect cases. *See Griffey v. Magellan Health Inc.*, 562 F. Supp. 3d 34, 47 (D. Ariz. 2021) (declining to expand the doctrine to a data breach case).

Liberty argues that "the only relationship between Plaintiff and Liberty is a contractual one, and any duty Liberty owed to Plaintiff regarding her non-confidential information is governed by

Liberty's Privacy Policy, Liberty's FERPA Policy and FERPA's regulatory framework[.]" Mot. at 21. This argument fails at the threshold because Liberty has not actually established that Plaintiff agreed to the Privacy Policy. *See* § IV(B), *supra*. Instead, Plaintiff's negligence claim arises out Liberty's "assumption of duty." *In re Capital One*, 488 F. Supp. at 399 ("[O]ne who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if she acts at all."); *see also Quinalty v. FocusIT LLC*, No. CV-23-00207-PHX-JJT, 2024 U.S. Dist. LEXIS 15826, at *10 (D. Ariz. Jan. 30, 2024) ("In Arizona, several special relationships can give rise to a duty, including relationships based on contract, familial relations, *or conduct undertaken by the defendant.*") (emphasis in original). "The conclusion that the relationship between a college or university and its students can give rise to a duty to protect students from harms of which the school has knowledge is consistent with the Virginia Supreme Court's analysis in other contexts." *Schieszler v. Ferrum Coll.*, 236 F. Supp. 2d 602, 608-09 (W.D. Va. 2002); *see also Delbridge v. Maricopa Cty. Cmty. Coll. Dist.*, 182 Ariz. 55, 58, 893 P.2d 55, 58 (Ct. App. 1994) ("School districts, administrators, and teachers have a legal obligation for the benefit of the students enrolled in their classes. . .[including] 'the duty not to subject those students, through acts, omissions, or school policy, to a foreseeable and unreasonable risk of harm.'") (quoting *Rogers v. Retrum*, 170 Ariz. 399, 401 (Ct. App. 1991)).

Here, Plaintiff alleges that she was required to provide her Sensitive Information on the Portal to access Liberty's services. Accordingly, Liberty "undertook a duty to maintain Plaintiff's [Sensitive] Information with care." *White v. United Network for Organ Sharing*, No. 3:24CV629 (RCY), 2025 U.S. Dist. LEXIS 182074, at *27-28 (E.D. Va. Sep. 16, 2025). Liberty breached this duty by making Plaintiff's Information available to unauthorized third parties, causing "natural and probable" injury to Plaintiff. *Id*. at *29-30; *see also Horvath v. Delta Dental of Ariz.*, 2021 Ariz. Super. LEXIS 9, *2 (plaintiff stated a negligence claim against an insurance company because "an insurance company that obtains and stores confidential, personal information about its insureds owes them a duty of care to protect that data against unauthorized disclosure" and

plaintiff alleged that the company "failed to exercise reasonable care to protect its insureds' personal information.").

Further, contrary to Liberty's assertion that Plaintiff seeks to recover only economic damages, (Mot. at 20), Plaintiff's Complaint alleges that Liberty's conduct has caused her to suffer damages by having her highly personal, personally identifiable Sensitive Information accessed, stored, and disseminated ***without her knowledge or consent***. Compl. ¶ 134 (emphasis added). Plaintiff seeks injunctive relief to remedy this injury. *Id*. ¶ 136. Courts within the Fourth Circuit and across the country have found that "an individual's loss of control over the use of their identity . . . and the accompanying impairment to the value of their PII constitutes non-economic harms." *Gordon v. Zeroed-In Tech., LLC*, No. 23-3284-BAH, 2025 U.S. Dist. LEXIS 58031, at *44-45 (D. Md. Mar. 26, 2025) (collecting cases).

Indeed, at the Rule 12 stage, several courts have found similar allegations regarding the loss of privacy "sufficient to state a cause of action for negligence based on [a] [d]efendant's failure to protect [a] [p]laintiff's private information." *Viscuso v. Quicken Loans, Inc.*, No. 3:21-cv-01924-JMC, 2022 U.S. Dist. LEXIS 50874, at *13 (D.S.C. Mar. 22, 2022); *Capiau v. Ascendum Mach., Inc.*, No. 3:24-cv-00142-MOC-SCR, 2024 U.S. Dist. LEXIS 142393, at *26-27 (W.D.N.C. Aug. 8, 2024) ("Plaintiff alleges damages stemming from: (1) [sic] actual mis-use of their PII; (2) ***an intangible harm fairly analogous to common law invasion of privacy***; (3) the substantial risk that Plaintiff's PII will continue to be mis-used in the future; and (4) opportunity and other costs imposed by reasonable mitigation efforts intended to address the substantial risk of PII mis-use. Plaintiff's factual allegations of damages caused by Defendant's data breach are sufficient to survive Defendant's 12(b)(6) motion, and so Defendant's motion as to Plaintiff's negligence claim will be denied.") (emphasis added); *Gordon*, 2025 U.S. Dist. LEXIS 58031, at *44-45 ("[T]he Court finds that the economic loss doctrine does not bar Plaintiffs' negligence claim because Plaintiffs allege both economic and non-economic harms, including ***loss of privacy***, loss of time, ***and loss of control over their PII***.") (emphasis added); *Mehta v. Robinhood Fin. LLC*, No. 21-cv-01013, 2021 U.S. Dist. LEXIS 253782, at *16 (N.D. Cal. May 6, 2021) (finding that the plaintiffs

did not solely allege economic loss where they alleged harms derived from the "loss of control over the use of their identity" and right to privacy).

Here, Plaintiff's loss of privacy due to Liberty's unauthorized disclosures of her Sensitive Information similarly implicates non-economic harms. Accordingly, Liberty's Motion to Dismiss should be denied as to Plaintiff's negligence claim.

### G. Plaintiff's Breach of Implied Contract Claim is Well-Pled.

Virginia law "will not impose an implied contractual relationship upon parties in contravention of an express contract." *Nedrich v. Jones*, 245 Va. 465, 477, 429 S.E.2d 201, 9 Va. Law Rep. 1239 (1993). However, "an implied contract is precluded only if a valid express contract covers the alleged conduct." *VA C 12266 Jefferson, LLC v. Mattress Warehouse Inc.*, No. 4:14cv34, 2014 U.S. Dist. LEXIS 147626, at *10-11 (E.D. Va. Oct. 16, 2014). Accordingly, "[a]n implied agreement may be given effect where it is based on the subsequent conduct of the parties not covered by the express contract." *Butts v. Weltman, Weinberg & Reis Co., LPA*, No. 1:13cv1026, 2013 U.S. Dist. LEXIS 162483, at *12 (E.D. Va. Nov. 14, 2013).

Liberty argues that Plaintiff's breach of implied contract claim is precluded by the purported express agreements in its Privacy Policy and FERPA Policy. Mot. at 21-22. This argument again fails because Liberty has not established Plaintiff's consent to these agreements. *See* § IV(A), *supra*. Further, Plaintiff alleges that she did not—and could not have—consented to Liberty's unauthorized disclosure of her Sensitive Information to third parties like the Tracking Tool Providers.[15] Where, as here, the existence of an express contract governing the conduct at issue is in dispute, courts properly allow breach of implied contract claims to proceed past the pleadings stage. *See, e.g., Mendoza v. Cederquist*, No. 1:09cv163 (LMB/IDD), 2009 U.S. Dist. LEXIS 38264, at *8-9 (E.D. Va. May 6, 2009) ("Alternative pleading of an implied contract. . .is particularly-appropriate in the case at bar, where the plaintiff has claimed that any contractual

[15] Defendant's arguments that it did not breach its obligation to protect Plaintiff's Sensitive Information because it did not disclose any Sensitive Information, and because any disclosures were made with Plaintiff's purported consent, also fail for the reasons explained above.

rights were established through a combination of oral and written agreements, and where. . .[the] fact pattern suggests the possibility that the parties may disagree as to both the existence and the scope of any contract."); *Shah & Assocs., Inc. v. Hazen & Sawyer, P.C.*, No. 1:12-cv-772 (GBL-TRJ), 2012 U.S. Dist. LEXIS 207918, at *6-7 (E.D. Va. Oct. 17, 2012) (denying motion to dismiss breach of implied contract claim "because the existence and terms of a valid express contract and the alleged oral agreement have yet to be determined.").

Here, Plaintiff alleges that she provided her Sensitive Information to Liberty in exchange for enrollment in courses offered by Liberty. Compl. ¶ 138. This exchange was supported by Liberty's implicit promise to safeguard Plaintiff's Sensitive Information and not transfer it to third parties for purposes unrelated to Plaintiff's enrollment in Liberty without her consent. *Id.* Indeed, as several courts across the country have observed, "it is difficult to imagine how, in our day and age of data and identity theft, the mandatory receipt of. . .sensitive personal information would not imply the recipient's assent to protect the information sufficiently." *Castillo v. Seagate Technology, LLC*, No. 16-CV-01958-RS, 2016 U.S. Dist. LEXIS 187428 at *29-30 (N.D. Cal. Sept. 14, 2016); *see also McLaughlin v. Taylor Univ.*, No. 1:23-cv-00527-HAB-SLC, 2024 U.S. Dist. LEXIS 172249, at *23 (N.D. Ind. Sep. 23, 2024) ("Whether the relationship is employer-to-employee or ***university-to-student***, there is a general understanding that PII should be kept private.") (emphasis added). Accordingly, courts within the Fourth Circuit have found that an implied contract existed in similar circumstances. *See, e.g., Mgaresh v. Va. Union Univ.*, No. 3:24-cv-337-HEH, 2025 U.S. Dist. LEXIS 35926, at *18-19 (E.D. Va. Feb. 27, 2025) (finding that the plaintiffs sufficiently stated a claim for breach of an implied-in-fact contract where they alleged that they provided application fees and their PII to the defendant, the defendant promised to process their applications and protect their PII from unauthorized persons in exchange, and the defendant breached their contract by failing safeguard their PII and provide prompt notice that their PII had been compromised, causing plaintiffs' PII to be published to third parties); *White*, 2025 U.S. Dist. LEXIS 182074, at *33-36 (finding that the plaintiff stated a breach of contract claim where she agreed to provide her personal information to the defendant in exchange for her participation in an

organ donation program and the defendant breached promises in its privacy policy by disclosing information about the plaintiff to third-parties, and allowing the plaintiff's implied contract claim to proceed on the same basis); *see also Keown v. Int'l Ass'n of Sheet Metal Air Rail Transp. Workers*, No. 23-cv-3570 (CRC), 2024 U.S. Dist. LEXIS 168789, at *40 (D.D.C. Sep. 19, 2024) (joining "numerous other courts in concluding that an obligation to reasonably safeguard the plaintiffs' PII from unauthorized access or disclosure is sufficiently definite to support an implied contract.") (quotations omitted).

Liberty argues that Plaintiff has not alleged reasonably certain damages arising from the disclosure of her Sensitive Information. Mot. at 22-23. Not so. Plaintiff's Complaint details the financial value of her Sensitive Information and alleges that Liberty's unauthorized disclosures diminished the value of such Information. Compl. ¶¶ 77-81. This devaluation of Plaintiff's Sensitive Information "interfere[es] with [her] fiscal autonomy" and "impairs [her] ability to participate in the economic marketplace." *Plaintiffs v. MGM Resorts Int'l*, 638 F. Supp. 3d 1175, 1191 (D. Nev. 2022). Further, Plaintiff alleges that she would not have used Liberty's services, or would have paid substantially less for them, had she known that her Sensitive Information would be disclosed to third parties like the Tracking Tool Providers. Compl. ¶ 143. These allegations suffice to plead that Plaintiff lost the benefit of her bargain with Liberty. *See Archambault v. Riverside Resort & Casino, Inc.*, No. 2:24-cv-01691-GMN-DJA, 2025 U.S. Dist. LEXIS 176564, at *15 (D. Nev. Sept. 9, 2025) (finding allegations that plaintiff "paid more for goods and services than they otherwise would have, based on the belief that defendant would implement reasonable security practices" to be "sufficient for a plaintiff to allege that reasonable data security was part of the bargain, which they did not receive").

### H. Plaintiff's Unjust Enrichment Claim is Well-Pled.[16]

Once again, Liberty attempts to rely on its purported Privacy Policy and FERPA Policy to dismiss Plaintiff's unjust enrichment claim. However, Plaintiff "can plead unjust enrichment in the

[16] "District courts in Virginia have treated unjust enrichment claims differently based on whether the court understands the unjust enrichment claim to be a contract claim or a tort claim." *SZY*

alternative to a breach of contract claim 'where the validity or existence of an express contract governing [her] claims is in dispute.'" *Moog Inc. v. Turbochef Techs., Inc.*, No. 3:25CV291 (RCY), 2026 U.S. Dist. LEXIS 80788, at *14 (E.D. Va. Apr. 13, 2026) (quoting *Com. & Indus. Ins. Co. v. Advance Tech., Inc.*, 2009 U.S. Dist. LEXIS 140858, at *3 (E.D. Va. Oct. 6, 2009)); *see also Adelman v. Christy*, 90 F. Supp. 2d 1034, 1045 (D. Ariz. 2000) ("The mere existence of a contract governing the dispute does not automatically invalidate an unjust enrichment alternative theory of recovery.").

Liberty's assertion that Plaintiff has failed to allege the elements of an unjust enrichment claim is incorrect. Mot. at 24. Plaintiff alleges that she conferred a benefit on Liberty by providing her valuable Sensitive Information to Liberty (Compl. ¶ 147), that Liberty knew of the inherent value of Plaintiff's Sensitive Information and should have reasonably expected to pay Plaintiff for its use (*id.* ¶¶ 148-49), and that Liberty unjustly retained benefits in the form of advanced marketing and advertising services without any compensation to Plaintiff (*id.* ¶¶ 76, 149). *T. Musgrove Construction Co. v. Young*, 840 S.E.2d 337, 341 (Va. 2020) (stating the elements of an unjust enrichment claim); *see also USLife Title Co. v. Gutkin*, 152 Ariz. 349, 354 (Ct. App. 1986) ("[T]o prevail upon a theory of unjust enrichment [under Arizona law], a plaintiff must establish that, (1) plaintiff conferred a benefit upon the defendant; (2) defendant's benefit is at plaintiff's expense; and (3) it would be unjust to allow defendant to keep the benefit."). This is sufficient to state a claim for unjust enrichment even in the absence of any "promise[] to pay the plaintiff for such benefit[,]" Mot. at 24, as several courts have held that unjust enrichment "describes a basis for recovery that does *not* require proof of a promise to pay." *Buonauro v. Scott*, No. 0296-25-2, 2026 Va. App. LEXIS 149, at *11 (Ct. App. Mar. 17, 2026) (emphasis in original); *see also Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 166 (4th Cir. 2012) ("Failure to allege an implicit promise to pay, however, is not necessarily fatal to an implied[-in-law] contract theory.")

---

*Holdings, LLC v. IPF Sourcing LLC*, No. 1:20-cv-01475, 2022 U.S. Dist. LEXIS 244154, at *12 (E.D. Va. Aug. 15, 2022) (collecting cases). To the extent that this Court treats Plaintiff's unjust enrichment claim as a tort claim, Arizona law applies. *See* § IV(D)(i), *supra*.

*Lugo v. INOVA Health Care Servs*. supports Plaintiff's position. In *Lugo*, the court found that the plaintiff had satisfied the first prong of an unjust enrichment claim because she "plausibly stated facts to show she conferred a benefit on [the defendant] by providing [the defendant] with her personal data for which [the defendant] was later compensated by Google and Facebook." 2025 U.S. Dist. LEXIS 55590, at *14. Similarly, here, Plaintiff has alleged that she conferred a monetary benefit on Liberty by providing her Sensitive Information to Liberty, which Liberty was in turn compensated for in the form of advanced marketing and advertising services as a user of the Tracking Tool Providers' Business Tools. Compl. ¶¶ 76, 147.

While in *Lugo*, the plaintiff was unable to satisfy the second prong of an unjust enrichment claim, i.e., that the defendant knew of the benefit and should reasonably have expected to repay the plaintiff, this was because the *Lugo* plaintiff made no allegation that the defendant "should have reasonably expected to pay Plaintiff for her information that was allegedly disclosed via pixels[,]. . . that [the defendant], or other health care providers, pay other users for the same type of information[,] [or]. . .that Plaintiff should have reasonably expected to be paid for her information." 2025 U.S. Dist. LEXIS 55590, at *15. In contrast, here, Plaintiff includes details about the monetary value Internet companies earn from mining and selling user data and examples of several companies which pay consumers for a license to track information about them, supporting her allegations that Liberty should reasonably have expected to pay Plaintiff for her Sensitive Information. Compl. ¶¶ 79-80. Further, Liberty clearly knew of the benefit it derived from collecting and transmitting Plaintiff's Sensitive Information to the Tracking Tool Providers because it purposefully configured the Tracking Tools on the Portal to collect and transmit copious amounts of user data, including the Sensitive Information. *Id*. ¶¶ 61, 67.

Therefore, Plaintiff has stated a claim for unjust enrichment.

## V. <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that Liberty's Motion be <u>DENIED</u>.

Dated: May 18, 2026

Respectfully submitted,

By: /s/ Sonjay C. Singh

Sonjay C. Singh (*pro hac vice*)
**SIRI & GLIMSTAD LLP**
400 East Pratt Street, 8th Floor - #16946751
Baltimore, MD 21202
Tel: (212) 532-1091
E: ssingh@sirillp.com

Ramon Rodriguez, III
**SIRI & GLIMSTAD, LLP.**
745 Fifth Avenue, Suite 500
New York, New York 10151
Tel: (212) 532 1091
E: rrodriguez@sirillp.com

*Counsel for Plaintiff,*
KYLER LYONS

**CERTIFICATE OF SERVICE**

I, Sonjay C. Singh, certify that on May 18, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will then send a Notice of Electronic Filing to all counsel of record.

/s/ Sonjay C. Singh
Sonjay C. Singh (*pro hac vice*)

*Counsel for Plaintiff,*
KYLER LYONS