**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF VIRGINIA**

| | |
|---|---|
| **KYLER LYONS,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**LIBERTY UNIVERSITY, INC.,**<br><br>**Defendant.** | **Civil Action No. 6:26-cv-00007** |

**DEFENDANT LIBERTY UNIVERSITY, INC.'S**
**REPLY IN SUPPORT OF MOTION TO DISMISS**

Plaintiff's Opposition cannot be reconciled with the Complaint, to which she is bound. Throughout the Opposition, Plaintiff attempts to characterize the transmitted information as encompassing data categories that appear nowhere in the Complaint's factual allegations. In fact, those characterizations are ***contradicted*** by the screenshots embedded in the Complaint. Those characterizations are the foundation of Plaintiff's substantive arguments and her attempts to avoid Rule 12(b)(1) and Rule 12(b)(6) dismissal. Each characterization, however, when compared to the embedded screenshots, falls apart and demonstrates there are no plausible allegations that Plaintiff's sensitive information was shared without her consent.

Indeed, Plaintiff's Opposition systematically overstates the Complaint's allegations in material ways. It cites the legal definition of "education records" under FERPA (Compl. ¶ 83) and then presents that legal definition as a factual allegation of what was disclosed, while at the same time ignoring the allegations in the Complaint and what the imbedded screenshots show was disclosed. For example, the Opposition claims the Complaint's screenshots show information that does not appear there, including financial aid data, grades, and prayer content. And it conflates

the Portal's capabilities of, for example, allowing students to "view information regarding their financial aid," with the actual disclosures of that information to third parties, which does not occur.

For each category of purportedly "sensitive" information, the Opposition's descriptions are invariably different than what the Complaint alleges. For instance:

- "Course names and numbers" (Compl. ¶ 6) becomes "student course schedules" and "class lists" (Opp. at 3-4).
- "Past or future assignment names" (Compl. ¶ 62) becomes "the specific assignments she was submitting" (Opp. at 20).
- The "content of the Prayer Request" (Compl. ¶ 65) becomes mere "interactions with the [Prayer Request] form" (Opp. at 9 n. 9).

Because the Complaint's own allegations and screenshots refute those attempted characterizations, every argument built on them fails.

Moreover, Plaintiff's attempts to show she has adequately alleged cognizable causes of action fail because they are premised on (i) the application of Arizona law, which is not applicable, or (ii) completely ignores that FERPA recognizes directory information has no privacy interest and can be shared without consent. For these reasons and the analysis set forth in Liberty's opening brief and this reply, the Court should dismiss Plaintiff's Complaint in its entirety under Rule 12(b)(1) or Rule 12(b)(6).

## LEGAL ARGUMENT

### I. The Complaint should be dismissed for lack of standing.

As Liberty University ("Liberty") identified in its opening brief, Article III standing for alleged unauthorized disclosure of information requires that the information be sufficiently "sensitive" to give rise to a reasonable expectation of privacy. *Holmes v. Elephant Insurance Co.*, 156 F.4th 413, 425 (4th Cir. 2025). Plaintiff has not plausibly alleged that the actual data at issue was sensitive because almost all of it constituted "directory information" that can be freely

disclosed without consent under the Family Educational Rights and Privacy Act, 34 C.F.R. § 99.3 ("FERPA") and Liberty's FERPA Policy, and the allegations about "prayer requests" and grades being disclosed are belied by the screen shots in the Complaint, which establish no such information is shared. Liberty Brf. at 10-15.

Plaintiff's Opposition does not dispute that Article III standing requires there to be a disclosure of sensitive personal information. Opp. at 8. Instead, it tries to overcome the issues with a lack of standing by inventing new allegations that are not part of the Complaint and making generalized assertions of law concerning FERPA's importance. These efforts are insufficient to save the Complaint from dismissal.

**A. Non-sensitive information is insufficient to confer standing.**

Class Lists and Course Schedules: Plaintiff's standing argument first claims Liberty disclosed "FERPA-protected education records," including "class lists, student course schedules, [and] student financial information." Opp. at 3-4 (emphasis in original). Nowhere in the Complaint, however, does Plaintiff plausibly allege Liberty University disclosed this information as to her.[1] *See* Compl. ¶ 62.

Plaintiff's Opposition engages in sleight of hand, contending the Complaint's allegations of disclosure of "course names and numbers" (Compl. ¶ 6) is actually the disclosure of student "class lists" and "student course schedules" (Opp. at 3-4). "Course names and numbers," is not the same as "student course schedules" or "class lists." A course name appearing in a URL string like "COUN 504 – Ethical and Legal Issues in Counseling" (*see* Compl. ¶ 64) identifies a single course title. It does not disclose a student's course schedule, let alone a "class list" showing other

[1] Paragraph 83 of the Complaint quotes the U.S. Department of Education's definition of "education records," which identifies these categories of information. The Complaint, however, contains no plausible allegation that Liberty transmitted this information for Plaintiff (or anyone else).

students enrolled in that course.[2] Moreover, the title of a course is an academic program, which is directory information under the FERPA Policy. *See* Liberty Brf. at 4 (identifying, among other categories, name, enrollment status, academic programs, major fields of study, and dates of admission designated as directory information under Liberty's FERPA policy.).

Assignments: The Opposition also claims Liberty disclosed "specific assignments she was submitting" (Opp. at 20), suggesting academic work product was transmitted. At best the Complaint shows only assignment ***titles*** appearing in URL strings (e.g., Compl., ¶ 63, Fig. 8), which is not the content of an assignment and certainly not something that constitutes "personal characteristics" that would make a student's identity easily traceable to constitute protected information under FERPA.[3] *See* 20 U.S.C. § 1232g and 34 C.F.R. § 99.3 (stating protected information is the type of information that makes the student's identity easily traceable). Moreover, the cases Plaintiff relies on to claim the titles to assignments are protected (Opp. at 5), do not address an assignment title in a URL. In addition, the Department of Defense ("DoD") Instruction 1322.25, which requires authorization to release "course enrollment information" (Opp. at 5) has no relevance here. That DoD instruction governs authorizing the release of military students' complete enrollment files to the DoD for tuition reimbursement, and it says nothing about whether a course title in a URL path constitutes sensitive, non-directory information under

---

[2] Plaintiff also makes no attempt to establish how even things like class lists and names would be private, as students are well aware of the identity of their classmates; a distinctly public fact.

[3] Course requirements and descriptions are not sensitive personal information as they apply to all students are publicly available. *See, e.g.* https://www.liberty.edu/online/courses/acct301/ (last visited June 1, 2026); https://www.liberty.edu/online/courses/acct311/ (last visited June 1, 2026); https://www.liberty.edu/online/courses/acct511/ (last visited June 1, 2026); https://www.liberty.edu/online/courses/amoa204/ (last visited June 1, 2026); and https://www.liberty.edu/online/courses/apol330/ (last visited June 1, 2026).

FERPA. *See* Department of Defense Instruction Number 1322.5[4], Voluntary Education Programs, p. 39.

Student Financial Information: The same discrepancy between what is alleged and what Plaintiff argues in her briefing applies to her claim that her "financial" information was disclosed. Plaintiff's Opposition asserts Liberty disclosed "her financial aid status," citing the "pmd[Title]" and "ep.content_group" parameters in various figures. Opp. at 19 (citing Compl. ¶ 62-65, figs. 1-2 and figs. 6 & 9). But the cited parameters reveal nothing about financial aid status. Financial aid is not mentioned in the Complaint's description of any figure or listed among the categories of disclosed information in Paragraph 6. Moreover, none of the parameters contain anything resembling financial aid information. The Complaint's only connection between "financial aid" and screenshot is Paragraph 60, which states generally that Plaintiff "used the Portal for some or all of these purposes," an assertion that does not allege her financial aid information was transmitted outside of the Portal.

Grades: Plaintiff's Opposition claims in conclusory fashion that Liberty disclosed her "grades" to a third party "each time she checked her grades." Opp. at 9. Liberty's motion to dismiss disposed of this allegation by showing Figures 1 and 7 of the Complaint refute any inference that actual grades were disclosed. Liberty Brf. at 8-9.. No grade, numerical score, or grade point average appears anywhere in the Complaint's allegations or in the imbedded screenshots. *Id.* All that is disclosed is a URL string for the name of a webpage visited (i.e., "Grades for Kyler Lyons") but no substantive information is included. *See* Compl., ¶ 64, fig. 7. A URL path containing the word "grades" is considered nonactionable record information under the ECPA and simply does not implicate a protectible privacy interest to establish standing. *See*,

[4] https://www.esd.whs.mil/Portals/54/Documents/DD/issuances/dodi/132225p.pdf.

*e.g.*, *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1107 (9th Cir. 2014) (the contents of a message do not include "record information regarding the characteristics of the message"); *Heaven v. Prime Hydration LLC,* 761 F. Supp. 3d 812, 820 (E.D. Pa. 2025) (dismissing pixel-tracking claim for lack of standing where plaintiff's "searches for drink flavors" were "not the type of private information that, when disclosed, creates a harm sufficient to establish standing"); *Gabrielle v. Insider, Inc.*, No. 24-01566, 2025 LEXIS 127154, *20 (S.D.N.Y. Feb. 18, 2025) (collection and disclosure of an IP address through tracking technology "does not implicate a legally protected privacy interest").

Prayer Requests: In its motion to dismiss, Liberty demonstrated the Complaint does not plausibly allege any of her prayer requests were disclosed to any third party to support a finding of standing. Liberty Brf. at 9, 12-13 (establishing figure 9 does not show any prayer requests being disclosed). Plaintiff's Opposition does not meaningfully address this issue. Instead, Plaintiff devotes a single footnote to respond to Liberty's contention that there are no plausible allegations of her prayer requests being shared. *See* Opp. at 19, n.13. And, even that response confirms there are no plausible allegations of her prayer requests being shared. First, Plaintiff confirms there is no plausible allegation in the Complaint of a prayer request being shared because "[t]o generate a figure showing the disclosure of contents of the Prayer Requests, Plaintiff's counsel would have had to use Plaintiff's Liberty account to submit a false Prayer Request." *Id.* Second, Plaintiff's Opposition contends the Complaint discusses a "technical analysis showing [prayer request] information is transmitted," (*Id.*), but no such technical analysis allegation is found in the Complaint.

Because Plaintiff's allegation that "the content of the Prayer Request" was shared to Google (Compl. ¶ 65, Fig. 9), is belied by the actual screenshot in the Complaint, the screenshot

controls and the allegations can be disregarded on a motion to dismiss. *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 167 (4th Cir. 2016).

**B. <u>Liberty identifies "directory information" in its public notice, which further demonstrates there is no standing.</u>**

Plaintiff alternatively argues that even if the disclosed information was directory information, Liberty still violated FERPA by failing to designate it in its public FERPA notice. Opp. at 6. That is factually incorrect. Liberty's published FERPA Policy identifies each category of information it defines as "directory information." *See* Liberty Brf. at 4 (identifying, among other categories, name, enrollment status, academic programs, major fields of study, and dates of admission.). Moreover, Exhibit A to Liberty's motion to dismiss identifies each category of information alleged in the Complaint and the corresponding disclosure under the FERPA policy.

**C. <u>Any bare violation of FERPA cannot give rise to Article III standing.</u>**

Plaintiff also contends that legal traditions have protected privacy interests in a manner that renders privacy injuries "'redressable through private litigation.'" Opp. at 8 (*quoting U.S. Dep't of Just. v. Reps. Comm. For Freedom of Press*, 489 U.S. 749, 763 (1989)). But this conclusory legal contention ignores the same issues immediately above regarding the lack of disclosure of any truly "private" information. In citing *Ramirez,* Plaintiff ignores that, in *Holmes*, the Fourth Circuit subsequently clarified that "only sensitive personal information falls within the scope of the [privacy] tort. Other pieces of nonsensitive personal information can be shared without inflicting actionable harm." *Holmes*, 156 F.4th at 424-25.

**D. <u>Plaintiff's remaining theories of cognizable injury are based on conclusory allegations and should be rejected.</u>**

Plaintiff does not meaningfully address Liberty's other arguments about the insufficiency of her other alleged forms of "injury," including her alleged emotional distress, risk of future harm, diminution of value, and loss of benefit of the bargain. *See* Liberty Brf. at 14-16. In the Fourth

Circuit, alleged emotional distress injuries "cannot alone furnish standing for damages" because "tort law has long aimed a skeptical eye at freestanding emotional distress claims." *Holmes*, 156 F.4th at 434. Plaintiff also identifies no future harm entitling her to any injunctive relief. *Id*. at 430. As to any "diminution" of data value, the Complaint contains no allegation that Plaintiff sought to sell her directory information and was refused, or that her information became less valuable as a result of any disclosure. *See In re Cap. One Consumer Data Sec. Breach Litig.*, 488 F. Supp. 3d 374, 403 (E.D. Va. 2020). And, Plaintiff cannot identify "what specific portion of [her] fees went to data protection," resulting in a loss of the benefit of the bargain. *Kuhns v. Scottrade, Inc*., 868 F.3d 711, 718 (8th Cir. 2017). These alleged harms are insufficient to support Article III standing.

## II. Virginia law applies to Plaintiff's Claims.

### A. Plaintiff's tort claims are subject to Virginia law because Virginia is where the alleged wrongful conduct occurred.

Plaintiff's Opposition asserts that Arizona law (her home state) governs her invasion of privacy claim. Not so. Virginia applies "the law of the place of the wrong" to resolve choice-of-law questions in tort actions. *Milton v. IIT Research Inst.*, 138 F.3d 519, 521-522 (4th Cir. 1998). In *Milton*, after canvassing Virginia law, the court held that Virginia's *lex loci delicti* rule "clearly selects the law of the place where the *wrongful act occurred*, even when that place differs from the place where the effects of injury are felt." *Id*. at 522 (emphasis added). The court reasoned that the "place of the wrong" is where "the tortious conduct—the legal injury—occurred," not the "place where the effects of injury are felt." *Id. Milton* establishes the controlling Fourth Circuit rule that the place of the defendant's allegedly tortious conduct determines the applicable substantive law.

When *Milton* is applied, it is clear that Virginia law governs the tort claims because all of the alleged wrongful conduct occurred at Liberty's sole campus and principal place of business located in Lynchburg, Virginia. *See* Compl. ¶¶ 3, 20. In fact, the Complaint itself establishes that each act comprising the alleged torts was performed by Liberty and because Liberty has one location, occurred in Virginia. For example, Plaintiff alleges the transmission of Plaintiff's information to the Tracking Tool Providers originated from Liberty's Portal servers (Compl. ¶ 61), that Liberty deployed the Tracking Tools through "custom CSS and Javascript files uploaded into the Canvas software by [Liberty]" (Compl. ¶ 62 n.49), and Liberty "purposely configured the Tracking Tools on the Portal." Compl. ¶ 67. Hence, every act that Plaintiff characterizes as wrongful—the decision to deploy tracking technologies, the writing and uploading of custom code, the configuration of that code to capture student records beyond default parameters, and the resulting transmission of data to third parties—was allegedly performed by Liberty from its campus in Lynchburg, Virginia. Moreover, there are no allegations in the Complaint that any wrongful conduct occurred in Arizona. Under *Milton*, Virginia is unambiguously the purported "place of the wrong."

Plaintiff's contention that Arizona law applies rests on two cases that do not involve tracking technologies and are inapposite and the misreading of a third case, *Quillen v. Int'l Playtex, Inc.* The first case, *Gilmore v. Jones*, 370 F. Supp. 3d 630, 664–65 (W.D. Va. 2019), involved a claim for defamation, a tort in which the injury occurs where the defamatory statement is received and the plaintiff's reputation is damaged. *Id.* In defamation cases, the place of injury is where the false statement is communicated to third parties, because publication *is* the wrong. *See Cockrum v. Donald J. Trump for President, Inc.*, 365 F. Supp. 3d 652, 671 (E.D. Va. 2019).

The second case, *Williams v. Pac. Sunwear of Cal. LLC*, No. 24-02015, 2024 U.S. Dist. LEXIS 196954 (D. Ariz. Oct. 30, 2024), applied Arizona choice-of-law principles, not Virginia's *lex loci delicti* rule, to claims arising from a defendant sending an email with embedded spyware into the plaintiff's inbox, which is a completely different factual scenario than the use of tracking software installed on the portal. Moreover, *Williams* is inapplicable because it was analyzed under Arizona law, which follows the Restatement (Second) "most significant relationship" approach that Virginia has expressly rejected. *See McMillan v. McMillan*, 219 Va. 1127, 1130 (1979) rejecting the most significant relationship test because it creates "uncertainty and confusion in application of the theory.").

Moreover, Plaintiff's interpretation of *Quillen v. Int'l Playtex, Inc.*, 789 F.2d 1041 (4th Cir. 1986) does not alter the conclusion that Virginia is the place of the wrongful act and its law controls. In *Quillen*, a plaintiff brought a strict liability tort claim against a manufacturer to recover damages the defendant's conduct. *Id.* at 1042. Plaintiff alleged that the product in question was sold in Tennessee, and therefore the law of Tennessee governed the strict liability tort claim. *Id.* at 1044. The Supreme Court disagreed because the last act to make the defendant liable for a strict liability claim – an injury from the product – took place in Virginia. *Id*. In other words, the injury was distinct from the sale. Here, in contrast, there is no intervening event or distinction between Liberty's alleged conduct and the alleged damages. *See* Compl., ¶ 134 (acknowledging the Liberty conduct in storing and dissemination of information and allowing it to be accessed without Plaintiff's consent and damages are one in the same). Moreover, *Quillen* was decided *before Milton*, and under *Milton*'s controlling framework, the question is where the "tortious conduct—the legal injury—occurred," not where the plaintiff happened to be when she felt its effects governs. *See Milton*, 138 F.3d at 522.

### B. <u>Plaintiff does not dispute that Virginia law applies to her contract claims.</u>

On the governing law for the implied contract claim, Plaintiff's Opposition does not address Liberty's argument that the implied contract claim is governed by Virginia law. See Opp. at 17-18. Accordingly, she has "abandon[ed] any claim that a different state's law should govern." *Wiener v. AXA Equitable Life Ins. Co.*, 58 F.4th 774, 781 (4th Cir. 2023) ("[C]hoice of law is waivable, not jurisdictional.").

## III. The Complaint must be dismissed under Rule 12(b)(6) because it fails to state claims upon which relief can be granted.

### A. <u>All of Plaintiff's statutory and common law claims fail because she consented to the use of tracking technologies</u>.

In its opening brief, Liberty University demonstrated how its Privacy Policy has, at all relevant times, explicitly identified the disclosures of which Plaintiff now complains. Liberty Brf. at 5-6. Plaintiff does not contest that her consent to the sharing of the identified data would doom all her statutory and common law claims. *See, e.g., Libman v. Apple, Inc.*, No. 22-07069, 2024 U.S. Dist. LEXIS 175118, at *31 (N.D. Cal. Sep. 26, 2024) ("Courts consistently hold that terms of service and privacy policies, like [the] privacy policy here, can establish consent to the alleged conduct challenged under various states wiretapping statutes and related claims."). She also does not contest the Privacy Policy has been in effect at all relevant times and is available on Liberty's public-facing websites. Liberty Brf. at 5-6.

Instead, Plaintiff contends she "did not consent to Liberty University's Privacy Policy" because the Institutional Agreement signed as part of admission does not expressly name the Privacy Policy. Opp. at 6-7. But the "Institutional Agreement" identifies that it incorporates all of Liberty's published "policies," which obviously includes its Privacy Policy and the FERPA Policy. Liberty Brf. at 5-6.

The Privacy Policy is also indisputably a condition and term of enrollment. The terms of the student-university relationship "are contained in the brochures, course offering bulletins, and other official statements, policies and publications" of the university. *Showell v. Capella Univ. Inc.*, No. 16-3761, 2017 U.S. Dist. LEXIS 225113, at *7 (D. Md. Sept. 29, 2017) (citation omitted). When a "reasonably prudent internet user" takes online classes in a continuous relationship with the university for eight years, "the user is on reasonable notice of th[e] terms" defining the university-student relationship and is bound to them. *See Dhruva v. Curiositystream, Inc.*, 131 F.4th 146, 153 (4th Cir. 2025).

Plaintiff's reliance on *Hertz Corp. v. Zurich Am. Ins. Co.*, 496 F. Supp. 2d 668, 675 (E.D. Va. 2007), is similarly misplaced. *Hertz* addressed the issue of incorporation by reference in a commercial context. And, the Privacy Policy was one of the "policies" expressly incorporated into the Institutional Agreement. In any event, the question here is not whether a negotiated commercial contract sufficiently identified a secondary document, but whether a university's freestanding and publicly available Privacy Policy evidences consent to the data transmissions she now attempts to challenge. It plainly does. *Showell*, 2017 U.S. Dist. LEXIS 225113, at *7; *Popa v. Harriet Carter Gifts, Inc.*, 772 F. Supp. 3d 592, 607 (W.D. Pa. 2025) (dismissing state wiretapping claim based on privacy policy posted on defendant's website providing consent to the challenged conduct: "When viewing the record as a whole, the Court holds that the Privacy Statement is enforceable. Popa's decision not to review its terms does not permit her to avoid the implication of those terms. The hyperlink to the Privacy Statement was reasonably conspicuous. It was displayed in a white contrasting font against a blue background on the bottom of every page of the website.").

Plaintiff's reliance on *Jackson v. Liberty University*, No. 17-00041, 2017 U.S. Dist. LEXIS 122104 (W.D. Va. Aug. 3, 2017), and *Owen v. Liberty University*, No. 19-00007, 2020 U.S. Dist. LEXIS 64579 (W.D. Va. Apr. 13, 2020), also is misplaced because those cases addressed an entirely different question. In *Jackson* and *Owen*, students sought to enforce Liberty's unilateral disciplinary policies as binding contracts *against* the university. This Court rejected those claims because the policies "allow for unilateral revision by the university and do not bind the school," and therefore lack the "absolute mutuality of engagement" Virginia contract law requires. *Jackson*, 2017 U.S. Dist. LEXIS 122104, at *16. The question here is not whether Plaintiff can enforce Liberty's Privacy Policy as a contract against Liberty; it is whether Plaintiff had notice of that policy's terms through the Institutional Agreement, its publication through other channels, and her years of Portal use.

Finally, Plaintiff's argument over the Privacy Policy ignores that the information at issue is directory information that may be disclosed without consent under FERPA. *See* 20 U.S.C. § 1232g(b)(1); Liberty Brf. at 3-4. Even if Plaintiff had never seen the Privacy Policy, FERPA's regulatory framework independently permits the disclosure of directory information once the university has provided public notice of the categories it designates as such, which Liberty's FERPA Policy does. The Complaint does not allege that Plaintiff ever exercised her right under the FERPA Policy to opt out of directory information disclosures by notifying Liberty via email. Liberty Brf. at 3-4. Therefore, regardless of whether Plaintiff "consented" to the Privacy Policy, Liberty was legally permitted to share the information allegedly disclosed.

**B. <u>The invasion of privacy claim further fails under Virginia law and also because none of the data at issue is sufficiently sensitive to support such a claim.</u>**

In its opening brief, Liberty demonstrated that the invasion of privacy claim must be dismissed because Virginia law does not recognize a common law cause of action for invasion of

privacy or intrusion upon seclusion and even if Virginia recognized such claims, the information allegedly shared (i.e., directory information) is not the type of information that is sensitive to support such a claim. *See* Liberty Brf. at 19-20.

Plaintiff does not dispute the fact that Virginia does not recognize a common law cause of action for invasion of privacy or intrusion upon seclusion. Her argument in opposition instead focuses solely on the application of Arizona law. Accordingly, to the extent Virginia law applies to the invasion of privacy claim, the claim must be dismissed.

The invasion of privacy claim also must be dismissed if Arizona law applies because the Complaint fails to adequately allege a claim based on an intrusion upon seclusion or the publication of private facts. Under Arizona law, to allege a claim for intrusion upon seclusion, a plaintiff must prove: "(1) intentional intrusion, physically or otherwise, upon the solitude or seclusion of another or their private affairs or concerns; and (2) that the intrusion would be highly offensive to a reasonable person." *Davis v. HDR Incorporated*, 652 F.Supp.3d 1087, 1097 (2023) (citations omitted). The "highly offensive to a reasonable person" standard cannot be met here where the information at issue is directory information that the U.S. Department of Education recognizes as "generally not considered harmful or an invasion of privacy if disclosed." Liberty Brf. at 12. Moreover, Plaintiff's reliance on cases from the Northern District of Illinois (Opp. at 12) to argue the Complaint adequately alleges an intrusion upon seclusion claim under Arizona law fails for two reasons. First, the cases Plaintiff relies upon interpreted Illinois law. Second, the cases involved the alleged disclosure of highly sensitive data including protected health information under HIPAA and student loan servicing financial data, the disclosure of which would be highly offensive. *See Berrow v. Navient Sols. LLC*, 685 F. Supp. 3d 859, 864-65 (D. Ariz. 2023) (finding that 323 calls in a 14-month period reminding the plaintiff of the death of his daughter could be

highly offensive under Arizona law); *Theys v. Dental Intel., Inc.*, No. 25-2464, 2026 U.S. Dist. LEXIS 46654, at *22 (N.D. Ill. Mar. 6, 2026) (finding that disclosure of private health information could be highly offensive under Illinois law); *Smith v. Loyola Univ. Med. Ctr.*, No. 23-15828, 2024 U.S. Dist. LEXIS 119995, at *9 (N.D. Ill. July 9, 2024) (same); *L.C. v. Fertility Centers of Illinois, PLLC*, No. 25-2049, 2025 U.S. Dist. LEXIS 252774, at *13 (N.D. Ill. Dec. 8, 2025) (same). Illinois law does not apply here and the directory information allegedly disclosed is not sensitive to rise to the level of a disclosure being highly offensive.

Likewise, Plaintiff's contention that she adequately alleges a claim from the "publication of private facts" fails as well. In order to allege the publication of private facts, a Complaint must allege facts demonstrating defendant made a public disclosure of a matter concerning plaintiff's "private life" and that "the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public." *See Oakes v. Gannett Media Corp.*, No. 25-1286, 2025 U.S. Dist. LEXIS 213225, *20 (D. Ariz. Oct. 27, 2025). Plaintiff has not plausibly alleged any public disclosure that was highly offensive and therefore the complaint must be dismissed. *See Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025) (dismissing browsing tracking technology claim because it did not involve the kind of "embarrassing, invasive, or otherwise private" information that constitutes highly offensive information).

Moreover, the cases Plaintiff relies upon to allege the Complaint contains a viable claim for publication of private facts demonstrates the weakness in Plaintiff's position. The *Salazar v. NBA*, case that Plaintiff relies upon involved video viewing information that is protected under the Video Privacy Protection Act, is a categorically different type of information from the type of directory information that FERPA expressly permits to be disclosed without consent. Opp. at 13; *Salazar v. NBA*, 118 F.4th 533 (2d Cir. 2024). Similarly, the *Theys v. Dental Intel., Inc.*, case is

not applicable because it involved the alleged sharing of sensitive information in form of protected health information under HIPAA. 2026 U.S. Dist. LEXIS 46654, at *22.

### C. Plaintiff's negligence claim is further barred by the economic loss doctrine.

As Liberty previously identified, Plaintiff's negligence claim is barred by Virginia's economic loss doctrine because the relationship is governed by Liberty University's Privacy Policy, FERPA Policy, and FERPA's regulatory framework. Liberty Brf. at 20-21. Plaintiff's Opposition cannot withstand scrutiny.

First, Plaintiff argues that Arizona law governs and has not extended the economic loss doctrine to data privacy cases. For the reasons above, Virginia law applies and therefore this argument fails. With respect to Virginia law, Plaintiff contends that Liberty "undertook a duty" to maintain her "Sensitive Information with care" and therefore the economic loss doctrine does not apply. *See* Opp. at 22. However, the two cases Plaintiff relies upon for this argument, *In re Capital One Consumer Data Sec. Breach Litig*., 488 F. Supp. 3d 374 (E.D. Va. 2020), and *White v. United Network for Organ Sharing*, No. 24-629, 2025 U.S. Dist. LEXIS 182074 (E.D. Va. Sep. 16, 2025), involved the assumption of an independent duty to protect sensitive personal information (financial and health care information) outside the scope of contract. In this case, there is no sensitive information being disclosed and parties' rights and obligations are regulated by Liberty's Privacy Policy, FERPA Policy and federal law, such that the economic loss doctrine bars claims in tort.

In addition, Plaintiff's claim that her damages are "non-economic" because they include "loss of privacy" and "loss of control over the use of [her] identity," do not prevent application of the economic loss doctrine from barring the tort claims. The reason for this is that the Complaint says otherwise. The Complaint's negligence count requests "compensatory, nominal, and/or punitive damages" (Compl. ¶ 135), and its injury allegations speak of "diminution of value of the Sensitive Information" and "loss of benefit of the bargain" (Compl. ¶ 13). Those are

quintessentially economic harms. Liberty Brf. at 14-16. Plaintiff cannot recharacterize her damages theory in opposition to avoid the economic loss doctrine's bar.

**D. <u>The breach of implied contract claim fails due to the existence of contracts allowing the alleged disclosures, and also for failure to plead a cognizable injury.</u>**

Under Virginia law, "the existence of an express contract precludes an implied contract claim covering the same subject matter." *Spectra-4, LLP v. Uniwest Com. Realty, Inc.*, 772 S.E.2d 290, 293 (Va. 2015); *Mongold v. Woods*, 278 Va. 196, 204 (2009).[5] The Privacy Policy and FERPA Policy expressly govern the collection, use, and disclosure of student information, the precise subject matter of Plaintiff's implied contract claim.

Plaintiff's Opposition responds that Liberty "has not established Plaintiff's consent to these agreements." Opp. at 24. For the reasons stated in the opening brief, the Privacy Policy was publicly accessible and governs the terms of her enrollment. Liberty Brf. at 5-6. The same was true with respect to the FERPA Policy. *Id.*

Plaintiff next cites *Mgaresh v. Va. Union Univ*., No. 24-337, 2025 U.S. Dist. LEXIS 35926 (E.D. Va. Feb. 27, 2025), as supporting her implied contract claim. But *Mgaresh* involved a data breach in which the defendant allegedly failed to safeguard PII from unauthorized access by third-party hackers, not a scenario involving an express contractual provision governing the defendant's obligations. 2025 U.S. Dist. LEXIS 35926, at *2-3.

Finally, Plaintiff alleges her "Sensitive Information has financial value" and that the alleged disclosures "diminished" that value. Opp. at 26. But the Complaint does not allege with "reasonable certainty" what damages flowed from the disclosure of her directory information, which is authorized under FERPA. The Complaint's allegation that Plaintiff "would not have used

---

[5] As noted above, Plaintiff abandoned any argument that Arizona law applies to the breach of implied contract claim.

Defendant's services or would have paid substantially less for those services" (Compl. ¶ 143) is the type of speculative assertion that cannot survive dismissal. *Scheduled Airlines Traffic Offices, Inc. v. Objective: Inc.*, 180 F.3d 583, 588 (4th Cir. 1999) ("any estimate would be rooted in speculation and conjecture, both of which constitute improper grounds for damages under Virginia law.").

**E. <u>The unjust enrichment claim further fails because there are express contracts allowing the disclosures at issue.</u>**

Plaintiff's unjust enrichment claim fails for the same threshold reason as her implied contract claim: the Privacy Policy and FERPA Policy govern the same subject matter. Plaintiff's assertion that she may plead unjust enrichment "in the alternative" where "the validity or existence of an express contract . . . is in dispute" (citing *Moog Inc. v. Turbochef Techs., Inc.*, No. 25-291, 2026 U.S. Dist. LEXIS 80788, at *14 (E.D. Va. Apr. 13, 2026)) does not save this claim. Opp. at 26-27. There is no genuine dispute about the Privacy Policy's and FERPA Policy's existence. Plaintiff's dispute concerns its enforceability, a question that does not convert a claim barred by an express agreement into one that may proceed.

Moreover, Plaintiff's attempt to distinguish *Lugo v. INOVA Health Care Servs.*, No. 24-700, 2025 U.S. Dist. LEXIS 55590 (E.D. Va. Mar. 25, 2025), by claiming "details about the monetary value Internet companies earn from mining and selling user data and examples of several companies which pay consumers for a license to track information about them." Opp. at 28. But the Complaint's allegations on this point (Compl. ¶¶ 79-80) are generic assertions about the value of consumer data *generally*. They do not allege that Liberty or any other university pays students for directory information or that any market exists for such information. The very concept of paying for information that is publicly available under FERPA makes little economic sense. The *Lugo* court's reasoning applies here because there are no plausible allegations that Liberty

University should reasonably have expected to pay Plaintiff for non-sensitive directory information that it is legally permitted to disclose without consent. *Lugo*, 2025 U.S. Dist. LEXIS 55590 at *13.

### F. **<u>The ECPA claim fails.</u>**

In its opening brief, Liberty established that the ECPA must be dismissed because the ECPA is a one-party consent statute, Liberty was a party and consented to any alleged electronic communication that was intercepted, and the crime-tort exception cannot be invoked to convert a one-party consent statute into a two-party consent statute. Liberty Brf. at 25-26. Liberty also established the ECPA claim fails because there are no plausible allegations of an interception of the "contents" of an electronic communication to support a cognizable ECPA claim. Liberty Brf. at 28. Plaintiff makes two arguments in response, but neither has merit.

#### 1. **<u>The crime-tort ECPA exception does not apply.</u>**

First, Plaintiff alleges that the Complaint's allegations satisfy the crime-tort exception to give rise to an ECPA claim because it adequately alleges Liberty installed the Tracking Tools "to commit an unlawful act: disclosure of her education records without authorization in violation of FERPA and the other causes of actions included in the Complaint." Opp. at 13-14. Plaintiff contends that "'[c]ourts around the country…have permitted the invocation of the ECPA's crime-tort exception when plaintiffs allege violations of HIPAA'—a federal statute that, like FERPA, protects the confidentiality of a certain class of sensitive information and also does not include a private right of action.'" *Id.* at 10. This argument fails, however, because the HIPAA cases finding the crime-tort exception was satisfied involved alleged violations of HIPAA's criminal provisions. *See, e.g., Doe v. Shady Grove Reprod. Sci. Ctr., P.C.*, No. 24-2368, 2025 U.S. Dist. LEXIS 192453, at *25 (D. Md. Sept. 30, 2025) (finding crime tort exception available where there were allegations of willfulness and a violation of the criminal provisions of the Maryland Wiretapping & Electronic

Surveillance Act); *Murphy v. Thomas Jefferson Univ. Hosps., Inc.*, No. 22-4674, 2024 U.S. Dist. LEXIS 177625, at *11-12 (E.D. Pa. Sept. 30, 2024) (crime-tort exception adequately alleged because HIPAA "makes it a federal crime to knowingly disclose IIHI to third parties"); *Theys*, 2026 U.S. Dist. LEXIS 46654, at *34 (finding crime-tort exception satisfied because 42 U.S.C. § 1320(d)(6) of HIPAA imposes a criminal penalty for knowingly "disclosing individually identifiable health information (IIHI) to another person"); *A.D. v. Aspen Dental Mgmt., Inc.*, No. 24-1404, 2024 U.S. Dist. LEXIS 161090, at *3 (N.D. Ill. Sep. 9, 2024) (crime tort exception satisfied noting "Section 1320d-6 of HIPAA imposes federal criminal liability for one who knowingly discloses 'individually identifiable health information' to third parties"); *Loyola Univ. Med. Ctr.*, 2024 U.S. Dist. LEXIS 119995, at *16 (same). Here, FERPA does not contain any criminal provision like HIPAA, the information allegedly disclosed is not sensitive like health information, and Liberty was permitted to share the information without consent under FERPA. Liberty Brf. at 27-28.

Moreover, Plaintiff's citation to cases involving the alleged disclosure of "FERPA-protected information" and finding the crime-tort exception satisfied (Opp. at 15), do not save the ECPA claim from dismissal. In *Q.J. v. PowerSchool Holdings, LLC*, No. 23-5689, 2025 U.S. Dist. LEXIS 161612 (N.D. Ill. Aug. 20, 2025) and *Dawson v. Univ. of Phx., Inc.*, No. 25-3497, 2026 U.S. Dist. LEXIS 6299, at *44 (N.D. Ill. Jan. 13, 2026), the courts relied on HIPAA cases involving the alleged sharing of sensitive protected health information to find the crime-tort exception satisfied. *See Q.J.*, 2025 U.S. Dist. LEXIS 161612, at *17-18; *Dawson*, 2026 U.S. Dist. LEXIS 6299, at *44. As outlined above, the Complaint contains no plausible allegation about the disclosure of sensitive information and no allegations concerning HIPAA violations, to invoke the crime-tort exception.

Finally, Plaintiff alleges the crime-tort exception is satisfied because the Complaint alleges other causes of action arising from the exact same conduct which support application of the crime-tort exception. *See* Opp. at 15. These arguments fail because it is "well established that [the crime-tort] exception only applies where the defendant allegedly committed a tortious or criminal act independent from the act of recording itself." *Kurowski v. Rush Sys. for Health*, 683 F. Supp. 3d 836, 844 (N.D. Ill. 2023) (citing *Caro v. Weintraub*, 618 F.3d 94, 99 (2d Cir. 2010)); *Okash v. Essentia Health*, No. 23-482, 024 U.S. Dist. LEXIS 53126, at *12 (D. Minn. Mar. 26, 2024) (rejecting argument that crime-tort exception applied where the alleged tortious or criminal act was not independent of the interception itself); *United States v. Jiau*, 734 F.3d 147, 152 (2d Cir. 2013) (confining crime-tort exception to "instances where the recording party intends to use the recording to harm or injure a recorded party, such as to blackmail, threaten, or publicly embarrass the recorded party"). In other words, because the cause of action is not independent of the interception itself, they cannot support application of the crime-tort exception.

**2. <u>There was no interception of "contents."</u>**

Plaintiff's Opposition contends that the contents of communications are adequately alleged in the Complaint to support an ECPA claim because the figures in the Complaint show "specific courses," "assignment names," and "financial aid status" being disclosed. Opp. Brf. at 19. This is incorrect. A review of the Complaint reveals what was actually transmitted are URLs of the pages Plaintiff visited and not the contents of any communication. *See supra* at Section I.A. As the court in *Yoon v. Lululemon USA, Inc.* recognized, "keystrokes, mouse clicks, pages viewed…shipping and billing information" and similar metadata are "not 'message content in the same way that [are] the words of a text message or an email.'" 549 F. Supp. 3d 1073, 1082-83 (C.D. Cal. 2021). Accordingly, because the substance of Plaintiff's communications is not disclosed, her ECPA claim fails.

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in Liberty University's opening brief, the Court should dismiss Plaintiff's Complaint in its entirety under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

*/s/ Timothy St. George*
Timothy St. George
Virginia State Bar No. 77349
TROUTMAN PEPPER LOCKE LLP
Noah J. DiPasquale
Virginia State Bar No. 96519
1001 Haxall Point, 15th Floor
Richmond, VA 23219
Telephone: (804) 697-1254
Facsimile: (804) 698-6013
Email: timothy.st.george@troutman.com
Email: noah.dipasquale@troutman.com

*Counsel for Liberty University, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 1, 2026, I caused the foregoing document to be filed with the Clerk of Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

*/s/ Timothy St. George*
Timothy St. George

*Counsel for Liberty University, Inc.*