CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

7/28/2026
LAURA A. AUSTIN, CLERK
BY:  s/ ARLENE LITTLE
DEPUTY CLERK

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF VIRGINIA**
LYNCHBURG DIVISION

|  |  |
|---|---|
| KYLER LYONS,<br><br>              *Plaintiff,*<br>     v.<br><br>LIBERTY UNIVERSITY, INC.,<br><br>              *Defendant.* | CASE NO. 6:26-CV-00007<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

Kyler Lyons filed this class action, alleging that Liberty University, Inc. ("Liberty") collected and surreptitiously sold his (and other students') sensitive data to third parties like Google, Meta,[1] and Microsoft.[2] Dkt. 1 ¶ 5. Liberty moves to dismiss Lyons' class action complaint, arguing that: (1) Lyons lacks Article III standing because he was not injured-in-fact by Liberty sharing non-sensitive information with third-parties, Dkt. 17 at 10–14; (2) Virginia law applies to Lyons' claims, *id.* at 17,  and therefore, Lyons' invasion of privacy, negligence, breach of implied contract, and unjust enrichment claims fail as a matter of law as Virginia does not recognize privacy torts and Liberty had an express contract with Lyons, *id.* at 19–24; and (3) Lyons' Electronic Communications Privacy Act ("ECPA") fails because Liberty was a party to Lyons' communications and merely invited third parties like Google, Meta, and Microsoft to intercept the

---

[1]	The Complaint refers to "Meta Platforms, Inc." as "Facebook." Dkt. 1 ¶ 5. The Court will refer to this corporation as Meta throughout this Memorandum Opinion.

[2]	The Complaint uses male pronouns when referring to Kyler Lyons, *e.g.* Dkt. 1 ¶¶ 16–18, while Plaintiff's response in opposition to Liberty's motion to dismiss uses female pronouns, Dkt. 24 at 2. Because the Court is bound by the factual allegations in the Complaint, the Court will utilize male pronouns in this Memorandum Opinion.

data, *id.* at 25–28. For the following reasons, Liberty's motion will be granted to the extent that Lyons' ECPA claim will be dismissed without prejudice. It will be denied in all other respects.

## I.    BACKGROUND

Liberty students are required to use Liberty's online student portal located at www.mylu.liberty.edu, and Liberty's learning management system located at www.liberty.instructure.com (collectively, the "Portal"). Dkt. 1 ¶¶ 4, 60. The Portal allows students to review their grades; enroll in courses; submit assignments; view information regarding their financial aid, jobs or internships; and submit "Prayer Requests." *Id.* In exchange for using Meta's, Google's, and Microsoft's products, Liberty allowed those third parties to install their tracking tools on the Portal, which "capture[d] and transmit[ted] [students'] Sensitive Information," *id.* ¶¶ 27, 29–30, 33–34, 61, including prayer requests, *id.* ¶ 65.[3] According to Lyons, neither he nor his fellow students knew that their full names, registration statuses, course names and numbers, and prayer requests were being automatically shared with Meta, Google, and Microsoft. *Id.* ¶¶ 5–6. Meta, Google, and Microsoft compensated Liberty (either directly or indirectly) for sharing its students' data, primarily by giving Liberty access to their business analytic tools. *Id.* ¶¶ 8–10, 68, 75–76, 155.

---

[3]    Based on the allegations, it appears that Liberty—in exchange for using Meta's, Google, and Microsoft's business analytics—must install pixels from those third parties onto its website. Dkt. 1 ¶¶ 8–10, 44–59. The pixels allow Liberty to measure and track certain actions taken by the users of its website(s). *Id.* However, Liberty is only using the pixel to analyze data it already possesses. It is difficult to see how Lyons or any other student is harmed by Liberty using technological tools to analyze data that is voluntarily communicated to it. Where the harm seems to lie is that Meta, Google, and Microsoft use the pixels and their source code commands to redirect the web-users' data from Liberty's website to them. *Id.*; *see also Yoon v. Meta Platforms, Inc.*, 2024 WL 5264041, at *1 (N.D. Cal. Dec. 30, 2024) (explaining how Pixels and source code commands work).

After learning that his Portal information was being shared with Meta, Google, and Microsoft, Lyons filed this purported class action complaint, citing this Court's jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). Lyons' Complaint includes four common law causes of action—invasion of privacy, negligence, breach of implied contract, and unjust enrichment; and one federal claim—a violation of the Electronic Communications Privacy Act ("ECPA").[4] Liberty seeks dismissal of all five claims. Dkts. 16–17.

## II.     LEGAL STANDARDS

When the Court is considering a motion to dismiss under 12(b)(1), the plaintiff "has the burden of proving that subject matter jurisdiction exists." *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). A jurisdictional challenge under Rule 12(b)(1) generally takes one of two forms: factual or facial. *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). A factual challenge attacks the truth-in-fact of the plaintiff's jurisdictional allegations, whereas a facial challenge attacks the legal sufficiency of the plaintiff's jurisdictional allegations. *Id.*

Where, as here, a defendant appears to "facially" attack subject matter jurisdiction, the familiar *Twombly/Iqbal* standard applies to both its jurisdictional and merits arguments. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Kerns*, 585 F.3d at 192. Accordingly, when considering Liberty's Rule 12(b)(1) and 12(b)(6) arguments, the Court must accept Lyons' factual allegations as true and draw all reasonable inferences in his favor. *See Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty.*, 684 F.3d 462, 467 (4th Cir. 2012).

---

[4]     Although the Complaint repeatedly references the Federal Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g, et seq., Lyons recognizes there is no private right of action under FERPA. *See* Dkt. 24 at 14; *see also Gonzaga Univ. v. Doe*, 536 U.S. 273, 290 (2002).

### III.    ANALYSIS

#### A.  Article III Standing

The Constitution limits federal court jurisdiction to "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. Establishing Article III standing is an "essential and unchanging part of the case-or-controversy requirement." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). To establish standing, a plaintiff must show that he has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant; and (3) [] is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan*, 504 U.S. at 560–61; *Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc.*, 528 U.S. 167, 180–81 (2000)). Colloquially speaking, to have standing, a plaintiff "must be able to sufficiently answer the question: what's it to you?" *Holmes v. Elephant Ins. Co.*, 156 F.4th 413, 420 (4th Cir. 2025).

To establish an injury in fact, a plaintiff must show that he suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560. An injury is: (1) particularized so long as it "affect[s] 'the plaintiff in a personal and individual way,'" *Penegar v. Liberty Mut. Ins. Co.*, 115 F.4th 294, 299 (4th Cir. 2024) (citing *FDA v. Alliance for Hippocratic Med.*, 602 U.S. 367, 381, (2024)); (2) concrete if it is "real and not abstract," *id.*; and (3) actual and imminent—even if intangible—so long as it is "palpable," *Beck v. McDonald*, 848 F.3d 262, 271 (4th Cir. 2017). Loss in economic value "is [the] quintessential injury in fact." *Poppleton Now Cmty. Ass'n, Inc. v. La Cite Dev., LLC*, 175 F.4th 455, 462 (4th Cir. 2026). An invasion of a privacy right recognized by common law is another. *Holmes*, 156 F.4th at 420.

Here, Liberty argues that Lyons has not adequately pleaded an Article III injury. Dkt. 17 at 10–13. It contends it only shared "nonsensitive" information and that "only sensitive personal

information falls within the scope of [a privacy] tort [recognized by common law]" and that "[o]ther pieces of nonsensitive personal information can be shared without inflicting actionable harm." *Id.* at 11 (citing *Holmes*, 156 F.4th at 424). In addition to citing the Fourth Circuit's *Holmes* decision, Liberty cites two other circuits and five district courts for the same proposition—the unauthorized sharing of non-sensitive or public information does not create an Article III injury.[5] Liberty claims that the figures included in Plaintiff's Complaint demonstrate that neither Plaintiff's grades nor his prayer requests were actually shared with third parties, and that merely sharing his name, course names, and assignments does not create a cognizable injury. *Id.* at 11, 13.

Liberty is right that *Holmes*, *Cook*, *Popa*, *Heaven*, *Lightoller*, *Byars*, and *Massie* stand for the unremarkable proposition that a party who shares or intercepts public, non-sensitive information does not harm anyone's privacy interest.[6] *See* n.1. However, Liberty concedes that

---

[5] *See Cook v. GameStop, Inc.*, 148 F.4th 153 (3d Cir. 2025) ("merely tracking internet users' browsing time and website interactions—without recording or disclosing sensitive or personal information—fails to constitute the type of concrete injury required to confer Article III standing."); *Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025) (plaintiff lacked standing where the complaint alleged tracking of her interactions with a website occurred, but failed to identify any "embarrassing, invasive, or otherwise private information" collected by the tracking tool.); *Gabrielli v. Insider, Inc.*, 2025 WL 522515, at *5 (S.D.N.Y. Feb. 18, 2025) (sharing a plaintiff's IP address, without more, does not state a cognizable injury); *Heaven v. Prime Hydration LLC*, 761 F. Supp. 3d 812, 820 (E.D. Pa. 2025) (dismissing pixel-tracking claim for lack of standing where plaintiff's "searches for drink flavors" were "not the type of private information that, when disclosed, creates a harm sufficient to establish standing"); *Lightoller v. Jetblue Airways Corp.*, 2023 WL 3963823, at *5 (S.D. Cal. June 12, 2023) (collecting flight information that the plaintiff had browsed on the internet was not an invasion of privacy because flight information is not sensitive or personal); *Byars v. Sterling Jewelers, Inc.*, 2023 WL 2996686, at *3 (C.D. Cal. Apr. 5, 2023) ("Plaintiff does not allege that she disclosed any sensitive information to Defendant, much less identify any specific personal information she disclosed that implicates a protectable privacy interest. She therefore has not identified any harm to her privacy."); *Massie v. Gen. Motors LLC*, 2022 WL 534468, at *5 (D. Del. Feb. 17, 2022) ("'Eavesdropping' on communications that do not involve personal information, personally identifiable information, or information over which a party has a reasonable expectation of privacy does not amount to a concrete injury.").

[6] Liberty cites *Gabrielli*, 2025 WL 522515, at *5, for the proposition that sharing a plaintiff's IP address (and consequently sharing their location) does not, standing alone, constitute an Article

sharing or gathering private, personal data can create an Article III injury. *See also In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 596 (9th Cir. 2020) (collecting a person's browsing history—which can include looking at medical websites or pornography—implicates a protectable privacy interest); *In re: Google Inc. Cookie Placement Consumer Privacy Litigation*, 934 F.3d 316 (3rd Cir. 2019); *Mount v. PulsePoint, Inc.*, 684 F. App'x 32 (2d Cir. 2017) (unpublished). It is difficult to imagine information more personal and more sensitive than the details of a prayer request. It is also conceivable that some people would wish to closely guard their grades from public view.

Here, Lyons alleges that Liberty transmitted his anonymous prayer request(s) and grades to Meta, Microsoft, and Google alongside his personal identifying information. Dkt. 1 ¶¶ 1, 4, 6, 62–67, 166. According to him, this invasion of his privacy interests easily satisfies Article III's injury-in-fact requirement. Dkt. 24 at 8–10. By contrast, Liberty argues the Court should discount Lyons' allegations about his grades and prayer requests because the figures Lyons included in his Complaint show that the substance of his prayer requests were not actually communicated to third parties.[7] Yet, the Court has no expertise in computer science and Liberty offers no evidence that the figures unequivocally undermine Plaintiff's allegations.. At the motion to dismiss stage, the

---

III injury.  The Supreme Court's recent decision in *Chatrie v. United States*, 609 U.S. ___ (2026) may cast some doubt on the reasoning in *Gabrielli*; however, distinguishing between the level of privacy afforded to IP addresses versus cell phone GPS data is unnecessary here.

[7]    *See* Dkt. 7 at 8 ("The Complaint also contains a screenshot (Figure 9) which Plaintiff contends shows 'the content of the Prayer Request [being] shared to Google.' Figure 9, however, shows no such thing. Figure 9 shows someone navigating to the 'Prayer Request' page, but there is no sharing of the content of any Prayer Request whatsoever."); *id.* at 13 ("The Complaint's unsupported references to grades and Prayer Requests cannot overcome the Figures they are based upon, which state otherwise.").

Court cannot credit Liberty's version of the facts,[8] especially when its position is supported by nothing but counsel's assertions.

In sum, Lyons has a privacy interest in the substance of his anonymous prayer requests and his grades. *See Holmes*, 156 F.4th at 420. On this record, the Court must assume that Liberty shared Lyons' sensitive, private data without his knowledge or permission, thereby injuring him. The Court can also infer that Lyons' data (and other students' data) had pecuniary value, *see* Dkt. 1 ¶¶ 13, 45, 77–81, and that Liberty impermissibly appropriated the financial benefits from that data, *id.* ¶ 149. This monetary loss also creates a cognizable injury in fact. *See Poppleton Now Cmty. Ass'n, Inc.*, 175 F.4th at 462.

For these reasons, the Court concludes that Lyons adequately pled an injury in fact that is fairly traceable to Liberty's conduct and can be redressed by a favorable court order.

### B. ECPA

The Federal Wiretap Act, which was expanded by the Electronic Communication Privacy Act of 1986, has criminal provisions, *see* 18 U.S.C. § 2511 – 2515, and a civil provision, *id.* § 2520. The criminal statute prohibits anyone from: (1) intentionally; (2) intercepting, endeavoring to intercept, or procuring another person to intercept or endeavor to intercept; (3) the contents of; (4) an electronic communication; (5) using a device. *See* 18 U.S.C. § 2511(1)(a); *see also Ctr. L. & Consulting, LLC v. Axiom Res. Mgmt., Inc.*, 456 F. Supp. 3d 765, 769 (E.D. Va. 2020) (citing);

---

[8] Generally, courts can decide disputed issues of fact when a party challenges subject matter jurisdiction; but courts should decline to do so when "the jurisdictional facts are intertwined with the facts central to the merits of the dispute." *Mundo-Violante v. Kerry*, 180 F. Supp. 3d 442, 448 (W.D. Va. 2016) (quoting *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009)). Here, the question of whether Lyons' substantive prayer requests were communicated to third parties is "intertwined with facts central to the merits"; and regardless, Liberty provided no factual basis (like a declaration from a computer science expert) for the Court to conclude that Lyons' prayer requests were not shared with third parties.

*In re Facebook Internet Tracking Litig.*, 263 F. Supp. 3d 836, 844 (N.D. Cal. 2017); *Glob. Pol'y Partners, LLC v. Yessin*, 686 F. Supp. 2d 631, 639 (E.D. Va. 2009). Section 2511 contains an important carve out, however, which provides "[i]t shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication *where such person is a party to the communication* or where one of the parties to the communication has given prior consent to such interception. . ." 18 U.S.C. § 2511(2)(d) (emphasis added). This is known as the party consent rule. *See Roberts v. Charlotte Mecklenburg Hosp. Auth.*, 2025 WL 880538, at *3 (W.D.N.C. Mar. 20, 2025). In contrast, the ECPA's civil provision provides that "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity, other than the United States, which engaged in that violation such relief as may be appropriate."[9] 18 U.S.C. § 2520.

Liberty argues that Lyons' ECPA claim fails because Lyons voluntarily shared his information with Liberty and, therefore, there was no interception within the meaning of the statute. Dkt. 17 at 25. In response, Lyons concedes that communicating with Liberty would ordinarily preclude criminal or civil liability under the party consent rule; however, he asserts that Liberty is still liable under the ECPA's crime-tort exception (which applies to §§ 2511 and 2520 with equal force). Dkt. 24 at 13–20 (citing 18 U.S.C. § 2511(2)(d)).

---

[9]    As discussed more fully below, § 2520 conspicuously omits any reference to "procuring another person to intercept." When considering the scope of the civil right of action, there is an important distinction between an interceptor and a procurer. *See Reynolds v. Spears*, 93 F.3d 428, 432 (8th Cir. 1996) (concluding that a person is not an interceptor by simply "listening to telephone conversations that [a second person] had unlawfully recorded."); *Mekhail v. N. Mem'l Health Care*, 726 F. Supp. 3d 916, 925 (D. Minn. 2024) (discussing the distinction between an interceptor and procurer).

The Court need not traverse these thorny arguments because Lyons' ECPA claim fails for a more fundamental reason: namely, Liberty, at most, "procured" third parties to intercept the information, and there is no *civil* liability for procurement under the ECPA. *See Kirch v. Embarq Mgmt. Co.*, 702 F.3d 1245, 1246–47 (10th Cir. 2012); *Peavy v. WFAA–TV, Inc.*, 221 F.3d 158 (5th Cir. 2000); *Council on Am.-Islamic Rels. Action Network, Inc. v. Gaubatz*, 891 F. Supp. 2d 13, 23–24 (D.D.C. 2012).

Prior to 1986, Congress authorized a private right of action against:

> Any person whose wire or oral communication is intercepted, disclosed, or used in violation of this chapter shall (1) have a civil cause of action against any person who intercepts, discloses, or uses, or procures any other person to intercept, disclose, or use such communications, and (2) be entitled to recover from any such person [damages, attorney's fees, and costs].

18 U.S.C. § 2520 (1970). But the "or procures any other person" language was deleted when the section was amended in 1986. *Peavy*, 221 F.3d at 168; *see also* n.6. Every circuit court to address the question has held that the 1986 amendment evinces Congress' intent to eliminate civil "aider-and-abetter" liability under § 2520. *See Kirch*, 702 F.3d at 1246–47; *Peavy*, 221 F.3d at 168; *but see Q.J. v. PowerSchool Holdings, LLC*, 2025 WL 2410472, at *6 (N.D. Ill. Aug. 20, 2025) (disagreeing with *Kirch* and *Peavy* and holding that § 2520 is broad enough to permit procurer liability). Not only did Congress affirmatively remove civil liability for procurers from § 2520, which is itself suggestive, but it also retained criminal liability for procurers in § 2511. Because courts presume "Congress acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another," *Intel Corp. Inv. Pol'y Comm. v. Sulyma*, 589 U.S. 178, 186 (2020), the Court concludes that § 2520 (civil wiretap liability) is narrower than § 2511 (criminal wiretap liability) and does not impose civil liability on procurers.

Based on Lyons own allegations, Liberty allowed Meta, Google, and Microsoft to install tracking tools on the Portal, which in turn permitted those third parties to simultaneously capture the data that Lyons communicated to Liberty through the Portal. Dkt. 1 ¶ 5, 7–10, 26–27, 29–31, 33–35, 38, 53, 55, 57. Under Lyons' own version of events, Meta, Google, and Microsoft are the "interceptors"[10] and Liberty simply let the fox into the henhouse.[11] *Id.* There are no non-conclusory allegations in the Complaint that Liberty did anything other than receive and store the information that was communicated to it through the Portal.[12] To state a civil ECPA claim, Lyons needed to allege that in addition to receiving and storing the information through the Portal, Liberty also simultaneously captured or recorded the communication using an electronic, mechanical or other device. But it does not appear that Liberty has its own pixels; rather, it allows third-party pixels (and other tracking tools) onto its website in exchange for receiving business analytic tools. Because Liberty is more akin to a procurer than an interceptor and because there is no civil liability for procurers, *Kirch*, 702 F.3d at 1246–47; *Peavy*, 221 F.3d at 158; *Gaubatz*, 891 F. Supp. 2d at 23–24, Lyons ECPA claim must be dismissed without prejudice.

---

[10]    The ECPA defines "intercept" as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4).

[11]    A simpler analogy may help elucidate why Liberty is not a procurer. What happened here is like Lyons calling Liberty on the phone; Liberty allowing Meta, Google, and Microsoft to tap the line; but Liberty doing nothing else. In other words, it appears that Liberty merely sat on the line and received the information Lyons wanted to share rather than independently recording that information.

[12]    For a communication "to be 'intercepted' in violation of the Wiretap Act, it must be acquired during transmission, not while it is in electronic storage." *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002).

### C.  State Common Law Claims

Liberty has moved to dismiss Lyons' invasion of privacy, negligence, breach of implied contract, and unjust enrichment claims. Dkt. 17 at 16–23. Liberty's motion is frustrated by the fact that it asserts that Virginia law applies, *id.* at 17–18, while Lyons asserts that Arizona law applies, Dkt. 24 at 10–11. Courts in this circuit, among others, have recognized that a choice-of-law analysis at the motion-to-dismiss stage is generally premature. *See Canada Pipeline Accessories, Co. v. Canalta Controls, Ltd.*, 2013 WL 3233464, at *8 (S.D.W. Va. June 25, 2013); *Banner Life Ins. Co. v. Bonney*, 2011 WL 6002609, at *5 (E.D. Va. Nov. 29, 2011); *North Am. Tech. Svcs., Inc. v. V.J. Techs, Inc.*, 2011 WL 4538069, at *2 (D. Conn. Sept. 29, 2011); *Clean Earth of Maryland, Inc. v. Total Safety, Inc.*, 2011 WL 1627995, at *2 (N.D.W.Va. Apr. 28, 2011)); *Snyder v. Farnam Companies, Inc.*, 792 F.Supp.2d 712, 721 (D.N.J.2011); *Cantonis v. Stryker Corp.*, 2010 WL 1084971, at *3–4 (D. Minn. Nov. 23, 2010). That is because choice-of-law decisions usually cannot be made without a developed factual record. *See*, *e.g.*, *Am. Home Assur. Co. v. Weaver Aggregate Transp., Inc.*, 2011 WL 794817, at *5 (M.D. Fla. Mar. 1, 2011); *Speedmark Transp., Inc. v. Mui*, 2011 WL 1533042, at *4 (S.D.N.Y. Apr. 21, 2011). Because the Court may need to resolve disputed facts in deciding whether Virginia or Arizona law applies, and because there is a substantive difference between Virginia and Arizona law,[13] the Court will deny Liberty's motion to dismiss Lyons' state law claims as premature.

---

[13]    A notable difference is that Virginia does not recognize common law privacy torts, *see Hayes v. KIK Custom Prods.*, 2011 WL 4963774, at *2 (W.D. Va. Oct. 14, 2011), while Arizona does, *Med. Lab'y Mgmt. Consultants v. Am. Broad. Companies, Inc.*, 306 F.3d 806, 812 (9th Cir. 2002) ("The Arizona Supreme Court has recognized [] invasion of privacy torts.").

## IV.    CONCLUSION

For these reasons, the Court concludes that Lyons has sufficiently pled Article III standing; however, he has not adequately pled interceptor liability under § 2520 of the ECPA. Moreover, the Court concludes that dismissal of Lyons' state law claims is premature given the threshold choice-of-law issue that should not be resolved absent a developed factual record. Accordingly, the Court will issue a separate order granting Liberty's motion to the extent that Lyons' ECPA claim will be dismissed without prejudice and denying it in all other respects.

The Clerk is directed to provide a copy of this Memorandum Opinion to all parties of record.

Entered this __28th__ day of July, 2026.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE