**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF VIRGINIA**

| | |
|---|---|
| **KYLER LYONS,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**LIBERTY UNIVERSITY, INC.,**<br><br>**Defendant.** | **Civil Action No. 6:26-cv-00007** |

**DEFENDANT LIBERTY UNIVERSITY, INC.'S BRIEF IN SUPPORT OF MOTION TO DISMISS COUNT V OF THE AMENDED COMPLAINT**

Defendant, Liberty University, Inc. ("Liberty"), by counsel, and under Federal Rule of Civil Procedure 12(b)(6), states as follows in support of its Motion to Dismiss Count V of the Amended Complaint of Plaintiff, Kyler Lyons.

## INTRODUCTION

Plaintiff's First Amended Class Action Complaint ("Amended Complaint") seeks a second bite at the apple to try to save her fatally flawed Electronic Communications Practices Act ("ECPA") claim from dismissal. The effort to rescue the ECPA claim from being dismissed again fails.

Plaintiff's changes to the Amended Complaint amount to: (1) removing the allegation that Liberty "procured another person to intercept" information and replacing it with an allegation that Liberty "disclosed" the electronic communication[s] of Plaintiff", and (ii) alleging Liberty installed and configured "Tracking Tools" to disclose "student record information" to third parties. The Amended Complaint, however, continues to confirm Plaintiff does not own the Tracking Tools, that Google and Meta are the interceptors of any communications sent to my LU Portal,

and that Liberty is the intended recipient of electronic communications communicated over the Portal and a party to the alleged communications.

For the set forth below, Plaintiff's ECPA claim fails and should now be dismissed with prejudice.[1]

## STATEMENT OF ALLEGED FACTS

### I. The Parties

Plaintiff, a citizen of the State of Arizona, "was enrolled at Liberty from 2017 until May 2021, and re-enrolled for [her] master's program in March 2025." Am. Compl. ¶ 16. Liberty is an accredited university in Lynchburg, Virginia that offers, among other things, undergraduate and master's degree programs for students. *Id*. ¶ 3.

### II. Relevant Procedural History

On January 21, 2026 Plaintiff filed a putative class action Complaint alleging Liberty disclosed her private academic information to third parties through use of third-party tracking technologies deployed on the myLU student portal. *See* Dkt. 1, ¶¶ 27, 29-30, 33-34, 61. Plaintiff alleged she did not know her full name, registration status, course names and numbers and prayer requests were being automatically shared with Meta, Google and Microsoft without her consent. *Id.* ¶¶ 5-6. The Complaint collectively defined Meta, Google and Microsoft as the "Tracking Tool Providers," and it spent several paragraphs explaining how the Tracking Tool Providers provide

---

[1] *See, e.g., Adbul-Mumit v. Alexandria Hyundai, LLC,* 896 F.3d 278, 294 (4th Cir. 2018) (affirming district court's dismissal with prejudice in the face of plaintiff's "resolute adherence to deficient complaints"); *Rivers v. Bowman*, No. 6:18-CV-00061, 2021 WL 4143752, * 9 (W.D. Va. Sept. 9, 2021) ("Leave to amend is properly denied and a claim dismissed with prejudice where further amendment would be futile, where the deficiencies in the complaint are fundamental, or where the party has failed to cure the deficiencies despite repeated opportunities.") (citation omitted); *Harden v. Budget Rent A Car Sys., Inc*., 726 F. Supp. 3d 415, 440 (D. Md. 2024) ("[W]here a plaintiff has had the opportunity to amend her complaint to cure any deficiencies, or where amendment would otherwise be futile, dismissal with prejudice is appropriate.").

marketing, advertising and customer analytics software to website operators, including Liberty, that allegedly facilitate the sharing of information without consent. *Id.* ¶¶5-11. The Complaint went on to allege the "Tracking Tool Providers" compensated Liberty (either directly or indirectly) for sharing Plaintiff's information. *Id.* ¶¶ 8-10, 68, 75-76. The Complaint asserted five claims for invasion of privacy, negligence, breach of an implied contract, unjust enrichment and violations of the ECPA. *Id.* ¶¶ 116-181.

On April 4, 2026, Liberty filed a motion to dismiss the Complaint in its entirety. Dkt. 17. Thereafter, on July 28, 2026, this Court entered an order denying and granting Liberty's motion. Dkt. 28. The Court denied the motion to dismiss as to all of Plaintiff's common law claims, but granted the motion to dismiss, without prejudice, as to the ECPA claim. *Id.* It found the ECPA claim was not cognizable because Liberty, at most "procured" the Tracking Tool Providers to intercept the students' information and "there is no civil liability for procurement under the ECPA." Dkt. 27 at 9.

On August 24, 2026, Plaintiff filed an Amended Complaint seeking to resurrect the ECPA claim. Dkt. 33. As to the ECPA claim, the only material changes the Plaintiff makes are to: (1) remove the allegation that Liberty "procured another person to intercept" information and replaced it with an allegation that Liberty "disclosed" the electronic communication of Plaintiff." (Compare Dkt. 1, ¶ 164 with Dkt. 33, ¶170); and (2) to allege Liberty installed and configured the Tracking Tools to disclose "student record information" to third parties (Dkt. 33 ¶¶ 69-73).

Plaintiff's amendments do not cure the fatal defects with the ECPA claim.

## LEGAL ARGUMENT

Rule 12(b)(6) requires dismissal when a complaint lacks plausible allegations of fact that would enable the court to infer a defendant is liable. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). That standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me

accusation," or "naked assertion[s]" devoid of "further factual enhancement." *Id*. (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555-57 (2007)). "To meet this standard, a plaintiff must provide 'more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.'" *Zawod v. Sia "Baltmark Invest,"* No. 1:12cv515 (JCC/IDD), 2013 U.S. Dist. LEXIS 159079, *9 (E.D. Va. Nov. 6, 2013) (quoting *Twombly,* 550 U.S. at 555)). If the complaint lacks non-conclusory facts entitling the plaintiff to relief, "this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 558.

## I. <u>The ECPA claim must be dismissed under Rule 12(b)(6).</u>

As outlined above, the only new allegations with respect to the ECPA claim contend that Liberty installed and configured the Tracking Tools to disclose "student record information" to third parties (Dkt. 33 ¶¶ 69-73), and that Liberty "disclosed" the electronic communications of Plaintiff." (Dkt. 33, ¶170). The Amended Complaint, however, continues to allege the Tracking Tool Providers collect information from third party websites. Dkt. 33 ¶¶ 30, 31, 35, 36, 37, 38, 40. The Amended Complaint also continues to allege that the "Tracking Tools" at issue here belong to the Tracking Tools Providers, not Liberty. *Id.*, ¶¶ 9, 11, 17, 27, 35, 41). And the Amended Complaint continues to allege the Plaintiff and Liberty are the parties to any communications that are allegedly intercepted by the Tracking Tools. *Id.*, 124, 125, 126, 165, 166, 177, 179.

The allegations in the Amended Complaint do not give rise to an ECPA claim because: (1) Liberty cannot be liable under the ECPA for allegedly procuring or aiding and abetting the interception of an electronic communication by the Tracking Tool Providers; (2) there are no well-pleaded allegations that Liberty itself "intercepted" any communication to support an ECPA claim; and (3) Liberty cannot, in fact, intercept a communication to which it is a party.

### A. **<u>Liberty cannot be liable for aiding and abetting or procuring a third party to intercept</u>**

The ECPA's private right of action under 18 U.S.C. § 2520, makes clear that a private civil cause of action only exists against the person who engages in an unlawful interception, disclosure, or intentional use of wire, oral or electronic communication – not against any other person for procuring, enabling, aiding or abetting another's interception of such. *See, e.g., Lyons v. Liberty Univ., Inc.,* 2026 U.S. Dist. LEXIS 167885, *11 (W.D. Va. 2026) (recognizing the ECPA does not impose civil liability for a procurer); *Kirch v. Embarq Mgmt. Co.*, 702 F.3d 1245, 1246-47 (10th Cir. 2012) (holding that there is no civil ECPA claim for "procuring" or "aiding and abetting" an interception); *Peavy v. WFAA-TV, Inc.*, 221 F.3d 158, 169 (5th Cir. 2000) (same).

Here, the Amended Complaint readily admits the Tracking Tools that allegedly share information belong to the *<u>Tracking Tool Providers</u>*. *Id.*, ¶¶ 9, 11, 17, 27, 35, 41. As this Court previously recognized, because the tracking pixels do not belong to Liberty, "Liberty is akin to a procurer than an interceptor" and therefore no ECPA liability exists. *Lyons,* 2026 U.S. Dist. LEXIS 167885 at*11.

Moreover, Plaintiff's implausible new claims that Liberty installs and configures the third party pixels (Dkt. 33 ¶ 67-73), do not save the ECPA claim from dismissal. A defendant is not transformed from a procurer into an interceptor of a communication under the ECPA simply by "allowing or enabling, or even directing, another party to intercept communications. *See Kirch v. Embarq Mgmt. Co.*, 2011 U.S. Dist. LEXIS 92701, *22 (Dist. Kan. 2011) *aff'd,* 702 F.3d 1245 (10th Cir.), *cert. denied,* 133 S.Ct. 2743 (2013); *Freeman v. DirecTV, Inc.*, 457 F.3d 1001, 1005-06 (9th Cir. 2006) (rejecting the argument that "a person or entity who aids and abets or who enters into a conspiracy is someone or something that is 'engaged' in a violation."); *Doe v. GTE Corp.*, 347 F.3d 655, 658 (7th Cir. 2003) ("A statute that is this precise about who, other than the primary

interceptor, can be liable, should not be read to create a penumbra of additional but unspecified liability"). This is precisely what Plaintiff alleges occurred here. The ECPA claim fails.

**B. <u>There are no allegations to support the notion that Liberty intercepted Plaintiff's electronic communications to support an ECPA claim.</u>**

**1. Liberty cannot "intercept" communications that were directed to it.**

The ECPA defines "intercept" as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4). This Court's July 28, 2026 Order squarely addressed the threshold issue of who "intercepted" the communications at issue. The Court held that "Meta, Google, and Microsoft are the 'interceptors.'" Dkt. 27 at 10. The Court further found "[t]here are no non-conclusory allegations in the Complaint that Liberty did anything other than receive and store the information that was communicated to it through the Portal." *Id.* Critically, the Court observed that "it does not appear that Liberty has its own pixels; rather, it allows third-party pixels (and other tracking tools) onto its website in exchange for receiving business analytic tools." *Id.*

The allegations in the Amended Complaint confirm Plaintiff voluntarily directed her communications *<u>to Liberty</u>* by using the Portal to review grades, enroll in courses, submit assignments, and submit prayer requests. Am. Compl. ¶¶ 4, 61 (alleging that students submit Prayer Requests through the Portal *<u>to Liberty</u>* "so that its religious student body and faculty may add the student to their personal prayers" and that Liberty captured and transmitted information "that [the students] communicated *<u>to Liberty</u>* while using its student portal.") (emphasis added). Liberty, as the intended recipient of those communications, therefore, *<u>received</u>* them. It did not "intercept" them. Indeed, courts in the Fourth Circuit have repeatedly refused to find that a communication directed to a defendant's own portal constitutes an interception. *See Allen*, 2023 WL 5486240, at *4 (dismissing ECPA claim despite allegations that defendant "inserted" tracking pixel on its portal because the communication was

directed to defendant); *Roberts*, 2025 WL 880538, at *3 ("Defendant did not 'intercept' anything for purposes of the statute, because they were a party to the communication, and Plaintiff has not otherwise plausibly alleged facts that suggest Defendant intercepted their information in violation of the ECPA").

Courts in the Fourth Circuit also have consistently applied this distinction to dismiss ECPA claims in factually analogous cases. In *Allen v. Novant Health, Inc*., a plaintiff claimed his health care provider violated the ECPA by inserting a tracking pixel on its portal that transmitted data to Meta. No. 1:22-CV-697, 2023 WL 5486240, at *4 (M.D.N.C. Aug. 24, 2023). The *Allen* court dismissed the ECPA claim because the health care provider merely "received" the communications, and that if any entity "intercepted" a communication, it was Meta. *Id*. Similarly, in *Williams v. DukeHealth,* the court concluded that a plaintiff "voluntarily sent" communications to the health care provider defendant, and therefore there was no interception by that defendant. No. 1:22-CV-727, 2024 WL 898051, at *8–9 (M.D.N.C. Mar. 1, 2024). In *Rodriguez v. FastMed Urgent Care, P.C*., the court dismissed the plaintiff's ECPA claim on the same rationale, holding that the plaintiff "has not plausibly alleged that FastMed, not Meta, intercepted her information in violation of the statute." 741 F. Supp. 3d 352, 363 (E.D.N.C. 2024). And, in *Roberts v. Charlotte Mecklenburg Hospital Authority*, the court held that the defendant could not "intercept" communications on the defendant's own website and portal. No. 3:24-CV-00382, 2025 WL 880538, at *3 (W.D.N.C. Mar. 20, 2025).

The same analysis applies here. As Plaintiff acknowledges throughout the Amended Complaint, the allegations relate to communications initiated and sent to Liberty through the Portal. Plaintiff alleges that Liberty was not authorized to disclose "information provided *<u>to Liberty</u>* through Portal"; that the Tracking Tools captured information students "communicated *<u>to Liberty</u>*"; that there was an expectation of privacy when Plaintiff "provided [her] Sensitive Information *<u>to Liberty</u>*"; that the information was

provided "*to Liberty* in exchange for enrollment"; and that had Plaintiff known about the Tracking Tools, she would not have "agreed to provide [her] Sensitive Information *to Liberty*." *Id.* ¶¶ 18, 61, 95, 139, 144, 158. Liberty received those communications as their intended recipient, and therefore the essential element of an interception of a communication by Liberty claim simply does not exist.

Indeed, the Amended Complaint confirms the Tracking Tool Providers are the interceptors. In paragraph 78, the Amended Complaint states Liberty "*allowed third parties such as the Tracking Tool Providers to intercept* Plaintiff's and Class Members' Sensitive Information and use it for advertising purposes." Am. Compl. ¶ 76 (emphasis added). Plaintiff further alleges the Tracking Tool Providers' pixels "acquire information from the browser," that pixels "combine[] the data . . . and instruct[] the web browser to transmit the information back to the Tracking Tool Providers," and that the Tracking Tool Providers can thereby "link all of the user information collected by their Pixels on the Portal to the user's identity." *Id.* ¶ 53-55. Those are the hallmarks of alleged interception by the Tracking Tool Providers, not Liberty.

Further, while the Amended Complaint now alleges that Liberty's "web servers" and "the Tracking Tools deployed by Liberty" constitute "devices" under 18 U.S.C. § 2510(5), Am. Compl. ¶¶ 166–167, that allegation is irrelevant to the question of interception, as Liberty remained the intended recipient. Indeed, Liberty's web servers are the intended destination of Plaintiff's communications—they received the Portal traffic Plaintiff voluntarily sent. That is not "interception" through a "device"; it is ordinary receipt. *See Ducharme v. Madewell Concrete, LLC*, No. 6:20-1620-HMH, 2021 WL 2141728 at * 8, (D.S.C. May 26, 2021) (citing *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002)) (A qualifying "intercept" under the ECPA "can only occur where an e-mail communication is accessed at some point between the time the communication is sent and the time it is received by the destination server.").

**2. An "interception" requires contemporaneous acquisition by an unintended recipient, which is not alleged here.**

A qualifying "interception" under ECPA also occurs only where the acquisition of the communication occurs contemporaneously with its transmission. *See Global Pol'y Partners, LLC v. Yessin*, 686 F. Supp. 2d 631, 638 (E.D. Va. 2009) (collecting cases and stating that an "intercept" under the ECPA is analogous to an interception in football because "a ball can only be intercepted when it is in flight."); *see also Fraser v. Nationwide Mut. Ins. Co*., 352 F.3d 107, 113–14 (3d Cir. 2003); *Konop v. Hawaiian Airlines, Inc*., 302 F.3d 868, 878 (9th Cir. 2002); *Steve Jackson Games, Inc. v. U.S. Secret Serv*., 36 F.3d 457, 464 (5th Cir. 1994).

The Amended Complaint does not allege Liberty itself acquired any communications "during transmission" or "in flight." Instead, it alleges that Liberty received and stored communications that Plaintiff directed to it through the Portal, exactly as this Court already found. Dkt. 27 at 10 ("There are no non-conclusory allegations in the Complaint that Liberty did anything other than receive and store the information that was communicated to it through the Portal."). To try and avoid that straightforward reality, the Amended Complaint now alleges that when a student clicks a button on the Portal, "the student initiates two simultaneous communications." Am. Compl. ¶ 61. But that allegation undermines—rather than supports—Plaintiff's theory. If there are two communications, one to Liberty and one triggering transmission to the Tracking Tool Providers, then Liberty received only the communication directed to it, which requires dismissal for the reasons stated above. *See supra* part I(B)(1). The "simultaneous" second communication was acquired by the Tracking Tool Providers' devices, not Liberty's. Thus, at most, Liberty would have received that second communication *after* it was transmitted, thereby defeating the claim. Simply stated, the simultaneity of transmissions does not make Liberty the interceptor of a transmission directed elsewhere.

This Court made precisely this point when it previously concluded that "to state a civil ECPA claim, Lyons needed to allege that in addition to receiving and storing the information through the Portal, Liberty also simultaneously captured or recorded the communication using an electronic, mechanical or other device." Dkt. 27 at 10. The Amended Complaint does not cure that identified deficiency. It still alleges only that Liberty permitted third-party tools to operate on the Portal, not that Liberty itself deployed its own electronic, mechanical, or other device to simultaneously capture or record communications that were directed to others.

***

At bottom, the Amended Complaint does not allege specific facts showing that Liberty, as opposed to the Tracking Tool Providers, acquired any communication during transmission that was intended for another entity. It identifies no Liberty-owned pixel, cookie, or other interception device to contemporaneously intercept a transmission directed elsewhere. It identifies no specific transmission of data from Plaintiff's browser to a Liberty-controlled server that was not the intended destination of Plaintiff's communication. Accordingly, the ECPA claim fails and must be dismissed.

### C. ECPA Exempts Interceptions Where One Party Gives Consent

Even if Liberty could somehow be characterized as an "interceptor," the party consent rule of 18 U.S.C. § 2511(2)(d) independently bars Plaintiff's ECPA claim. Section 2511(2)(d) provides that "it shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception." 18 U.S.C. § 2511(2)(d). The party exception and Plaintiff's consent are both present here.

First, there is no dispute Liberty was a party to the communications Plaintiff sent through the Portal. Plaintiff allegedly communicated with Liberty by using the Portal to review grades, enroll in

courses, submit assignments, and submit prayer requests. Am. Compl. ¶¶ 4, 60. As the intended recipient, Liberty was a "party to the communication" within the meaning of § 2511(2)(d). *See In re Google Inc. Cookie Placement Consumer Priv. Litig*., 806 F.3d 125, 143 (3d Cir. 2015) (a defendant that is "the intended recipient of a communication" is necessarily a party to that communication). Courts in factually analogous cases have applied the party consent rule to dismiss ECPA claims premised on pixel-tracking theories. *See Rodriguez*, 741 F. Supp. 3d at 363 ("Because FastMed was a party to Rodriguez's communication and FastMed 'intercepted' Rodriguez's individually-identifiable health information with her prior consent, FastMed did not violate 18 U.S.C. § 2520(a)."); *Roberts*, 2025 WL 880538, at *3 (same reasoning in pixel-tracking ECPA case); *Williams*, 2024 WL 898051, at *8–9 (dismissing ECPA claim because the complaint "allege[d] that the Defendant was a party to the communications").

Second, § 2511(2)(d) exempts interceptions where "one of the parties to the communication has given prior consent to such interception." 18 U.S.C. § 2511(2)(d). Plaintiff gave such prior consent through Liberty's Privacy Policy. At all relevant times, Liberty's Privacy Policy explicitly disclosed Liberty's use of tracking technologies and the sharing of student data with third parties. *See* Dkt. 17 at 5–6. The Privacy Policy is publicly accessible and is a freestanding term of enrollment. The Amended Complaint alleges that Liberty's Privacy Policy is written in "confusing, technical and overly legal language as to be indecipherable to the typical internet user." Am. Compl. ¶ 42. That conclusory characterization is contradicted by the plain language of the Privacy Policy itself. The Policy states in straightforward terms that Liberty "collects various types of information through our sites" including information "collected automatically through various web and Internet technologies including social networking tools." That disclosure is neither technical nor indecipherable. It plainly informs users that information is collected through web technologies and social networking tools, the precise conduct that Plaintiff now complains of.

The Privacy Policy was incorporated into the terms governing Plaintiff's enrollment. The Institutional Agreement signed by all students as a condition of admission expressly incorporates all of Liberty's published "policies," which includes the Privacy Policy and the FERPA Policy. The terms of the student-university relationship "are contained in the brochures, course offering bulletins, and other official statements, policies and publications" of the university. *Showell v. Capella Univ. Inc.*, No. 16-3761, 2017 U.S. Dist. LEXIS 225113, at *7 (D. Md. Sept. 29, 2017). Courts thus consistently hold that privacy policies establish consent to challenge tracking conduct. *See Libman v. Apple, Inc.*, No. 22-07069, 2024 U.S. Dist. LEXIS 175118, at *31 (N.D. Cal. Sept. 26, 2024) ("Courts consistently hold that terms of service and privacy policies, like [the] privacy policy here, can establish consent to the alleged conduct challenged under various states wiretapping statutes and related claims."); *Popa v. Harriet Carter Gifts, Inc.*, 772 F. Supp. 3d 592, 607 (W.D. Pa. 2025) (dismissing wiretapping claim because "Popa's decision not to review its terms does not permit her to avoid the implication of those terms.").

Plaintiff was enrolled at Liberty from 2017 until May 2021 and re-enrolled for her master's program in March 2025. Am. Compl. ¶ 16. When a "reasonably prudent internet user" takes online classes in a continuous relationship with the university for eight years, "the user is on reasonable notice of th[e] terms" defining the university-student relationship and is bound to them. *Dhruva v. Curiositystream, Inc.*, 131 F.4th 146, 153 (4th Cir. 2025). The extended and continuous nature of Plaintiff's relationship with Liberty underscores that she had reasonable notice of the Privacy Policy and its disclosures.

### D. The Crime-Tort Exception Does Not Save Plaintiff's ECPA Claim

The party consent rule in § 2511(2)(d) contains an exception where a party to the communication intercepts it "for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." 18 U.S.C. § 2511(2)(d). The Amended Complaint invokes this exception for the first time, alleging that Liberty intercepted communications for the purpose of

committing invasion of privacy, breach of implied contract, and violations of FERPA. Am. Compl. ¶¶ 175–178. The crime-tort exception does not save Plaintiff's claim for three independent reasons.

**1. FERPA cannot support the crime-tort exception.**

The Amended Complaint's most prominent basis for invoking the crime-tort exception is its allegation that Liberty's interception was "for the purpose of committing" violations of FERPA. Am. Compl. ¶ 178(c). But FERPA cannot support invocation of the crime-tort exception for the fundamental reason that FERPA contains no criminal penalty provision.

Courts that have permitted the crime-tort exception to proceed in pixel-tracking cases have relied exclusively on HIPAA's criminal provisions, 42 U.S.C. § 1320d-6, which impose criminal penalties for the knowing misuse of individually identifiable health information. *See Lugo v. Inova Health Care Servs.*, No. 1:24-cv-700, 2025 WL 905191, at *6–7 (E.D. Va. Mar. 25, 2025) (permitting ECPA claim to proceed based on allegations of HIPAA criminal violations); *Murphy v. Thomas Jefferson Univ. Hosps., Inc.*, No. 22-4674, 2024 WL 4350328, at *4–5 (E.D. Pa. Sept. 30, 2024) (same); *A.D. v. Aspen Dental Mgmt., Inc.*, No. 24-1404, 2024 WL 4119153, at *3 (N.D. Ill. Sept. 9, 2024) (same).

FERPA is fundamentally different. Unlike HIPAA, FERPA contains no criminal enforcement mechanism. FERPA's sole enforcement mechanism is the withdrawal of federal funding. *See* 20 U.S.C. § 1232g(b)(1), (f). Moreover, the Supreme Court has held that FERPA does not create a private right of action. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 290 (2002). Allowing FERPA to bootstrap an ECPA claim through the crime-tort exception would create an end run around FERPA's deliberate exclusion of private enforcement, a result no court has sanctioned and that would contravene *Gonzaga*.

Even if FERPA could theoretically support the crime-tort exception, Plaintiff's reliance on FERPA is further undermined by the nature of the information allegedly disclosed. The information the Amended Complaint identifies as having been transmitted to the Tracking Tool Providers—Plaintiff's name, registration status, course names and numbers, and assignment titles—consists overwhelmingly

of "directory information" that FERPA expressly permits educational institutions to disclose without consent. Am. Compl. ¶ 6; *see* 20 U.S.C. § 1232g(b)(1); 34 C.F.R. § 99.3. Liberty's published FERPA Policy also designates as directory information, among other categories, students' names, enrollment status, academic programs, and major fields of study. The Amended Complaint does not allege that Plaintiff ever exercised her right under the FERPA Policy to opt out of directory information disclosures by notifying Liberty. The U.S. Department of Education itself recognizes that directory information is "generally not considered harmful or an invasion of privacy if disclosed." *See* U.S. Dep't of Educ., Family Educational Rights and Privacy Act (FERPA), https://studentprivacy.ed.gov. Plaintiff cannot invoke the crime-tort exception based on a FERPA violation when FERPA itself authorized the very disclosures at issue.

**2. The alleged tortious purpose is not independent of the interception.**

The crime-tort exception requires that the alleged tortious or criminal purpose be "independent from the intentional act of recording." *Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010). When the only alleged tort or unlawful conduct is the act of recording itself, the plaintiff has not shown "a separate and independent tortious intent." *Id.* at 101; *Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022) (crime-tort exception does not apply where the defendant's "purpose in making the recordings was not independent of and separate from the purpose of the recording.") (citation omitted); *Lucas v. Fox News Network, LLC*, 248 F.3d 1180 (11th Cir. 2001) (same); *Clemons v. Waller*, 82 F. App'x 436, 440–41 (6th Cir. 2003) (same).

The alleged torts here—invasion of privacy, breach of implied contract, and FERPA violations—are merely repackaged descriptions of the collection and transmission of data through the Tracking Tools. They are not independent criminal or tortious purposes; they are the interception itself, just cloaked in different legal labels. The action that forms the basis for the ECPA claim is one and the same as the action that forms the basis for the other claims. Courts consistently reject crime-tort exception arguments

in those circumstances. *See Roberts*, 2025 WL 880538 at *3 (dismissing ECPA claim because factual allegations did not "support an inference that [Defendant] intercepted the communication for the purpose of a tortious or criminal act that is independent from the intentional act of recording"); *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 145 (3d Cir. 2015) ("[T]o survive a motion to dismiss, a plaintiff must plead sufficient facts to support an inference that the offender intercepted the communication for the purpose of a tortious or criminal act that is *independent* of the intentional act of recording.") (emphasis in original); *Rodriguez*, 741 F. Supp. 3d at 363-64 (dismissing ECPA claim where defendant collected "information for commercial use or gain, not to commit a crime or tort.").

**3. Liberty's purpose was commercial, not criminal or tortious.**

The Amended Complaint's own allegations confirm that Liberty's purpose was commercial, not criminal or tortious. It alleges that Liberty used the Tracking Tools in exchange for "advanced advertising services and cost-effective marketing on third-party platforms." Am. Compl. ¶ 82. Liberty received access to "marketing, advertising, and customer analytics software" and "business analytic tools." *Id.* ¶¶ 8, 81. A commercial purpose is not a criminal or tortious purpose sufficient to invoke the crime-tort exception. *See Rodriguez*, 741 F. Supp. 3d at 363–64 ("[M]erely alleging that FastMed intercepted and disclosed Rodriguez's information to Meta for commercial use or gain [] does not equate to FastMed intercepting and disclosing Rodriguez's information 'for the purpose of committing any criminal or tortious act.'"); *Roberts*, 2025 WL 880538, at *3 ("Even taking Plaintiffs' factual allegations as true, Defendant allegedly used lawfully obtained IIHI for advertising purposes or for commercial gain, but there are no alleged facts from which the Court could conclude that Defendant did so for the *purpose* of committing a criminal or tortious act.) (emphasis in original).

## CONCLUSION

For all the foregoing reasons, Defendant Liberty University, Inc. respectfully requests that this Court dismiss Count V of Plaintiff's First Amended Class Action Complaint with prejudice.

DATED: September 14, 2026

Respectfully submitted,

*/s/ Noah J. DiPasquale*
Noah J. DiPasquale
Virginia State Bar No. 96519
Timothy St. George
Virginia State Bar No. 77349
TROUTMAN PEPPER LOCKE LLP
1001 Haxall Point, 15th Floor
Richmond, VA 23219
Telephone: (804) 697-1254
Facsimile: (804) 698-6013
Email: noah.dipasquale@troutman.com
Email: timothy.st.george@troutman.com

Angelo A. Stio III [*Pro Hac Vice forthcoming*]
TROUTMAN PEPPER LOCKE LLP
104 Carnegie Center, Suite 203
Princeton, New Jersey 08543
Telephone: (609) 951-4125
Facsimile: (609) 452-1147
Email: angelo.stio@troutman.com

*Attorneys for Defendant Liberty University*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 14, 2026, I caused the foregoing document to be filed with the Clerk of Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

*/s/ Noah J. DiPasquale, Esq.*
Noah J. DiPasquale, Esq.

*Counsel for Liberty University, Inc.*